# EXHIBIT 15

Exhibit 15

Chester #4
616 ????

# RESOLUTION
## TOWN OF CHESTER PLANNING BOARD
## LEAD AGENCY FINDINGS
## PURSUANT TO SEQR

November 18, 1998

**RECEIVED**

MAR 1 5 2002

**MOTION BY:** Eberle

**SECOND:**    Gilbert

TOWN CLERK
CHESTER, NEW YORK

WHEREAS, the TOWN OF CHESTER PLANNING BOARD received an application and long form Environmental Assessment Form (EAF) from ARLINGTON BUILDING CORP. for Subdivision and Site Plan Approval pursuant to §98.20.1 of the Code of the Town of Chester to construct a total of 455 dwelling units, of which 243 are single-family units and 106 are two-family units (total 212 units), on a 117.70 acre parcel of land situated on NYS Route 94 just west of the Village of Chester border and east of Conklintown Road; and

WHEREAS, the TOWN OF CHESTER PLANNING BOARD previously acted as Lead Agency pursuant to the State Environmental Quality Review Act (SEQR) and its implementing regulations 6NYCRR Part 617 for an application at this site involving 900 multiple-residence units, such action being the subject of a full Environmental Impact Statement (EIS) process ending in Lead Agency Finding and Action on Application in 1988; and

WHEREAS, the TOWN OF CHESTER PLANNING BOARD considered the Action as proposed to be a substantial modification to that original application; and

WHEREAS, that the TOWN OF CHESTER PLANNING BOARD, in consideration of the substantial nature of the project modification and passage of time since the close of the SEQR process on the original Application for this site, considered the Action as described herein to be a new Application pursuant to SEQR and sought to initiate the SEQR review process by re-establishing a Lead Agency; and

WHEREAS, the proposed Action was considered a Type 1 Action pursuant to 6NYCRR Part 617.2(ai) and Part 617.4(b)5(iii); and

WHEREAS, the TOWN OF CHESTER PLANNING BOARD in it's approval power for this action was an Involved Agency pursuant to SEQR, 6NYCRR Part 617.2(t) and did notify all potentially Involved Agencies and Interested Parties of its intent to be designated Lead Agency for the purposes of SEQR, 6NYCRR Part 617; and

WHEREAS, the TOWN OF CHESTER PLANNING BOARD did not receive any objections to their assuming such Lead Agency status, and did accept, at the September 7, 1994 meeting, Lead Agency status for the purpose of completing the SEQR review process for this Action; and

WHEREAS, in the course of its review and acting as Lead Agency, the TOWN OF CHESTER PLANNING BOARD made the following findings and determinations in accordance with SEQR:

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 2

1. The Applicant submitted a signed Environmental Assessment Form (EAF) for Site Plan review and Subdivision approval on or about May 26, 1994 (a full application for Site Plan and Subdivision Approval was subsequently submitted January 22, 1996 and received by the TOWN OF CHESTER PLANNING BOARD on February 21, 1996); and

2. On July 6, 1994, the TOWN OF CHESTER PLANNING BOARD indicated its intent to become Lead Agency, exercised reasonable diligence to identify all Involved Agencies and Interested Parties and notified same of its intent to become Lead Agency in accordance with the provisions of Article 8 of the Environmental Conservation Law, and of the implementing regulations 6NYCRR Part 617, referred to herein collectively as the State Environmental Quality Review Act (SEQR); and

3. On September 7, 1994, the TOWN OF CHESTER PLANNING BOARD in the absence of opposition from any Involved Agency or Interested Party, pursuant to 6NYCRR Part 617.6, adopted a resolution declaring the PLANNING BOARD to be SEQR Lead Agency for this action and identifying initial areas of environmental concern; and

4. In order to assist the Planning Board on technical matters, as well as ensure a thorough review of the application and all relevant areas of environmental concern, the Planning Board retained the services of qualified and experienced consultants, Town Engineer, Phillip Salerno (Engineering Consultant), Barkan & Mess Associates, Inc. (Traffic Consultants) and A. L. CLARKE & ASSOCIATES, Corning, New York (Planning Consultants), collectively the "Town Consultants"; and

5. Upon review of the application and supporting documentation, the Planning Board, acting as Lead Agency, determined the proposed action to be a "TYPE 1" Action that may have significant adverse environmental impacts, and that the Applicant should prepare a Draft Environmental Impact Statement (DEIS), and adopted and filed a Positive Declaration identifying the major areas of potentially significant adverse impacts on September 7, 1994 in accordance with SEQR 6NYCRR Part 617.7. Those areas of concern to be addressed in the DEIS were identified as:

   O PROJECT WILL INVOLVE DEVELOPMENT OF NEW WATER SUPPLY WELLS AND SYSTEM AVERAGING 130,750 GPD IN USE

   O PROJECT WILL REQUIRE NEW SEWAGE TREATMENT SYSTEM, AND INSTALLATION OF COLLECTION SYSTEM

   O CONSTRUCTION OF 455 DWELLING UNITS, ROADWAYS, ETC. WILL CREATE A CHANGE IN THE DIRECTION AND RATE OF STORMWATER FLOWS AT AND OFF THE SITE

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 3

O   PROJECT WILL RESULT IN THE DISTURBANCE OF SIGNIFICANT LAND AREA, SOME OF WHICH IS IN GREATER THAN 15% SLOPES, CAUSING THE POTENTIAL FOR EROSION AND SEDIMENTATION

O   PROJECT SITE INCLUDES AREAS OF FEDERAL WETLANDS

O   PROJECT WILL REMOVE APPROXIMATELY 40 + ACRES OF NATURAL VEGETATION AND WILDLIFE HABITAT

O   PROJECT DEVELOPMENT WILL GENERATE SUBSTANTIAL ADDITIONAL TRAFFIC ON THE LOCAL ROAD SYSTEM

O   PROJECT WILL INTRODUCE A NEW, INCREASE IN DWELLING UNIT DENSITY

O   PROJECT WILL CREATE A DEMAND FOR ADDITIONAL COMMUNITY SERVICES, FIRE, POLICE, HOSPITAL/OTHER EMERGENCY SERVICES, SCHOOLS, AND ETC.

O   PROJECT MAY HAVE A FISCAL IMPACT ON THE TOWN

6.   A formal Scoping Session was held by the TOWN OF CHESTER PLANNING BOARD on October 5, 1994. All Involved Agencies, Interested Parties and the general public were notified of said Scoping Session and invited to provide verbal or written comments regarding the DEIS Scope; and

7.   The TOWN OF CHESTER PLANNING BOARD, in consideration of the comments received at the Scoping Session and the potentially significant impacts identified as associated with the proposed Project adopted a DEIS Scope pursuant to 6NYCRR Part 617.8 on March 1, 1995; and

8.   The Applicant submitted an initial DEIS to the TOWN OF CHESTER PLANNING BOARD May, 1995 with supplemental submittals in June and July of 1995 for review for completeness; and

9.   The Planning Board referred the DEIS to the Town Consultants for review and comment as to the completeness of the DEIS; and

10.   The Town Consultants and other parties provided the Planning Board with written comments regarding completeness of the DEIS with regard to the adopted scope and identified areas of concern; and.

11.   After careful consideration and deliberation of the DEIS and written comments, the Planning Board, acting as Lead Agency in accordance with SEQR, 6NYCRR Part 617.9 determined the DEIS not to be complete with regard to scope and content for the purposes of commencing public review; and

12.   The Applicant submitted a revised DEIS to the TOWN OF CHESTER PLANNING BOARD dated November, 1995 for review for completeness; and

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 4**

13. The Planning Board referred the DEIS to the Town Consultants for review and comment as to the completeness of the DEIS; and

14. The Town Consultants and other parties provided the TOWN OF CHESTER PLANNING BOARD with comments regarding completeness of the DEIS with regard to the adopted scope and identified areas of concern; and

15. After careful consideration and deliberation of the DEIS and comments offered, the Planning Board, acting as Lead Agency in accordance with SEQR, 6NYCRR Part 617.9, on December 6, 1995, determined the DEIS dated November, 1995 to be complete and sufficient with regard to scope and content for purposes of commencing public review, and however, identified that at that time there were serious technical issues with regard to the traffic analysis, ground water resources/water supply, community impacts and site layout/design; and

16. A combined Notice of DEIS Completion and Notice of Public Hearing, and the DEIS documents were filed on December 21, 1995, with all Involved Agencies and Interested Parties in accordance SEQR, 6NYCRR Part 617.12. In the interest of a complete and thorough public review, the Notice and documents were also filed in the Town Hall and Town Public Library, and were made available under the FOIL procedures; and

17. The Public Hearing was also duly noticed in the <u>Times Herald Record</u> on January 17, 1996 in accordance with 6NYCRR Part 617.12 and on February 8, 1996 in accordance with §83.10G.; and

18. The Public Hearing was held, in accordance with SEQR, 6NYCRR Part 617.12 (d) and the Notice of Completion, on Wednesday February 21, 1996, in the Chester Town Hall, Kings Highway, Chester, NY, for the purposes of considering the environmental impacts of the action as described in the Notice of Hearing; and

19. Written comments regarding this Project were requested and received for a period of ten (10) days following the close of said public hearing by the SEQR contact person in accordance with SEQR, 6NYCRR Part 617.8; and

20. The Planning Board, acting as Lead Agency, did review and carefully consider all oral and written comments submitted as part of the DEIS record, as well as the record of all Planning Board meetings regarding the Project; including recommendations from the Town Consultants, and requested that the Applicant address all such comments and outstanding areas of technical concern in an FEIS; and

21. A draft FEIS, which included revised Preliminary Subdivision Plats and Site Plans, dated March, 1997, was submitted to the Planning Board for review; and

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 5

22. The Planning Board immediately, distributed the draft FEIS to its Town Consultants for review as to completeness in addressing the comments received on the DEIS and outstanding technical issues; and

23. The Planning Board did receive comments from the Town Consultants, on the draft FEIS and these comments were incorporated in the public record, stating that the draft FEIS and supporting Plans were not adequate as to scope and assessment of outstanding technical issues to accept for public review; and

24. The TOWN OF CHESTER PLANNING BOARD reviewed and considered the draft FEIS, the revised Preliminary Subdivision Plat and Site Plan, the Town Consultants' comments and all other correspondence offered on the Project FEIS, and the Project in general, since the close of the public comment period on the DEIS; and found the documents not to be complete for purposes of commencing public review, and directed the Applicant to revise the submittals. The Applicant and TOWN OF CHESTER PLANNING BOARD agreed to waive all time frames for the preparation of the FEIS in accordance with 6NYCRR Part 617.19(a)(5)(ii)(a); and

25. A draft FEIS, which included revised Preliminary Subdivision Plats and Site Plans, dated May 15, 1997, was submitted to the Planning Board for review; and

26. The TOWN OF CHESTER PLANNING BOARD immediately, distributed the draft FEIS to its Town Consultants for review as to completeness in addressing the comments received on the DEIS and outstanding technical issues; and

27. The TOWN OF CHESTER PLANNING BOARD again received comments from the Town Consultants, on the draft FEIS and Plan submittals, and these comments were incorporated in the public record, stating that the draft FEIS and supporting Plans were not adequate as to scope and assessment of outstanding technical issues to accept for public review. The Applicant and TOWN OF CHESTER PLANNING BOARD agreed to waive all time frames for the preparation of the FEIS in accordance with 6NYCRR Part 617.19(a)(5)(ii)(a); and

28. At this point the TOWN OF CHESTER PLANNING BOARD determined that the FEIS process would require detailed and specific PLANNING BOARD input in order to receive a FEIS that would be adequate and satisfactory for the Lead Agency's Findings and public review and comment. That being the case a series of workshop sessions were established to review each outstanding area of concern. Workshop dates were:

|  |  |  |  |
|---|---|---|---|
| ➤ | 10/30/96 | ➤ | 2/19/97 |
| ➤ | 11/19/96 | ➤ | 4/16/97 |
| ➤ | 12/18/96 | ➤ | 6/18/97 |
| ➤ | 1/15/97 | ➤ | 7/16/97 |

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 6**

29. A draft FEIS, which included revised Preliminary Subdivision Plats and Site Plans, dated October, 1997, was submitted to the TOWN OF CHESTER PLANNING BOARD for review; and

30. The TOWN OF CHESTER PLANNING BOARD immediately distributed the draft FEIS to its Town Consultants for review as to completeness in addressing the comments received on the DEIS and outstanding technical issues; and

31. The TOWN OF CHESTER PLANNING BOARD again received comments from the Town Consultants, on the draft FEIS and Plan submittals, and these comments were incorporated in the public record, stating that the draft FEIS and supporting Plans were not adequate as to scope and assessment of outstanding technical issues to accept for public review; and

32. A draft FEIS, which included revised Preliminary Subdivision Plats and Site Plans, dated April, 1998, was submitted to the TOWN OF CHESTER PLANNING BOARD for review; and

33. The TOWN OF CHESTER PLANNING BOARD again received comments from the Town Consultants, on the draft FEIS and Plan submittals, and these comments were incorporated in the public record, stating that the draft FEIS and supporting Plans were not adequate as to scope and assessment of outstanding technical issues to accept for public review; and

34. A revised draft FEIS, which included revised Preliminary Subdivision Plats and Site Plans, dated August, 1998, was submitted to the TOWN OF CHESTER PLANNING BOARD for review; and

35. The TOWN OF CHESTER PLANNING BOARD again received comments from the Town Consultants, on the draft FEIS and Plan submittals and reviewed same at a regularly scheduled meeting on Wednesday, September 2, 1998 and concurred that the draft FEIS could be considered complete and satisfactory with certain modifications; and

36. A revised draft FEIS, which included revised Preliminary Subdivision Plats and Site Plans, and the modifications as requested by the PLANNING BOARD on September 2, 1998 was submitted to the TOWN OF CHESTER PLANNING BOARD for review at the September 30, 1998 meeting; and

37. The TOWN OF CHESTER PLANNING BOARD after consideration of the revised draft FEIS and Plan documents and comments provided by the Town Consultants and the Applicant, and subject to incorporation of certain additional modifications as outlined in the September 30, 1998 TOWN OF CHESTER PLANNING BOARD meeting, did pass a Resolution on September 30, 1998 accepting the revised FEIS subject to the incorporating certain minor modifications as delineated in the meeting minutes; and

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 7

38.   On September 30, 1998 in the Resolution, accepting the FEIS as complete, the Board authorized that a Notice of Completion be filed after receipt of a completed FEIS with the minor modifications, and as required by SEQR, a twenty-five (25) day public comment period be provided; and

39.   On October 3, 1998 a Notice of Completion of the FEIS and the FEIS documents were filed with all Involved Agencies and Interested Parties; said notice stating a twenty-five (25) day public comment period. Notice of completion of the FEIS and the opportunity for a public comment period were also published and posted as the follows:

&gt;   Posted October 6, 1998 in the Chester Town Hall, Post office and Library

&gt;   Published October 6, 1998 in the Times Herald Record

Copies of the documents were also filed at the Town Hall and Public Library to aid the general public review, and were made available to the public under the FOIL procedures; and

40.   Public comment period was open on the FEIS until Wednesday, October 28, 1998. No comments were received on the FEIS by that date; and

41.   On October 28, 1998, the TOWN OF CHESTER PLANNING BOARD reviewed and discussed the comments received on the FEIS and reviewed an outline of the format for the Lead Agency Findings; and

42.   On November 4, 1998, at the regular Planning Board Meeting, the TOWN OF CHESTER PLANNING BOARD reviewed and considered reviewed the FEIS and discussed and concurred on the conclusions to be presented in this Statement of Findings: .

WHEREAS, the TOWN OF CHESTER PLANNING BOARD has independently reviewed and considered the FEIS, as well as the DEIS, and the public record on same, and all Planning Board meeting minutes, correspondence and data related to the Project and the Project area; and

WHEREAS, as a result of an independent examination, and careful review, the TOWN OF CHESTER PLANNING BOARD finds that, after due consideration of all relevant documentation and comments, it has more than adequate information to evaluate all of the relevant benefits and potential impacts of the Project related to the Site Plan review and Subdivision; and

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 8**

THEREFORE BE IT RESOLVED, IN ITS REVIEW OF THE ENTIRE PUBLIC RECORD REGARDING THIS ACTION, THE TOWN OF CHESTER PLANNING BOARD HAS SPECIFICALLY CONSIDERED THE FOLLOWING IMPACTS, FACTORS AND MITIGATION MEASURES INCORPORATED IN AND RELATED TO THE FINAL ENVIRONMENTAL IMPACT STATEMENT AND HEREBY MAKES THE FOLLOWING FINDINGS AS REQUIRED BY SEQR:

**SITE**

The proposed site for the Greens at Chester, Tax Parcel # 8-1-1.3 is a total of 117.7 acres situated in both the Towns of Chester and Goshen; 113.4 acres in the Town of Chester and 4.2 acres in the Town of Goshen. It is generally situated adjacent ans south west of the Village of Chester line, with NYS Route 94 to the south, Conklingtown Road to the south/southwest, and the Town of Goshen town line to the north. The site slopes fairly steeply up from NYS Route 94 and encompasses a "knoll" at elevation 600 feet that is visible from most of the surrounding areas.

**PROJECT DESCRIPTION**

The proposed Greens At Chester project is a residential subdivision that comprises a total of 455 dwelling units. These units will be a combination of one- and two-unit dwellings; 245 one-unit dwellings and 210 two-unit dwellings constructed in 105 structures. The typical lot size depicted for the one-unit dwellings is 3,600 square feet with a building floor area of 1,700 to 2,500 square feet in a two story structure. The two-unit dwellings will each be located on lots of approximately 1,760 square feet and will have a typical building square footage of between 1,500 and 2,300 square feet in a two story structure. There will be a substantial acreage, over 80 acres, that will be held in common and be owned and maintained by a Homeowners' Association. The Homeowners' Association will be responsible for the maintenance of a variety of services such as the following:

- Maintenance and snow removal on all Private Roads
- Maintenance of all common area, including landscaping in these areas
- Maintenance of all recreational facilities, including, tennis courts, pool and community building
- Maintenance of all stormwater management facilities that are not associated with the one (1) dedicated Town Road
- Maintenance of all fences and buffer plantings as indicated on the Plans

The actual Subdivision Plat and Site Plan have been evolving throughout the SEQR process. The TOWN OF CHESTER PLANNING BOARD determined early in this process that the full Preliminary Plat development plans and details were required to fully assess the potential impacts and adequacy of the mitigation measures offered. Included with the FEIS is a final set plans that represent the Preliminary Subdivision Plat and Preliminary Site Plan. The TOWN OF CHESTER PLANNING BOARD has accepted this Plat and Plan (which are considered adopted by reference herein) as the foundation for the Findings and conclusions presented herein.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 9

The Preliminary Subdivision Plat and Site Plan indicate that there will be one primary site access point from NYS Route 94 with secondary access from Conklingtown Road. The (1) proposed public road (Chester Greens Road) will connect between NYS Route 94 and Conklingtown Road. This road have a sixty (60) feet right-of-way and will have a pavement width of thirty (30) feet for it's entire approximately 2,500 feet in length. Sidewalks will be constructed on the entire north side and on south from the first private road on the south side (Gates Way) to the last private road before Conkingtown Road (Peach Tree). The remaining site roads will be private roads that will be constructed in accordance with Town Specifications, but with no dedicated or described right-of way. These roads will encompass approximately 5,600 feet of additional thirty (30) feet wide roadways with sidewalks, almost 9,500 feet of twenty-four (24) feet wide private roads with some on-road parking, and over 3,900 feet of twenty (20) feet wide small private courts. In total there will be 1,338 parking spaces provided within the project. These spaces will include a combination of types and locations, including, spaces within garages, in driveways on individual lots, on roads outside of the travel lanes, and in small parking lot configurations off the twenty (20) feet wide courts. These spaces translate to an average of 2.94 spaces per dwelling unit. The roadway network incorporates several level areas that are out of the main traffic flow that can be used as school bus stops for the safe pick-up and discharge of students.

The site will be served by both public water and sewer. At least initially the water system will be maintained by a Transportation Corporation established by the Applicant. It will be offered for dedication to the Town of Chester as a Town Water District for long-term maintenance. The project will have an average daily water demand of approximately 135,000 gallons. The water system will be comprised of the following components:

- O   five supply wells:
  - ▸   TW4      – onsite with a tested capacity of   50gpm
  - ▸   TW5      – onsite with a tested capacity of   50gpm
  - ▸   TW11     – onsite with a tested capacity of   40gpm
  - ▸   TW13     – onsite with a tested capacity of   45gpm
  - ▸   WELL1A   – offsite with a tested capacity of 100gpm
- O   transmission and distribution lines
- O   a 255,000 gallon storage tank
- O   treatment facilities as required by the Orange County Health Department

Sewage treatment for the site will be provided by the Town of Chester Industrial park sewage treatment plant. The overall sewage demand for the project at full build out will be approximately 135.00 gallons per day. The Town sewage treatment plant will be constructed with a greater capacity, approximately 1 MGD gallons per day, and will discharge to Black Meadow Creek. The Applicant will enter into a contract with the Town for the Greens At Chester proportionate construction cost share (based in sewer demand) of the construction costs of the new plant. The sewage collection system to service the site and access the new plant will be constructed by the Applicant and will be maintained initially by a Transportation Corporation established by the Applicant. This system will be offered to the Town of Chester for long-term maintenance as a part of a newly created Town Sewer District.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 10

The project site will be buffered from adjoining property by a minimum of thirty (30) feet of undeveloped buffer area that either has existing vegetation, will be planted with dense types of vegetation that will provide a both a visual and actual separation, and/or will be provided with a fence for and landscaping. The Preliminary Subdivision Plat and Site Plan incorporate a comprehensive landscaping plan that addresses landscaping and visual setting in the following categories or areas:

- O    Public and private roads
- O    Parking areas
- O    Foundation and individual lot typical planting schemes
- O    Open lands
- O    Special treatment areas, such as the entrances and recreational areas which will establish the "tone" for the character of the development

The Landscape Plan describes the character of the development to be as follows:

"a park-like setting, with a diversity of plant materials and landscape features. Wetlands, ponds, stone walls, retaining walls, and feature boulders will all be blended to create a pleasing, harmonious effect. Necessary site features such as trash receptacles, mailboxes, level areas for school bus stops, fire protection hydrants,, signs, fences, street lights, and the recreational center will contain one central theme as to design, lettering, style and color, creating a uniform texture for each neighborhood. The site contains several different individual wetland areas, undisturbed wooded areas that will provide both passive recreation and open space for nature walks."

The site will also contain active recreation and community areas for use by the residents. These will include, a swimming pool, tennis courts and a community building.

The proposed project layout offers the following minimum separation and bulk standards:

| BULK TABLE | | |
|---|---|---|
| MINIMUM STANDARD | DETACHED ONE-UNIT DWELLINGS NEIGHBORHOODS A, B & C | ATTACHED ONE-UNIT DWELLINGS NEIGHBORHOODS D & E |
| Front Setback to property line | 5' | 0' |
| Side Setback to property line | 5' | 0' |
| Rear Setback to property line | 5' | 0' |
| Front Setback to pavement or sidewalk edge | 15' | 15' parking lots 10' courts |
| Distance between buildings | 20' | 15' 6' open separation |
| Parking spaces | 2 (1 garage + 1 on-site) | 2.5 |



**ME** MACDONALD ENGINEERING

Executive Building
158 North Main Street
Florida, New York 10921

(845) 284-8518
Fax (845) 651-1971
macengr@warwick.net

February 6, 2006

Joseph Mlcoch, Building Inspector
Town of Chester
1786 Kings Highway
Chester, NY 10918

RE:    THE GREENS AT CHESTER
       NEIGHBORHOOD "A" (PHASE 3)
       NEIGHBORHOOD "B" (PHASE 1)
       NEIGHBORHOOD "C" (PHASE 2)

Dear Joe:

I have reviewed the above referenced plans from Pietrzak & Pfau (latest revised 1/13/06) as submitted to me on 1/20/06. The revisions now incorporate the following changes:

1.   The building floor elevations now include the design for the lowest footing elevation that could adequately drain to the stormwater network or other non-problematic location. Note 7) on the plans now states that "The higher of the lowest sewerable elevation (LSE) and the lowest footing drain elevation (LFD) shall be utilized in setting finished floors for the proposed dwelling units". In several cases, the design engineer has had to raise the design lower floor elevations to accomplish this. Also, I have discussed the proposed connection of the roof and footing drains into the catch basin and yard drains with Highway Superintendent Dave Bell. He has agreed that these connections are preferable to daylighting drains into potential surface problem areas.

2.   The subdivision plans now contain a note, "detailed site plans shall be prepared at the time of Building Permit application. These site plans shall indicate the discharge point of the roof and footing drains for each proposed structure as well as other information required by the Town of Chester Building Inspector. Such roof and footing drains shall comply with the provisions of Town of Chester Code Section 83-23E and A101-18." As discussed with Town Engineer Art Tully, this will insure that once the proposed housing unit is located on each subdivided parcel, all service water, sewer and drainage piping laterals can be checked for adequate building clearances and code compliance prior to the issuance of a building permit.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 11**

The project also offers a bedroom mix and count as follows: 132 -four bedroom units; 191- three bedroom units; and 132- two bedroom units.  For an overall bedroom average in all dwelling units of three (3) bedrooms.

The project is proposed to be constructed in five (5) phases.  Each phase is designed and intended to be able to function independently.  The phases are described as follows:

| PHASE | NEIGHBORHOOD DEVELOPED | # OF UNITS | CUMULATIVE # OF UNITS |
|---|---|---|---|
| 1 | B | 82 | 82 |
| 2 | C | 67 | 149 |
| 3 | E | 110 & CLUBHOUSE | 259 |
| 4 | A | 96 | 355 |
| 5 | D | 100 | 455 |

The Preliminary Subdivision Plat and Site Plan identify the specific location of each of these phases, how much of the actual site acrage they encompass, as well as which roadways they contain.  These Plans are adopted herein by reference.  The Applicant has offered that the actual construction time table on the phases is dependent on the housing market.  However, it could take as little as five (5) years to complete full project build out.

**PURPOSE AND NEED FOR PROJECT**

The DEIS cited the project purpose as the project sponsors objectives to develop the site in order to receive a reasonable return on his investment.  The project sponsor proposes to develop the site in phases in order to be mindful of the community and consistent with anticipated housing market demands and needs.  The DEIS also cites that the project fills a market niche that has not been provided in the Town of Chester in over ten (10)years in the provision of two-unit dwellings.  The Applicant also offers that the project as proposed and designed will allow for a more "affordable" one-unit dwelling in a subdivision setting than is currently the norm for new construction in the County and Town.  Finally, the DEIS offers that the County population projections do indicate an increase to the year 2000, and that in previous decades the Town of Chester did grow at a faster rate than the County as a whole, thus it is implied that there is a need for additional housing stock.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 12**

### PLANNING AND ZONING

The portion of the project site located within the Town of Chester is totally contained within a SR-8 Zoning District classification. The SR-8 district is the highest density residential district in the Town. It allows a wide range of housing types and densities ranging from a one-unit dwelling at one (1) unit per 30,000 square feet to multi-unit dwellings at up to 14 efficiency units per acres. The SR-8 zoning district also allows a special "cluster" subdivision dwelling unit arrangement in accordance with §98.20.1 of the Town of Chester Code. The intent of this provision is to:

> " ...provide more flexibility in the design single- and two-family dwelling unit development in order to promote a variety of dwelling unit types, densities and values within certain guidelines to reduce the potential of significant impacts on community facilities. ..."

§98.20.1 of the Town of Chester Code permits only one- and two-unit dwellings and establishes maximum density by both dwelling unit counts and bedroom counts. The maximum number of dwelling units allowed per acre is four (4). The maximum, average number of bedrooms allowed is three (3); with a maximum of 40% of the dwelling units allowed to be four (4) bedroom units, and at least 20% of the dwellings required to contain two (2) bedrooms. Parking spaces are required at a minimum of two (2) per dwelling unit. There is also a requirement that a minimum of eight hundred (800) square feet per dwelling unit be provided in usable open space/recreational lands.

In a phased construction proposal, the required and/or maximum bedroom mix and open space recreational lands must be provided at each phase to ensure the integrity of the project. This provision of the Town Code does not establish minimum lot sizes per dwelling unit, nor does it set minimum bulk requirements. It is intended that each project be evaluated as to the appropriate minimum lot sizes and bulk or setback requirements based in the individual project design.

The Greens At Chester project is an application under §98.20.1 of the Town of Chester Code. The project consists entirely of one- and two-unit dwellings on individual lots. The project as proposed appears to meet the intent and all of the specific provisions of this section of the Code. The overall bedroom breakdown as offered does meet the provisions of the Code, but no specific documentation is provided as to how the appropriate bedroom mix will be maintained per each of the five (5) phases. The open space/recreational lands requirement is met and exceeded by the project, and if in fact it does appear that sufficient open space/recreational opportunities will be provided in Phase 1 to accommodate the requirements for the entire project.

The Greens proposal incorporates public water and sewer as per the requirements of §98.20.1. It also provides a minimum of 2.94 parking spaces per unit, thus exceeding the minimum requirement set in the Code.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 13

The TOWN OF CHESTER PLANNING BOARD has given careful consideration to the review of this project and has spent considerable time and effort over the course of the four (4) year SEQR process to evaluate each aspect of the project layout and design. In fact the BOARD spent over ten (10) meetings in this time frame just discussing and evaluating the site layout and design. The BOARD has conducted this deliberate review in order to ensure that the proposal will meet the objectives of §98.20.1, all other applicable provisions of the Town Code, as well as, the intent of SEQR, that is not to create significant adverse environmental impacts. Much of the PLANNING BOARD'S deliberation and conclusions are contained in the various topics of this Findings statement.

CONCLUSIONS:

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to planning and zoning analysis:

1.  On balance the Greens At Chester project as proposed, and described herein, meets the intent of §98.20.1 of the Town of Chester Code.

2.  *As a condition of Preliminary Subdivision/Site Plan approval, the Applicant will be required to amend the Construction Phasing Plan to document that the bedroom mix for each phase will be in accordance with §98.20.1B.(8) of the Town of Chester Code.*

3.  *The TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer,* depending upon the final approval oversight process that is established, *will ensure that the proposed layout and design is implemented and strictly adhered to at each project phase (see CONSTRUCTION PHASING).*

## GEOLOGY, SOILS, TOPOGRAPHY

### DESCRIPTION OF IMPACTS

GEOLOGY:  The underlying rock formations at the site are described as folded shale and sandstone. These rock identities were verified in the drilling of test wells at the site.   Bedrock is very deep below the site soils. Evidence from unused well casings indicate that bedrock is at a depth of more than fifty (50) feet. A small aquifer lies south of the site, northwesterly of Black Meadow Road, north and south of Black Meadow Creek.   There was no documented communication between the waters infiltrating or running off the project site and the aquifers.

SOILS:  Predominant soil type found on the site is Mardin. The Mardin soils are deep, moderately well-drained soils that are gently sloping to very steep. They are formed in glacial till.  however the site also contains several varieties of silt loams, such as,  Erie  Gravelly Silt Loam,  Bath-Nassau Shaly Silt Loam,

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 14

Canadaugua Silt Loam, and Riverhead Sandy Loam. None of these soils are classified as prime agricultural soils in accordance with the United States Department of Agriculture. These soils are also not highly erodible, nor do they have poor structural stability characteristics.

TOPOGRAPHY:  The site elevations range from 500 to 600 feet.  The most prominent knoll on the site is at the 600 feet elevation mark and is located just south of the proposed Chester Greens Road in Neighborhood "B".  There are numerous areas on the site that contain slopes of greater than fifteen percent (15%).  The largest of these areas are located along the western property boundary at Conklingtown Road for most of the length south of the proposed Chester Greens Road and on the south and north side of the "knoll" to the south on the site. There is also a "band" of area with fifteen percent (15%) or greater slope through approximately the middle of the site and again to the north just south of the largest wetland area.     While the project layout attempts to conform to existing slopes, there will still need to be a substantial amount of grading to accomplish the plan as proposed. The Applicant has offered a site grading plan which indicates all existing and proposed new contours throughout the site. The highest point on the site, the top of the knoll in Neighborhood "B" will remain as the highest point at the site.

<u>MITIGATION MEASURES</u>

The Project design plans and details incorporate a grading plan that attempts to be sympathetic to existing site slopes and topography, thus reducing the need for extensive cut and fill/grading. The building lots are arranged to run with the slope/topography to the extent possible to reduce the potential for major grading requirements to create building pad areas for the dwellings. The use of private roads with essentially no right-of-way beyond the paved travel lanes also reduce the amount of cut and fill that would be required.  The short, private court access roads to a large number of the dwellings have an even narrower width and shorter overall length which will also reduced the width of cuts and fill/grading.

The Project design incorporates a full erosion and sedimentation control plan which details the types and timing of measures that will be employed to reduce the potential for erosion and sedimentation impacting the function of the wetlands on and off site. This erosion and sedimentation plan, together with the stormwater management plan have been reviewed by the Town Engineer and found to be appropriate. *The Town Engineer and Code Enforcement Officer will be routinely inspecting the property while under construction to ensure that the erosion and sedimentation control measures are working properly. In addition, the Applicant must submit appropriate documentation to the NYSDEC for a SPDES permit for the amount of land disturbance and stormwater management program that is proposed. NYSDEC will also review these plans to ensure their adequacy at protecting the surface water and wetlands and will periodically inspect the site for conformance to the plans.*

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 15**

## CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to Geology, Soils and Topography:

1. The apparent depth to bedrock should not result in any need for blasting or major rock excavation to accomplish the proposed site design.

2. The proposed site layout and grading plan attempts to conform to site slopes/topography to minimize to the extent possible the amount of grading/cut and fill and soil disturbance at the site.

3. The Plans document appropriate erosion and sedimentation control measures that will be put in place at the start of construction and remain until the new vegetation is established. The Town Engineer and Code Enforcement Officer will routinely inspect the site while under construction to ensure that these measures are in place and providing the protection as intended.

4. NYSDEC acceptance of the SPDES documentation for the amount of earth disturbance at the site, and their periodic inspection at the site will also provide a check and balance that the appropriate measures are in place and remain so to protect the surface water and wetlands.

5. The mitigation measures as outlined are adequate and satisfactory to ensure that, to the extent possible, the potential significant adverse environmental impacts associated with the site geology, soils and topography have been addressed.

## WATER RESOURCES

### SURFACE WATER           (SEE ALSO DRAINAGE)

### DESCRIPTION OF IMPACTS

The project site is tributary to Black Meadow Creek. The tributary stream on the site is not classified as "protected" by NYS Department of Environmental Conservation; it is a class "D" stream. Black Meadow Creek is classified as protected with a "C" classification just north of the confluence of the two (2) tributaries east of NYS Route 94. Portions of the project site are located within the Floodplain Boundaries as identified on the Town of Chester Flood Insurance Rate Map (FIRM). The DEIS and Subdivision Plat/Site Plans submitted with same, indicated that no development activities would be taking place within the Regulatory Floodway or Floodplain boundaries. The most recent versions of the Preliminary Subdivision Plat and Site Plan as presented with the FEIS appear to meet the objective stated in the DEIS. However, the Regulatory Floodway or Floodplain boundaries are not depicted on these Plan sheets.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 16

Potential surface water impacts associated with the development proposal are primarily related to increases in the rate, volume and quality of stormwater discharge, the potential for erosion and sedimentation as related to the site grading, and the potential for floodway/floodplain impacts both onsite and downstream. The site grading as proposed also has the potential to redirect stormwater flows onsite and offsite, thus potentially impacting on the surface waters and wetlands ability to function.

As noted previously, the site layout and design was modified during the preparation of the FEIS. The potential impacts associated with the revised grading plan, stormwater management analysis and plan, as well as, on the wetlands were all analyzed in the FEIS. The Preliminary Subdivision Plat and Site Plan documents also contain a proposed erosion and sedimentation control plan for the new site layout. The proposed grading and landscape plan ensure that all disturbed areas of the site will be reclaimed with appropriate vegetation, while the erosions and sedimentation control plan ensures that the streams and wetland areas will be protected from siltation during construction activities. The new stormwater management plan proposes the use of the onsite federal wetlands to attenuate stormwater flows prior to their exiting the site. The Applicant has offered a basis for this design that he believes documents that the functions of the wetlands will not be impaired as a result of their use for stormwater management.

<u>MITIGATION MEASURES</u>

The Applicant provided a full stormwater analysis, both pre- and post-development. The Applicant also offered a system design to manage the anticipated post-development stormwater flows for rate, volume, velocity and quality. This management system design was modified from that proposed in the DEIS. As noted above, the new plan calls for the use of the onsite wetlands as the major component of stormwater management. The Town Engineer has reviewed the revised grading plan, erosion and sedimentation control plan, and stormwater analysis presented in the FEIS and has determined that they meet the objectives of the Town of Chester and NYSDEC with regard to attenuation of increased stormwater flows resulting from the site development as well as addresses the requirement to address first flush quality of stormwater. *The grading plan, erosion and sedimentation control measures and stormwater management plan will all be included as conditions on any final Subdivision/Site Plan approval on this project. As such, the TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer,* depending upon the final approval oversight process that is established, *will ensure that these plans and measures are all implemented as proposed and that they are strictly adhered to at each project phase (see CONSTRUCTION PHASING).* The Applicant must also submit Plans to the NYS Department of Environmental Conservation (NYSDEC) for review in accordance with the SPDES program for the amount of land to be disturbed at the site. NYSDEC will also review these plans for concurrence with state guidelines and will periodically inspect the site to ensure conformance. The stormwater analysis also investigated offsite stormwater management structures to which the site is tributary ability to accommodate the

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 17

proposed stormwater flows. The Town Engineer has reviewed the project engineer's certifications that these facilities have adequate capacity, and is satisfied that the issue has been adequately addressed. *The final decision on the stormwater management plan and its potential impacts to the surface waters and wetlands lies with the US Army Corps of Engineers (see ECOLOGY). The Applicant shall provide a response from the US Army COE indicating that the stormwater management pln as proposed is acceptable under their regulations, prior to Final Subdivision/Site Plan Approval. No construction activities will take place on site unless and until the Army COE determines that the proposed Plans meet the federal guidelines.* The Applicant has submitted the wetland delineation report and stormwater management proposal to the Army COE for concurrence (see DRAINAGE). *If the Army COE does not concur with the Applicant's proposals, the Final Subdivision Plat and Site Plan will be modified as required by the Army COE and resubmitted to the TOWN OF CHESTER PLANNING BOARD for review. If the revised Plans differ significantly from those analyzed in this SEQR process, the TOWN OF CHESTER PLANNING BOARD will consider the need to reopen the process and amend this Findings.*

*The Applicant will be required to delineate the actual boundaries for the Regulatory Floodway and Floodplain on the Final Subdivison Plat and Site Plan. Per the Town of Chester Code, no development activities will be permitted within the Regulatory Floodway and all development activities within the Floodplain (outside of the Floodway) will require review and approval of a Development permit by the Town Permit Administrator.*

## CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to surface water resources:

1.    The full design, analysis detail, and plans for the proposed site grading, stormwater rates, volumes and flow direction, stormwater management, and erosion and sedimentation control measures, meet the TOWN OF CHESTER guidelines and objectives for the protection of surface water resources.

2.    The final selected oversight process that will be established, will ensure that these plans and measures are all implemented as proposed and that they are strictly adhered to at each project phase (see CONSTRUCTION PHASING).

3.    The Regulatory Floodway and Floodplain can be adequately protected, and the stormwater management plan has given adequate consideration to the placement and elevation of dwelling units to ensure protection from flooding by the wetlands during storm events.

4.    *Should the Army COE and/or NYSDEC find that the plans as offered do not meet their objectives and do cause adverse impacts, the TOWN OF CHESTER PLANNING BOARD will require that the Final Subdivision Plat*

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 18

*and Site Plan be modified as required and resubmitted to the TOWN OF
CHESTER PLANNING BOARD for review.   If the revised Plans differ
significantly from those analyzed in this SEQR process, the TOWN OF
CHESTER PLANNING BOARD will consider the need to reopen the
process and amend this Findings.*

## GROUND WATER

### DESCRIPTION OF IMPACTS

The proposed Greens At Chester project will introduce a new substantial
demand on ground water resources with a daily water demand at full build-out
of 134,290 gallons.  The project site is not currently served by a public water
system.  The closest public water system is in the Village of Chester and it does
service the Whispering Hills development immediately adjacent to the Greens'
site to the northeast.  The Village of Chester water supply comes from a well
located in the Black Meadow Aquifer.  The adjoining developed lots in the Town
of Chester along Conklintown Road and NYS Route 94 are served by individual
on lot wells.  There is no Town Water District.

The Applicant proposes to install a total of five (5) wells to provide adequate
water service for the full daily demand and potential fire flows.  Four (4) of
these wells are located on the site, and one (1) well is located on an out parcel
across NYS Route 94.  The offsite well 1A is the closest proposed Green At
Chester well to the Village of Chester well at over 3,700 feet away.  The other
four onsite wells are well over one (1) mile from the Village well.  Four (4) of
the five (5) wells are bedded in a bedrock aquifer,  only well TW-4, which is
located onsite, is a sand and gravel well.  During initial pump test for the
proposed wells interference was evaluated between well TW-4 and well 1A
which are a distance of 3,760 feet apart.  There was no discernable water level
drawdown in well TW-4 during pumping for well 1A.  The Village well is located
an even more substantial distance away then these two well are apart. .This
fact along with the geological data strongly indicate that well 1A, completed in
the bedrock aquifer, is not directly hydraulically connected to the sand and
gravel aquifer in which the Village well is located.

Pump tests were performed on four (4) of the proposed wells in August of
1990, and on the fifth, offsite well in August, 1991.  During these tests, other
private adjacent property wells were also monitored for interference.  The test
data indicated five (5) private wells on Conklintown Road and eight (8) wells
on NYS Route 94 did experience drawdowns of up to 41 feet.  During these
pump tests, the wells were simultaneously pumped at a combined rate equal to
two (2) times or greater the average demand of the project for three (3) days.
Therefore, the water-level interference in offsite, private wells that may occur
during normal operation of the proposed wells will be substantially less than the
observed tests.  There were also reports of water quality problems (turbidity,
cloudy water) during pump tests of proposed wells. These conditions have been
reported to continue periodically well after (several years after) the tests were

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 19

completed. These conditions appear to indicate that these problems are more likely the result of improper well construction or poorly developed wells in those instance were the problem persists.

The test data reported from the pump tests indicated that at least two (2) of the wells, TW-11 and TW-13 did not appear to reach a steady state condition during the pump test period. The water levels in these wells appeared to continue to decline. The Applicant's ground water consultant provided calculations and evidence in the FEIS that had these two (2) wells been pumped at the rates proposed for yield in the water supply system, they would have reached stable water levels. The Applicant's consultant has certified in the FEIS that the five (5) wells can provide safe yields as follows, which will meet the Department of health and NYSDEC requirements for safe sustained yield with the highest well out of service:

| WELL # | TESTED CAPACITY | PROVEN CAPACITY |
|--------|-----------------|-----------------|
| TW-4   | 50              | 50              |
| TW-5   | 50              | 50              |
| TW-11  | 42              | 40              |
| TW-13  | 48              | 40              |
| 1-A    | 100             | 100             |

With these revisions, the total water supply available to the Greens At Chester is 285 gpm, or the equivalent of 410,400 gpd, as compared to the average daily demand of 134,290. Testing to date indicates that there should be sufficient water available to the site.

The Applicant or the new Homeowners' Association will be responsible for the on-going maintenance of the proposed water system until such time as it is offered for dedication to the Town as a Special Improvement District. The construction phasing plan for the project identifies various stages or phases in the project development where water supply improvements will be required to support the proposed development.

## MITIGATION MEASURES

*The Applicant will be required to perform testing programs in accordance with the TOWN OF CHESTER CODE. Wells TW-4, TW-11 and 1-A will be pumped for a 72-hour test period, and any off-site interference and/or impacts will be identified. All property owners within 1,000 feet of the wells being tested, as well as, all property owners abutting the site along Conklingtown Road will be notified ten (10) days prior to the initiation of testing ; to ascertain their interest*

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 20**

*in participating in the test monitoring. Testing will have to verify to the TOWN OF CHESTER and the regulatory agencies that a minimum of 600 gallons/unit/day, or a total of 189 gpm, is available for this development per Town and State codes. The additional testing will be completed and the results made available to the Town Engineer prior to Final Subdivision/Site Plan approval.*

*If the Town Engineer determines that there are adverse effects to offsite, private wells, the property owner will be eligible for remedial action. This action could include providing a new well, or tying into the Greens At Chester water system. The cost of such remedial action will be borne by the Applicant.*

*The water supply system must also be approved by the NYS Department of Environmental Conservation and the Health Department. Additional testing will also be required by these agencies and shall be completed prior to Final Subdivision/Site Plan approval. The TOWN OF CHESTER PLANNING BOARD will notify the Health Department of their concern regarding potential water quality impacts associated with the location of paved parking community building/recreation center and its proximity to Well # TW-11. If the Health Department does not accept the additional testing and/or the parking lot design in association with Well # TW-11, the Applicant shall submit an application for a Site Plan Amendment/Resubdivision to the TOWN OF CHESTER PLANNING BOARD to address the issues raised.*

*Also, well pumping during normal operations will be shifted from pump to pump, minimizing the effects of drawdown that were identified in the DEIS. Further, a spare pump will be provided by the Applicant and be maintained available on site at all times to ensure that adequate water can be supplied.*

*Ensuring that the water system elements are appropriately maintained by the Homeowners' Association will be a condition of Final Subdivision/Site Plan approval by the TOWN OF CHESTER PLANNING BOARD. Also, the TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer,* depending upon the final approval oversight process that is established, *will ensure that the proposed water system improvements are all implemented and maintained as proposed, and that they are strictly adhered to at each project phase (see CONSTRUCTION PHASING). The Applicant's engineer will certify to the Town Engineer that there is sufficient capacity of water to supply the specific Phase as proposed in the FEIS. No building permits will be issued until Town Engineer will confirm this certification.*

Page Two

3.    I have also reviewed the proposed sewer lateral connections for the following lots: Neighborhood "A", Lots 36, 43, 59 and 70; Neighborhood "B", Lots 32, 33, 67 and 73; Neighborhood "C", Lots, 7, 11, 38 and 45 wherein all are proposed to discharge into adjoining sewer manholes. I have also discussed this with Moodna Basin Administrator Phil Salerno. The proposal is acceptable conditioned on utilizing outside drops where necessary. No high penetrations utilizing internal downturns will be permitted. The subdivision plan sheet 24 of 24 shows the required drop configuration.

I trust the above will enable you to respond to the Orange County Health Department's inquiries made to your office during the course of their technical plan review of this project. Please feel free to contact me should you have any questions or require additional information.

Very truly yours,

MacDonald Engineering

Gerald P. MacDonald, P.E.

GPM/dm

cc:    Raymond Johanson, Chairman – Town of Chester Planning Board
       Arthur Tully, P.E.
       David Bell, Town of Chester Highway Dept.
       Philip Salerno, P.E.
       John Petroccione, P.E., - Pietrzak & Pfau

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 21

### CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to the ground water resources:

1. The documentation provided in the DEIS and FEIS indicates that there is sufficient water supply capacity available for the project.

2. *The additional testing protocol outlined in the FEIS that will be required to be completed prior to Final Subdivision/Site Plan approval will firmly document that the project has sufficient water supply capacity without significant adverse offsite impacts, or the TOWN OF CHESTER PLANNING BOARD will require that the project be modified. If the revised Plans differ significantly from those analyzed in this SEQR process, the TOWN OF CHESTER PLANNING BOARD will consider the need to reopen the process and amend this Findings.*

3. *Receipt of approvals from the NYSDEC and Health Department on the water supply system will ensure that the system as proposed will meet all applicable Town and State requirements.*

4. The Applicant/Homeowner's Association will have the ability to adequately maintain the water supply system until such time as a Special Improvement District is formed, is offered to, and accepted by the Town for dedication.

5. The final selected oversight process that will be established, will ensure that the elements of the water system are all implemented as proposed and that they are strictly adhered to at each project phase (see CONSTRUCTION PHASING).

### DRAINAGE

### DESCRIPTION OF IMPACTS

The DEIS concluded that the project site is comprised of five (5) drainage areas. All of these drainage areas are eventually tributary to Black Meadow Creek. Although a portion of the site does drain "through" the Whispering Hills site prior to entering a tributary to Black Meadow Creek. The Preliminary Subdivision Plat and Site Plan offered and analyzed in the DEIS have been modified as a result of the TOWN OF CHESTER PLANNING BOARD review process and comments. The Preliminary Subdivision Plat and Site Plan offered as offered in the FEIS include modifications to the overall site layout and grading plans. These modifications resulted in changes to the amount and location of impervious surfaces as well as the design for the proposed stormwater

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 22

management plans and erosion and sedimentation control plans. The site layout as currently proposed will result in approximately 37 acres of the site being covered with impervious surfaces. This increase in impervious surface will have a resultant increase in the quantity and velocity of runoff from the five (5) defined onsite drainage basins. The proposed site construction will also alter the quality of the runoff by introducing new pollutants in the runoff. The site grading plan will also alter existing site grading thus, in some instances, redirecting the stormwater runoff.

<u>MITIGATION MEASURES</u>

The FEIS contains a full hydrologic analysis of the potential increases of stormwater as a result of the project layout as proposed in the Preliminary Subdivision Plat and Site Plan incorporated in this document. It also details the impacts of the proposed stormwater management program on the increased stormwater runoff and documents that there will be "no net increase" in the rate of stormwater runoff from the site. This analysis addressed the two (2), five (5), ten (10), twenty-five (25) and one hundred (100) year storms, and determined that the management facilities as proposed would adequately address the stormwater flows within the parameter set of "no net increase" in the rate of stormwater runoff from the site.

The stormwater management plan incorporates the use of three (3) existing onsite federal wetlands as detention basins to attenuate the post-development stormwater flows. The three (3) wetlands will serve as detention basins tied into a series of interconnected site drainage structures. Some grading modifications will be required to the areas adjacent to the wetlands to provide the required storage capacity. The Preliminary Subdivision Plat/Site Plan as offered in the FEIS includes the design for a stormwater collection system that will convey the stormwater to the three (3) wetland areas onsite. The first flush quality control criteria of the NYS General SPDES will be met by the installation of water quality swales. Stormwater will be diverted to these swales by a low-flow orifice located in a catch basin, diverting the low flows to the swales while allowing higher flows to pass directly through to the detention basin wetlands. Deep sump catch basins will also be used, along with rip-rapped outlet stilling basins to effectively treat stormwater quality prior to it entering the wetlands. With the exception of the catch basins designed to be part of the Chester Greens Road, the on-going maintenance of the stormwater facilities will be the responsibility of the Homeowners' Association. The stormwater quality facilities will require periodic/annual inspections. The catch basins and other facilities will have to be cleaned on a yearly basis, with accumulated sediment and debris being removed for these facilities to continue to operate effectively. *Ensuring that the water quality elements of the stormwater management system are appropriately inspected and maintained by the Homeowners' Association will be a condition of Final Subdivision/Site Plan approval by the TOWN OF CHESTER PLANNING BOARD. Also, the TOWN OF CHESTER PLANNING BOARD, Town*

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 23**

*Engineer and/or Code Enforcement Officer*, depending upon the final approval oversight process that is established, *will ensure that these stormwater management plans and measures are all implemented and maintained as proposed, and that they are strictly adhered to at each project phase (see CONSTRUCTION PHASING).*

The elevation of the stormwater in the wetlands have been calculated for the one hundred (100) year storm detention. All building lots and base elevations for the proposed dwelling units at the site have been designed to be above the one hundred (100) year storm level.

NYSDEC and the Army Corps of Engineers will also have review and approval or acceptance authority over the proposed stormwater management plan. The wetland delineation report and engineering analysis for the use of the federal wetlands in the site stormwater management system has already been sent to the Army COE for review and acceptance. *The Applicant will be required, as a condition of Preliminary Subdivision/Site Plan approval, to refer all plans and specifications to NYSDEC in accordance with the State General SPDES Permit. Responses from each of these agencies will be required prior to Final Subdivision/Site Plan approval. Should the Army COE and/or NYSDEC find that the plans as offered do not meet their objectives and do cause adverse impacts, the TOWN OF CHESTER PLANNING BOARD will require that the Final Subdivision Plat and Site Plan be modified as required and resubmitted to the TOWN OF CHESTER PLANNING BOARD for review. If the revised Plans differ significantly from those analyzed in this SEQR process, the TOWN OF CHESTER PLANNING BOARD will consider the need to reopen the process and amend this Findings.*

<u>CONCLUSIONS</u>

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to drainage:

1.  The stormwater management plan and analysis of off-site stormwater structures have been thoroughly reviewed and found to meet the TOWN OF CHESTER guidelines for stormwater management.

2.  Use of the Army COE wetlands in the stormwater management plan are acceptable on the surface, however, concurrence from the Army COE is required for this use to be fully relied on.

3.  *Responses from the Army COE regarding the use of the wetlands in the stormwater management plan, and NYSDEC regarding the overall plans conformance to the NYSDEC Guidelines as required in the State General SPDES Permit are required prior to Final Subdivision/Site Plan approval.*

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 24

4. *Should the Army COE and/or NYSDEC find that the plans as offered do not meet their objectives and do cause adverse impacts, the TOWN OF CHESTER PLANNING BOARD will require that the Final Subdivision Plat and Site Plan be modified as required and resubmitted to the TOWN OF CHESTER PLANNING BOARD for review.  If the revised Plans differ significantly from those analyzed in this SEQR process, the TOWN OF CHESTER PLANNING BOARD will consider the need to reopen the process and amend this Findings.*

5. *The on-going inspection and maintenance of the stormwater management facilities can be provided by the Applicant and/or Homeowners' Association as a requirement of Final Subdivision/Site Plan approval.*

6. The construction phasing oversight plan as described in the section "CONSTRUCTION PHASING" will ensure that the stormwater management system elements required to support the various phase of development are installed at the appropriate times.

7. *The Town Engineer and/or Code Enforcement Officer shall receive an annual report from the Applicant and/or Home Owner's Association detailing all maintenance activities provided for the "first flush" treatment features of the stormwater management facilities.*

## ECOLOGY

### DESCRIPTION OF IMPACTS

VEGETATION:  There were no threatened or endangered species of vegetation identified at the project site. General vegetation types present at the project site include, meadow, old field, and upland forest. The project site is dominated by meadow.  These areas were actively farmed.  The predominant crop on the project site was cor.  These abandoned fields are currently dominated by meadow grasses and weeds.  The old meadow portions of the site are farm fields that have been abandoned for a longer period of time.  These areas encompass a combination of meadow grasses and woody pioneer species such as, bramble, red cedar, dogwood, pin oak saplings, sumac, sugar maple saplings, and white ash saplings. The upland forest areas are located in the upland areas, northwest portion of the site and areas up slope of the wetlands. These areas include such mature tree species as, pin oak, white ash, sugar maple, cherry, beech, and hickory.  They include shrub and ground covers such as, multiflora rose, Japanese barberry, poison ivy, honeysuckle and blackberry.

There are no NYS Department of Environmental Conservation (NYSDEC) regulated wetlands at the project site. The closest NYSDEC regulated wetland is "WR-3" located west of Conklingtown Road and north of NYS Route 94.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 25**

The project site is tributary to this wetland. A wetlands delineation report was completed for the project site. This report identified and delineated the existence of several federal defined wetlands totaling approximately 15 acres. The largest wetland area on the site is located in the northwestern portion, along the Goshen town line. Other wetland areas are located roughly in the center of the site to the south, between the two slopes, and in the northeast and southern corners. The wetlands can be classified as both wet meadow and wet woods. They contain species such as , purple loosestrife, woolgrass, reed canary grass, goldenrod, and purple-leaved willow-herb. Woody vegetation varieties include, pussy willow, dogwoods and elms. The wet woods dominant vegetation includes red maple, elm, pin oak, cottonwood, elderberry, and highbush blueberry. The primary functions of the wetlands on site include wildlife habitat, stormwater detention, augmentation of stream flow, and attenuation and filtration of contaminants and nutrients.

WILDLIFE: Again, no threatened or endangered wildlife species were identified at the site. However, the site also supports a variety of wildlife. Each of the vegetation types identified above provides a habitat at the site for certain species of birds and animals. During site inspections the following species were observed: white tailed deer, chipmunks, and squirrels. Many other species of mammals, reptiles, amphibians, and birds could reasonably be expected to utilize the site ad the surrounding environment. A complete potential listing is provided in Appendix "D" of the DEIS.

The development proposed in conjunction with the project as depicted on the Preliminary Subdivision Plat and Site Plan would disturb approximately 55 acres of the site. This would leave a balance of 62.7 acres theoretically undisturbed. This calculation is based in combining all of the areas proposed to be included in roads, total build out of lots, recreation and community areas, parking and other improvements. The undisturbed acreage primarily consists of the large wetland and neighboring woodland in the northwestern portion of the property, as well as other wetlands that have been delineated throughout the property. In all .31 acres of federal wetlands are proposed to be disturbed on the site. Other undisturbed areas at the site include open space fronting on NYS Route 94, open space along the northern/Village property line in the Orange & Rockland easement, buffer areas around the site perimeter, those between neighboring properties, and those along roadways.

## MITIGATION MEASURES

The project design in the "cluster" form of development offers a form of mitigation to the loss of vegetation and wildlife habitat by provides a much more greater areas of natural habitat and open space/vegetation retention. Further *the proposed landscape plan incorporates new vegetation in the buffer areas that will be of value to area wildlife*. Finally, *the project seeks to only physically disturb .31 acres of the 15 acres of federal wetlands on the site*, creating a much reduced potential impact on the very important natural functions that

**RESOLUTION**
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 26

these areas provide. The US Army Corps of Engineers has been referred these plans to ensure their concurrence that the proposed disturbance of site wetlands as well as their use in the stormwater management plan will not adversely effect their intended functions. The Town and the Applicant are awaiting the US Army Corps of Engineers response to the project review and their concurrence with the plans offered. *No construction activities will be initiated at the site until evidence of the US Army Corps of Engineers approval/concurrence is received by the Town Engineer. Should the COE response not accept or approve the Applicant's proposal, the Subdivision Plat and Site Plan will have to be modified as to the stormwater management plan and/or the wetland disturbance per the COE's comments.*

<u>CONCLUSIONS</u>

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to ecology:

1.    The loss of natural vegetation and wildlife habitat is a normal occurrence in development. The project design as proposed has attempted to provide for retention of open space and certain vegetation areas, which will in turn promote the retention of certain wildlife at the site.

2.    The project site is zoned in a high density residential classification which in the Town Comprehensive Plan and Zoning Law presumes intensive residential development. A typical subdivision at the site would remove far greater areas of existing vegetation and reduction of wildlife habitat by the provision of standard roadway layouts and larger, landscaped lots. The proposed "cluster" form of development incorporates much greater opportunities for the retention of open space and wildlife habitat.

3.    *If the US Army Corps of Engineers concurs with the proposed approach that the use of the wetlands for stormwater retention and first flush quality control will not impair their other functions, then the project will not have a significant impact on the wetlands on the site.*

4.    *If the Army COE does not concur with the Applicant's proposals, the Final Subdivision Plat and Site Plan will be modified as required by the Army COE and resubmitted to the TOWN OF CHESTER PLANNING BOARD for review. If the revised Plans differ significantly from those analyzed in this SEQR process, the TOWN OF CHESTER PLANNING BOARD will consider the need to reopen the process and amend this Findings.*

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 27

## TRANSPORTATION

### DESCRIPTION OF IMPACTS

The Greens At Chester project is located on the north side of NYS Route 94 and the east side of Conklingtown Road. Direct access to the site will be provided from both of these roadways. Indirect site access will be provided via NYS Routes 17 and 17M. A full Traffic Impact Analysis Study was prepared as part of the DEIS. This study was prepared using standard traffic engineering techniques. The following intersections were analyzed:

- Route 94/Conklingtown Road
- Route 94/Chester Greens Road (proposed)
- Conklingtown Road/Chester Greens Road (proposed)
- Route 94/Chester Industrial Park Road
- Route 94/Whispering Hills Drive
- Route 94/Route 17 eastbound ramps
- Route 94/Route 17M/Chester Mall
- Route 94/Route 17M/Route 17 westbound ramps
- Route 17M/Kings Highway/Lehigh Ave.

The Traffic Impact Analysis also considered the Route 17M corridor study and the improvements suggested in this document. The initial analysis did not assume that these improvements were in place in determining potential impacts associated with the traffic generation from the project. The study analyzed the traffic impacts in accordance with the five (5) proposed development phases and determined that the project phasing was a mitigation measure for traffic impacts, by creating incremental, rather than full impacts over an extended time frame.

The Traffic Impact Analysis addressed the capacity at the various intersections identified above in both a future "no-build" scenario and with the traffic generation associated with the Greens At Chester project projected over the five (5) phases of development. The Study concluded that the capacity of most of the intersections would be at acceptable levels of service in the year 2000 in the without the site generated traffic. Analysis of the traffic operations at the studied intersections with the site generated traffic included indicated:

- Route 94/Conklingtown Road - no major impacts associated with project, however, the intersection alignment and sight distance were sub-standard

- Route 94/Chester Greens Road (proposed) - levels of service would operate adequately at a level of service "C", however traffic warrants may be met in the future for a traffic signal

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 28**

O      Conklingtown Road/Chester Greens Road (proposed) - no major impacts were identified

O      Route 94/Chester Industrial Park Road - no major impacts were identified

O      Route 94/Whispering Hills Drive - levels of service were diminished, however a traffic signal may not be warranted depending upon corridor improvements implemented by NYSDOT

O      Route 94/Route 17 eastbound ramps - major impacts were identified at this intersection - the level of service was reduced to a failing "F".

O      Route 94/Route 17M/Chester Mall - this intersection was found to have significant operational issues with the site generated traffic - the addition of the site generated traffic did exacerbate the conditions

O      Route 94/Route 17M/Route 17 westbound ramps - this location was also found to operate at poor levels of service minus the site generated traffic - however, proposed NYSDOT improvements will improve operations such that the site generated traffic will not be a significant impact

O      Route 17M/Kings Highway/Lehigh Ave. - this intersection currently has issues related to the geometry of the intersection - site generated traffic will have only minor additional impacts.

Other traffic impacts that were identified included an increase in the potential for pedestrian traffic on Route 94 into the Village of Chester, as well as, a corresponding potential significant increase in traffic volumes on Route 94, creating potential pedestrian conflicts on Route 94 into the Village of Chester.

**MITIGATION MEASURES**

During the three (3) year time frame within which the responses to the DEIS comments and the FEIS were being prepared, the Newburg-Orange County Transportation Council, NYSDOT and Town of Chester officials further discussed and analyzed the potential of providing a modified version of the Route 17M Corridor Study improvements. The Town offered a more cost-effective and timely alternative to these improvements that was advanced in the Newburg-Orange County Transportation Council Transportation Improvement Program (TIP).

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 29

The Town was in discussions with the Applicant throughout the same time frame to determine the most appropriate means of mitigating the potential transportation impacts that had been identified. The Applicant and the Town agreed that, with the consideration of the Route 17 Interchange improvements being implemented, any work that the Applicant might implement as specific traffic mitigation measures would be "wasted". In the interest of advancing his project, given the uncertainty of the timing of the NYSDOT improvements, the Applicant offered a payment-in-lieu of mitigation. This payment was calculated using the estimated value of the required mitigation measures absent the NYSDOT improvements as follows:

| POTENTIAL TRAFFIC MITIGATION | | | |
|---|---|---|---|
| GREENS AT CHESTER PHASE # | INTERSECTION | IMPROVEMENT REQUIRED | ESTIMATED COST OF IMPROVEMENT |
| 1 | RT 17/KINGS HGWY/LEHIGH AVE. | PAVEMENT MARKINGS | $ 2,000 |
| 1 | CONKLINGTOWN RD./RT 94 | LAND DEDICATION FOR INTERSECTION IMPROVEMENT | $ 80,000 |
| 2 | CONKLINGTOWN RD./RT 94 | RELOCATION OF INTERSECTION | $ 75,000 |
| 3 | RT17 EB RAMSP/94 | WIDEN RAMP 4' | $200,000 |
| 4 | RT17 EB RAMSP/94 | TRAFFIC SIGNAL | $ 80,000 |
| 5 | WHISPERING HILLS SITE DRIVE | CONSTRUCT 5' SIDEWALK | $ 18,000 |
| | | TOTAL | $455,000 |

The possibility of the Route 17 Corridor Study improvements being implemented also raised questions as to the need for additional improvements at the Route 94/Chester Greens Road. The DEIS had identified the potential need for turn lanes and/or a traffic signal at one of the later development phases. Again, in the interest of advancing the timing on his project, the Applicant offered to provide additional traffic analyses at this intersection prior to the initiation of each subsequent phase of construction. These additional analyses would document whether or not there is an actual need, using actual future traffic volumes, for these improvements. The Applicant also offered the dedication of land as mitigation to the potential need to realign the intersection of Conkingtown Road and Route 94.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 30**

Prior to the completion of the FEIS and the Preliminary Subdivision Plat/Site Plan, NYSDOT had established a work schedule for the Route 17/Interchange 126 improvement project. The Town has been assured by NYSDOT staff that the project is scheduled to begin construction in the year 2000 and be completed within two (2) years. When these improvements are in place the study area intersections are all projected to operate at acceptable levels of service even with the Greens At Chester site generated traffic.

LEVINSON, REINEKE & ORNSTEIN, P.C.
ATTORNEYS & COUNSELLORS AT LAW

DAVID L. LEVINSON
STEPHEN L. REINEKE
PAUL N. ORNSTEIN*

*ALSO ADMITTED IN NEW JERSEY

11 ABRAMS ROAD
POST OFFICE BOX 244
CENTRAL VALLEY, NEW YORK 10917

(845) 928-9444
(845) 565-6844
800-215-7444
FAX (845) 928-9941

September 10, 2001

Town of Chester Planning Board
P.O. Box 400
Chester, New York 10918

ATTN: Donna

RE: Greens at Chester

Dear Donna:

Please modify the mailing address for Exeter Building Corp. to 10 East 78th Street, Suite 2C, New York, New York 10021.

Very truly yours,

FOR THE FIRM

STEPHEN L. REINEKE

SLR/lma

**RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 31**

NYSDOT has also reviewed the Traffic Impact Analysis, the Applicant's offer of mitigation, and the proposed highway improvements for the construction of the new intersection Route 94/Chester Greens Road, and found all of these to be acceptable given the scheduled implementation of Route17/Interchange 126 improvements prior to full project build-out.

**CONCLUSIONS**

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to transportation system impacts:

1.  The Applicants offer of payment-in-lieu of mitigation is an appropriate mitigation measure given the likelihood that NYSDOT is going to implement the proposed Route 17 Interchange 126 improvements. These improvements will essentially provide acceptable levels of service in operations for current and projected conditions. The Applicants offer of a monetary contribution in a value that is commensurate with the mitigation measures that would be required based on the currently assessed impacts of site generated traffic is a reasonable approach. This approach allows the Applicant to contribute a fair share for the actual impacts associated with the project which the Town may then use to make other traffic improvements in the study area as warranted.

2.  The proposed NYSDOT interchange improvements will greatly improve traffic operations throughout the study area for existing and projected traffic counts.

3.  NYSDOT has accepted the Applicants offered mitigation and has approved the proposed access drive configuration on Route 94 as meeting all required standards, assuming that the interchange improvements are in place.

4.  The Final Subdivision/Site Plan approval condition placed by the TOWN OF CHESTER PLANNING BOARD requiring additional analysis of the Route 94/Chester Greens Road intersection at each of the five (5) development phases will ensure that all potential phased or incremental traffic impacts are addressed at this intersection. If warrants are met for a traffic signal, the Applicant will be required to install same at that development phase.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 32**

## VISUAL RESOURCES

### DESCRIPTION OF IMPACTS

The site can not be totally screened from adjoining properties and roadways. The site slopes result in much of the project site being visible to the adjoining properties and roadways. The proposed Greens At Chester project will create a major change in the current local visual environment. The site is essentially undeveloped with meadows, brushland and mature forest in hedge rows and along steep slope areas. New development at the site will be a major change in the existing viewshed. Whereas prior to the project, adjoining properties and adjoining roadways had a view that included vacant land and natural vegetation, post-development these adjoining areas will view residential dwelling units and the roadways and other ancillary features that are needed to support this development. Most visible will be the development in Neighborhood "B" which is located on the knoll just to the north of NYS Route 94 and south of the proposed Chester Greens Road. The site contains some natural vegetation along the property boundaries and slope areas that will be retained in the development layout and will visually screen the new dwelling units. The project will be the most visible from the adjoining Whispering Hills residential townhouse development. It will also be visible from adjoining one-unit dwellings on NYS Route 94 and Conklingtown Road.

### MITIGATION MEASURES

The project design attempts to mitigate the potential visibility of the site and the proposed new development. With the exception of the proposed one-unit building lots and buildings on the top of the "knoll" in Neighborhood "B", the proposed building lots and roadways are laid out in harmony with the existing site slopes. The Applicant has offered a landscape plan and design philosophy that establish certain standards/tones that will be carried out for buffer areas to ensure screening, at the site entrances to set a "tone" for the development, as typical foundation and lot landscaping, to screen parking areas and frame public and private streets and recreational/common areas. The proposed buffer and landscaping plan and development philosophy are the major mitigation measures offered to address the potential impact to the existing viewshed. *The landscape plan, buffer plan and development philosophy which has been expressed by the Applicant as his intent and documented in the DEIS and FEIS and will be adopted as a condition of approval on the Final Subdivision Plat and Site Plan. The TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer, depending upon the final approval oversight process that is established will ensure that the landscape plan is implemented as proposed and that the proposed "tone" of the project are strictly adhered to at each project phase (see CONSTRUCTION PHASING).*

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 33**

### CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to visual resources:

1.  The Project site is zoned in the SR-8 zoning classification for the Town which is the highest residential density district offered. It has been assumed by the Town since the Comprehensive Plan was completed in the late 1970's and the Zoning Law was enacted, that this site would be the subject of intensive residential development. So the proposal is in full accordance with Town planning objectives.

2.  The adjoining property to the east in the Village, Whispering Hills is developed at a higher density than proposed at the site and in more intensive style or type of development with the condominium structures that are in place. This development is fully visible from NYS Route 17 (future Route 86) and from several points on the adjoining road network. The proposed Greens At Chester development provides a lower profile of building, and by it's type of building scale, one and two-unit dwellings, can be determined to be less of a visual anomaly on the viewshed than Whispering Hills.

3.  The proposed landscaping plan along with the Applicant's stated intentions as to the proposed character of site development will substantially reduce the potential for visual impacts. There will be a major change in the viewshed, from natural undeveloped, "green" area to a residential subdivision. However, the proposed site plan, landscaping and "tone" that has been offered for the development will substantially mitigate the negative nature of these impacts.

## WATER, FIRE, SEWER

### WATER SYSTEM              (SEE ALSO GROUND WATER RESOURCES)

#### DESCRIPTION OF IMPACTS

The Applicant has provided an engineering design for a water supply storage and distribution system to meet the requirements of the domestic supply and fire flow demand for the proposed development layout/design. A 255,000 gallon storage tank is proposed to satisfy the requirements for residual fire flows of 20psi. This tank is an underground storage tank located in the vicinity of the community/recreational center. The Preliminary Subdivision Plat/Site Plan drawings provide the details and specifications for the size and location of all water supply transmission and distribution lines. These same plans indicate the locations of all fire hydrants and other water supply appurtenances required to

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 34

support the project.  The Town Engineer has reviewed the plans and specifications for the water system and has determined that they meet all Town Specifications.  The water system plans will also be referred to the Health Department for review and approval.

The water system is proposed to be built in phases to accommodate the phased development of the dwelling units.  The Phasing Plan included in the FEIS and adopted herein by reference identifies each element of the system and the timing o f their construction.  The water system will be maintained by the Applicant/Homeowner's Association until such time as a Special Improvement District is created, offered for dedication to, and accepted by the Town for maintenance.

MITIGATION MEASURES

The Town Engineer has reviewed the plans and specifications for the water system and all of its components for conformance with Town Specification for same, and has found them to be acceptable. *As a condition on Preliminary Subdivision Plat/Site Plan approval, the TOWN OF CHESTER PLANNING BOARD will require that the additional review and approval of these plans by the Health Department will be provided prior to Final Subdivision Plat/Site Plan approval. The TOWN OF CHESTER PLANNING BOARD will indicate to the Health Department their concern regarding potential water quality impacts associated with the location of paved parking community building/recreation center and its proximity to Well # TW-11.  If the Health Department does not accept the additional testing and/or the parking lot design in association with Well # TW-11, the Applicant shall submit an application for a Site Plan Amendment/Resubdivision to the TOWN OF CHESTER PLANNING BOARD to address the issues raised.*

*The Final Subdivision Plat/Site Plan approval will state as a condition of approval that, prior to the issuance of a Building Permit for any phase of the Greens At Chester project, the Applicant's Engineer Town Engineer shall certify that water system elements required to support that phase (and all previous phases) are installed and operational to safely accommodate the projected cumulative water demands as estimated for that phase and all previous phases.  The Town Engineer shall confirm this certification.  The TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer, depending upon the final approval oversight process that is established will ensure that the water system is implemented as proposed and that the design and capacities are strictly adhered to at each project phase  (see CONSTRUCTION PHASING).*

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 35

### CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to the water system:

1. The Town Engineer's review has concluded that the system as designed and detailed meets the Town specifications.

2. The TOWN OF CHESTER PLANNING BOARD'S Preliminary Subdivision Plat/Site Plan approval condition requiring Health Department approval of the plans and specifications prior to Final approval will ensure that the water system is appropriately designed

3. The Applicant/Homeowner's Association will have the capability to maintain the water system until such time as it may be offered to and accepted by the Town for dedication.

4. The construction phasing oversight plan as described in the section "CONSTRUCTION PHASING" will ensure that the water system elements required to support the various phase of development are installed at the appropriate times.

## FIRE PROTECTION

### DESCRIPTION OF IMPACTS

The Greens At Chester project will introduce 455 new dwelling units into the Town of Chester Fire Department service area. The development has been designed with a full public water system, including water storage capacities to accommodate required residual fire flows. Hydrants have been placed in appropriate locations throughout the service area and the development to ensure safe and efficient access to same in the event of a fire emergency.

There is only one (1) road (Chester Greens Road) that will be dedicated to Town for ownership and maintenance. However, the TOWN OF CHESTER PLANNING BOARD and Chester Fire Department have given careful consideration to the layout, arrangement and width of the remaining private roads to ensure that emergency vehicles will have safe and efficient access to all areas of the site. No on-road parking is proposed except within the small court areas, nor will it be permitted on any roadways at the site. The proposed parking lot arrangement has been considered to accommodate emergency fire vehicles in close proximity no dwellings and hydrants without hindrance of parked vehicles. All private roads and parking lots will be maintained by the Homeowner's Association, and will be kept clear of snow.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 36

The development bulk has also been evaluated and modified to ensure adequate separation distances between all structures. A minimum of twenty (20) feet separation will be maintained between all dwelling units at the site, with a minimum six (6) feet fully open area between all dwelling decks or patios to accommodate fire fighters and fire fighting apparatus. All structures will be constructed in conformance with the Uniform Fire Prevention and Building Code provisions.

## MITIGATION MEASURES

The water system has been evaluated by the Town Engineer and found to provide as designed adequate residual fire flows per Town and ISO standards. The hydrant placement has designed to meet ISO and Fire Department officials requirements for ease of access and operation in the event of a fire emergency.

The public and private road network, as well as parking lot arrangement, have been designed and determined to provide full opportunity to the safe and efficient access of emergency vehicles. The proposed site layout/design and minimum bulk requirements will ensure adequate separation between buildings to accommodate safe and efficient access by emergency crews and vehicles. *The TOWN OF CHESTER PLANNING BOARD will establish as a condition of Final Subdivision Plat/Site Plan approval that the minimum bulk as offered in the FEIS and documented on the plans is adhered to throughout the phased construction process. The TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer, depending upon the final approval oversight process that is established will ensure that the site design plans are strictly adhered to at each project phase (see CONSTRUCTION PHASING).*

The Town of Chester is currently enforcing the Uniform Fire Prevention and Building Code and has a Code Enforcement Officer on staff. *Per standard Town administrative procedures, each building will be required to have a building permit, which will ensure that the design meets the Uniform Fire Prevention and Building Code; each building will be periodically inspected by the Code Enforcement Officer and/or Town Engineer to ensure that it is being constructed in accordance with the approved plans; and each building will receive a certificate of Occupancy, prior to it being occupied or utilized, to ensure adherence to the approved plans.*

## CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to fire protection:

1.    The water system will provide adequate residual fire flows to the project per Town and ISO requirements.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 37

2.    The Applicant/Homeowner's Association will have the capability to maintain the road and parking network to standards to ensure safe and adequate access by emergency equipment.

3.    The construction phasing oversight plan as described in the section "CONSTRUCTION PHASING" will ensure that the road network and building layout approved in the Final Subdivision/Site Plan approval as required to support the various phases of development are installed at the appropriately.

4.    The current administrative and enforcement procedures that the Town has in place for the Uniform Fire Prevention and Building Code will ensure proper construction of all structures at the site.

## SEWAGE COLLECTION/TREATMENT

### DESCRIPTION OF IMPACTS

The proposed Green At Chester project at full build-out will require sewage collection and treatment capability for 132, 250 gallon per day. The site is located within a Town Consolidated Sewer District that should be served by Harriman sewage treatment facility. Currently, the Harriman sewage treatment plant is at capacity, and the County has been forced to no longer authorize connections to the plant.   The Town's Allocation of the capacity at this treatment facility has already been exceeded without the Greens At Chester contributions. The end result is that the Greens project does not have access to the sewage treatment plant for which it has been contributing a benefit fee for over ten (10) years.

Given this prohibition on hook-ups at the Harriman treatment facility, the DEIS analyzed three (3) potential alternatives for sewage treatment; an interim onsite ground discharge treatment facility, construction of an onsite sewage treatment facility with a surface water outfall (for which a previous waste assimilative capacity analysis was offered), and connection to the proposed Town of Chester Industrial Park sewage treatment plant.

During the preparation of the FEIS the Town of Chester completed the necessary studies to gain NYS Department of Environmental Conservation SPDES permit for discharge to Black Meadow Creek to support the proposed Town of Chester Sewer District # 8 sewage treatment plant. The Town has undertaken the design of this sewage treatment plant and is negotiating with the Applicant to determine the Applicant's financial contribution to the construction cost. The Town of Chester Sewer District #8 sewage treatment plant is approved by NYSDEC for a maximum capacity of 1 MGD and the

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 38

Greens' projected sewage flows of 132,250 are well within this approved capacity. The FEIS indicates that the timing of the construction of the Town of Chester Sewer District #8 sewage treatment plant will ensure that the plant is operational with enough capacity to accommodate Phase 1, Neighborhood "B" at 62 dwelling units sewage treatment flows.

## MITIGATION MEASURES

*The TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer, depending upon the final approval oversight process that is established will ensure that the sewage collection and treatment system is implemented as proposed and that the design and capacities are strictly adhered to at each project phase (see CONSTRUCTION PHASING).*

The Applicant's agreement to enter into a contract with the Town for the construction of the project's share of the capacity Town of Chester Sewer District #8 sewage treatment plant will satisfy his need to ensure that adequate capacity is available at an approved sewage treatment facility to accommodate the full projected development wastewater flows. *The Final Subdivision Plat/Site Plan approval will state as a condition of approval that, prior to the issuance of a Certificate of Occupancy for any phase of the Greens At Chester project, the Town Engineer shall certify that sufficient capacity exists at the Town of Chester Sewer District #8 sewage treatment plant to safely accommodate the projected wastewater flows estimated for that phase.*

The Preliminary Subdivision Plat/Site Plan provide details and specifications for the construction of the sanitary sewers and appurtenances required to convey the projected wastewater flows to the Town of Chester Sewer District #8 sewage treatment plant. The Town Engineer has reviewed these plan documents and found that the designs and specifications conform to the Town of Chester specifications. All road crossings at NYS Route 94 to connect to the treatment plant will be required to receive a work permit from NYS Department of Transportation to ensure that traffic flow is safely maintained. The construction of the sanitary sewers and appurtenances on site is encompassed by the proposed erosion and sedimentation control plan.

## CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to sewage treatment:

1.  The alternative of using the approved Town of Chester Sewer District #8 sewage treatment plant to treat the projected sewage flows from the Greens At Chester is a sound solution to the sewage treatment issue.

2.  The Applicant's offer to contribute to the cost of construction of the Town of Chester Sewer District #8 sewage treatment plant will ensure that the Plant is on line with sufficient capacity to accommodate the project flows.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 39**

3. The construction phasing oversight plan as described in the section "CONSTRUCTION PHASING" will ensure that the sewage collection and treatment system elements required to support the various phase of development are installed at the appropriate times.

4. The Applicant/Homeowner's Association will have the capability to maintain the sewage collection system until such time as it may be offered to and accepted for dedication by the Town.

## COMMUNITY FACILITIES AND SERVICES

### DESCRIPTION OF IMPACTS

HIGHWAYS: The Greens At Chester project will put an additional demand on many community facilities and services. As designed the project will include only one (1) public road (Chester Greens Road), all other roads/courts will be privately maintained by the Homeowner's Association. Thus greatly reducing the potential impact to the Town Highway Department. The Homeowner's Association will also shoulder the burden for other areas of the project such as stormwater management system maintenance and recreation/common area maintenance. Again reducing the impact to the Town Chester resources. The proposed public water and sewer systems are proposed to either be maintained by the Homeowner's Association, or to be dedicated to the Town as Special Improvement Districts. In either instance, the full cost implications of the services will be borne by the project, not the Town as a whole or its budget. The project will require support of the following public resources, police, fire/emergency services and schools.

POLICE: The additional Town, County and State police infrastructure will be burdened by an additional approximately 1,300 residents. The Town Police Department, as the first level of response, could be the most significantly impacted. The DEIS and FEIS offer that, on a per capita basis, the additional population base created by the Greens At Chester at full-build-out could warrant the need for one (1) additional full-time police officer on the Town staff. This additional staff and related support equipment could require an additional Town Budget expense of $100,000 in the year 2002.

AMBULANCE: The additional population generated by the project will also likely create an impact on the Chester Ambulance Corp. And their ability to respond to potential emergency situations. There is no standard "rule-of-thumb", such as the per capita basis used with the Police Department, that anticipates the need for additional personnel or equipment for the Ambulance Corp. The Ambulance Corp appears to have sufficient equipment to "handle" the additional demand created by the Greens projected population. As proposed the Greens project is not marketed toward any special population that might create a

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 40

disproportionate impact on the ambulance/emergency service. The Greens project, at full build-out, will generate an estimated $ 76,000 (in 1996) in annual tax revenues to the Fire District which supports the Ambulance Corp. FIRE:  The Chester Fire Department appears to have sufficient and appropriate types of equipment to handle the project as proposed. The Fire Department has reviewed the project layout/design plans and water system capabilities. The incorporation of project design criteria as outlined above under FIRE PROTECTION, along with the water system design, will substantially reduce the potential impacts to the Fire Department's operation. As noted above, the Greens project, at full build-out, will generate an estimated $ 76,000 (in 1996) in annual tax revenues to the Fire District. These funds can be used to purchase additional equipment as needed.

SCHOOLS:  The final area of community services that was assessed and will be impacted by the Greens At Chester project is the school system. The project site is located in the Chester Union Free School District. At full build-out, the estimates are that the Greens At Chester will generate an additional 243 school-aged children. The most recent space/facility analysis performed by the School District, January, 1995 concludes that the projected population growth in the District (not all of which is generated by the Greens project) will create space constraints in the existing school facilities.   The School District report also concludes that additional space will be required to accommodate the increase in student numbers. It does not make a definitive conclusion as to how or how much additional classroom and ancillary facilities should be provided.

The school-aged children population projection for the Greens At Chester is a major driving force in the need for additional space/facilities for the Chester Union Free School District.  Unfortunately, at this time, the Chester Union Free School District has not closed on the elements of a "Capital Plan" that will address the identified space constraints. The School Board and Administration are currently working to address this issue and should have a "Plan" in place, by January of 1999. This plan should be in place prior to Final Subdivision/Site Plan approval for the Greens At Chester.

## MITIGATION MEASURES

HIGHWAYS:  The FEIS, Preliminary Subdivision/ Plat/Site Plan documents support a revised internal roadway network that has been accepted by the Planning Board, Town Consultants, Highway Superintendent and Fire Department as providing safe and adequate access. Roadway widths and the provision of sidewalks in high traffic areas will facilitate traffic flows and ensure sufficient widths for snow storage/removal and emergency equipment passage. The provision on-site of level, pull-off areas for school bus use will mitigate the potential for conflicts between motorists and school children pick-ups. The school district was involved in the design of these facilities. The roadways will be constructed to Town standards. *The TOWN OF CHESTER PLANNING BOARD, Town Engineer and/or Code Enforcement Officer, depending upon the final approval oversight process that is established will ensure that the roadway*

Page Two

3.   From a cursory review of the suggested amended/updated SEQRA Findings, a
     few questions have arisen:

     a.   The Findings refer in several instances to a set of revised plans dated
          May 1, 2007.  The submitted Final Subdivision plan set contains a latest
          revised date of 1/13/06.

     b.   With regard to Traffic Mitigation, the offer of "$455,000 to the Town for
          highway improvements or money in lieu thereof", needs to be clarified
          with respect to the improvements.  We assume that the proposed new
          intersection of Conklintown Road and NYS Rte. 94, and the proposed
          turning lane in the vicinity of Old Chester Road and Chester Greens Road
          are off-site improvements associated with the project and are not a part of
          the mitigation offer.

     c.   The visual mitigation discussed needs to be accompanied by a
          landscape/buffer plan, which has not yet been submitted.

     d.   Ecology impacts indicate that there are no threatened or endangered
          vegetation or wildlife species.  This finding needs to be updated by
          current NYSDEC/expert surveys.

From a preliminary review of the plans, we offer the following concerns:

1.   Several of the lots, due to necessary adjacent road grading and subsequent
     spillover slopes of 25% inside lot lines, have questionable buildability
     issues under §83-22A.  To preclude future building permit problems, the
     applicant should demonstrate how, through a selection of building
     architecture and/or wall design, he can meet Town requirements.

2.   It is unclear if the applicant intends to file the subdivision plan in three
     separate phases.

3.   Have the various private road names been coordinated with the E911
     systems to insure no duplication or conflicting addresses?

4.   The Water Treatment and Pressure Booster Building is also the
     Community Building.  How will these functions interact?


Attached are additional comments from Garling Associates based upon their review of
the submittal.

# PLANNING BOARD
## TOWN OF CHESTER
### COUNTY OF ORANGE

P.O. BOX 400
CHESTER, NEW YORK 10918

RAYMOND G. JOHANSON
CHAIRMAN

DICKOVER, DONNELLY, DONOVAN & BIAGI, LLP
COUNSEL

MACDONALD ENGINEERING
ENGINEERING

MEMBERS
ROBERT CONKLIN
RICHARD EBERTLE
FRANK GILBERT
HARRY SLOAN
HAROLD UTTER
Erik Denega

January 22, 2006

Exeter Building Corp.
10 East 78th Street
Suite 2C
New York, NY    10021

RE:  Greens at Chester

Gentlemen:

Enclosed is a receipt for the following fee paid to the Town of Chester:

    $10,000.00 – Professional Consultant's Fee

Very truly yours,

Donna Bailey
Secretary

dlb
enc.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 41

segments are implemented as proposed and that the design and proposed widths are strictly adhered to at each project phase (see CONSTRUCTION PHASING). On-going maintenance of the roadways, with the exception of Chester Greens Road, will be the responsibility of the Homeowners' Association.

POLICE: The increase in population generated at full build-out of the Greens At Chester will result in the perceived need for one (1) additional police officer. The fiscal impact to the Town for this additional position is estimated to be $100,000 annually. The fiscal analysis presented in the FEIS indicates that the project will generate substantial additional tax revenues to the Town to offset this cost.

AMBULANCE: There were no impacts identified to the Chester Volunteer Ambulance. The increase in population generated at full build-out of the Greens At Chester will likely result in the potential for additional emergency "calls" for the Ambulance service. However, no additional equipment requirements were identified, nor did the Ambulance Corps provide any comments or concerns to the Town with regard to the proposal and anticipated impacts to their service. The project will generate an estimated $76,000 (in 1996 dollars) annually in tax revenues to the fire and ambulance districts. These funds can be used to off-set the unidentified need for any additional equipment as a result of the Porject.

FIRE: As noted previously, the project road network is designed to accommodate emergency equipment. The Town of Chester is currently enforcing the Uniform Fire Prevention and Building Code and has a Code Enforcement Officer on staff. *Per standard Town administrative procedures, each building will be required to have a building permit, which will ensure that the design meets the Uniform Fire Prevention and Building Code; each building will be periodically inspected by the Code Enforcement Officer and/or Town Engineer to ensure that it is being constructed in accordance with the approved plans; and each building will receive a Certificate of Occupancy, prior to it being occupied or utilized, to ensure adherence to the approved plans*

SCHOOLS: The Applicant has offered to meet with the School Board and Administration, once a Capital Plan is in place, to determine what assistance the Applicant may be able to provide to off-set the costs associated with the project's school-aged children's impact on the school facilities. *The Applicant will be required to initiate this meeting (or meetings) as a condition of Preliminary Subdivision Plat/Site Plan approval. This meeting (meetings) will be required to be held prior to Final Subdivision/Site Plan approval for the Greens At Chester by the TOWN OF CHESTER PLANNING BOARD. Should the Applicant and the School District not be able to identify a satisfactory mitigation measure(s), then the TOWN OF CHESTER PLANNING BOARD may place a condition on the project at Final Subdivision/Site Plan approval that will limit the number of dwelling units that can be occupied in any year in the Greens At Chester project in order to provide the School District adequate time to address the facility/space issues related to the projects school-aged children generation.*

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 42

CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to impacts on the Town's highway system/service:

1. The road network design and proposed construction specifications meet Town of Chester standards and requirements as they relate to the overall proposed Greens At Chester development plan.

2. The Applicant/Homeowner's Association will have the capability to maintain the roadways that are not proposed to be dedicated to the Town.

3. The construction phasing oversight plan as described in the section "CONSTRUCTION PHASING" will ensure that the road network/design approved at the Final Subdivision/Site Plan action as required to support the various phases of development are installed at the appropriate time and in the approved manner.

4. The proposal that only Chester Greens Road be offered to the Town for dedication and maintenance will have a beneficial fiscal impact.

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to Police service in the Town:

1. The Greens At Chester project as proposed will not create a substantial need for additional police department services.

2. Funding for the additional services that are projected to be required is available through the tax revenues projected to be generated by the project.

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to ambulance/emergency service in the Town:

1. The Greens At Chester project as proposed will not create a substantial need for additional ambulance/emergency services.

2. Funding for the additional services that are projected to be required is available through the tax revenues projected to be generated by the project.

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to fire protection services in the Town:

1. The water system will provide adequate residual fire flows to the project per Town and ISO requirements.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 43**

2. The Applicant/Homeowner's Association will have the capability to maintain the road and parking network to standards to ensure safe and adequate access by emergency equipment.

3. The construction phasing oversight plan as described in the section "CONSTRUCTION PHASING" will ensure that the road network and building layout approved in the Final Subdivision/Site Plan approval as required to support the various phases of development are installed at the appropriately.

4. The current administrative and enforcement procedures that the Town has in place for the Uniform Fire Prevention and Building Code will ensure proper construction of all structures at the site.

5. The Fire Department either has sufficient equipment or will be able to obtain sufficient equipment to address any additional service impacts associated with the project through the estimated annual tax revenues generated by the project at full build-out.

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to school impacts:

1. The Greens At Chester project as proposed will exacerbate existing facility constraints in the Chester Union Free School District.

2. The Chester Union Free School District must complete a Capital Plan that addresses the potential facility needs for the school district overall.

3. Absent a Capital Plan accepted by the School District that addresses the overall facility needs for the future, the TOWN OF CHESTER PLANNING BOARD can not adequately assess or determine what mitigation measures would be in line with the school-aged children contributionprojected from the Greens At Chester project.

4. The conditions proposed to be placed on Preliminary Subdivision Plat/Site Plan approval by the TOWN OF CHESTER PLANNING BOARD will provide the school district reasonable time to address a capital Plan strategy.

**SOCIO-ECONOMIC**

## DESCRIPTION OF IMPACTS

The socio-economic impacts that the Applicant was requested to address were related to fiscal impacts to the Town, County, Special Improvement Districts and School District annual operating budgets. The DEIS provided an initial

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 44

fiscal impact analysis that attempted to address both the Town and County Town fiscal impacts. The Applicant was asked to update the projected impacts to the Town budget in the FEIS. The FEIS projected that at build-out the Greens At Chester would produce approximately $ 380,770 in revenue to the Town and Fire District budgets ($306,144 and $74,623 respectively). There were only two (2) areas of identified for potential demands for services on the Town budget, an additional $18,000 required for road maintenance for Chester Greens Road, and an additional $100,000 required to support additional police personnel.

With regard to school tax revenues, the FEIS offers that the project at full build-out will generate a potential $ 1,482,250 in annual revenues. When compared to the local share costs of providing educational services for the projected school-aged population, these revenues end in a net of annual "loss" of $628,850. This means that the cost of "educating" the projected school-aged children exceeds the tax revenues generated. This is typically the case in the instance of one- and two-unit dwelling developments. This type of development does not fully support, through tax revenues, the costs associated with the service. This is why communities seek varied tax bases, a range of types of rateables from residential to commercial/business and industrial. The non-residential uses provide school tax revenues, with no associated costs to off-set the residential development's shortfall.

One final area of potential fiscal impact is related to the new services that the project will create, public water and sewer services. The FEIS indicates that a Transportation Corporation will be established for each of these services until such time as Special Improvement Districts can be formed, offered to the Town for dedication and accepted by the Town. In either case, the residents of the Greens At Chester project will be paying directly all costs associated with these services. There will be no new, additional tax burdens on the other residents of the Town.

## MITIGATION MEASURES

The only mitigation offered for the area of fiscal impacts is the tax revenue that will be generated by the project to the Town, Fire and School District budgets. With the exception of the School District there are no substantial or significant impacts that would need to be addressed. There is a net "shortfall" to the School District budget associated with the project is similar to that generated by any one- and/or two-unit residential development. The Town does not routinely address this impact associated with residential development. The Town has tried to provide for a varied tax base that will ensure adequate tax revenues to support the annual School District operations budget.

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 45**

## CONCLUSIONS

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to socio-economic/fiscal impacts:

1. The tax revenues projected to be generated by the Greens At Chester at full build-out will substantially mitigate any additional demands on Town services.

2. The school tax revenues projected to be generated by the Greens At Chester at full build-out will not fully "cover" the costs associated with the education of the school-aged children that the project will generate.

3. The Town finds that for the most part, one- and/or two-unit residential development does not provide a dollar-for-dollar revenue to cost associated with school-aged children.

## HISTORIC & ARCHAEOLOGICAL

### DESCRIPTION OF IMPACTS

The proposed Preliminary Subdivision Plat/Site Plan if developed will result in substantial areas of the site being disturbed and being committed to development uses. Approximately 37 acres of the site will be covered with impervious surfaces, and over 65 acres will be disturbed in some way. The remaining 62.7 acres will theoretically be undisturbed. The site location indicated that an Cultural Resources Survey should be provided in order to document that there would be no significant adverse impacts on the historic and/or archeological resources. A Stage 1 Cultural Resources Survey was conducted in April/May, 1992. The Survey found evidence of possible early 1600's Native American habitation at the site. The general area of interest is located in Neighborhood "B". The recommendation of this report was that a Stage 2 Intensive Archaeological Survey be conducted to determine the possible site's size and boundaries, its function within the settlement system of Native American occupants, and its archaeological integrity.

### MITIGATION MEASURES

*Prior to Final Subdivision/Site Plan approval, the Applicant will be required to provide a Stage 2 Intensive Archaeological Survey which will provide sufficient data for a determination as to the site's potential significance in accordance with the criteria for eligibility for nomination to the National and New York State Registers of Historic Places. Should there be a determination of "no significance", no further archaeological investigation or preservation measures would be recommended or required. If the site is determined to constitute a significant cultural resource, the site would either be preserved through a*

**RESOLUTION**
**TOWN OF CHESTER PLANNING BOARD**
**LEAD AGENCY FINDINGS**
**PAGE 46**

*redesign of the project, or be the focus of a Stage 3 Data Recovery Program of archaeological investigations. Such a program would mitigate the destruction of the site's contents which would be used for the analysis and interpretation of the site's history. If required, the Stage 3 Data Recovery program will be conducted prior to any construction and/or excavation activities within the "site" area.*

<u>CONCLUSIONS</u>

The TOWN OF CHESTER PLANNING BOARD therefore concludes with respect to archaeological resources:

1.  The Stage 2 Intensive Archaeological Survey will provide sufficient data as to the significance of the potential Native American sites, prior to approval of final plans.

2.  The Planning Board will require either project modification or a Stage 3 Data Recovery Program, prior to the initiation of *any* construction activities at the site, at Final Subdivision Plat/Site Plan approval if the Stage 2 determination is that the site has significance.

3.  No construction activities will be permitted at the site in the vicinity of the potential Native American site in Neighborhood "B".

4.  The above noted requirements will ensure the protection of historic and/or archaeological resources, if they are found to exist at the site.

**CONSTRUCTION PHASING**

The FEIS proposes a project schedule that would involve five (5) phases of construction for the full build-out of Greens At Chester. The TOWN OF CHESTER PLANNING BOARD and the Town Code require that each of these phases essentially "stand alone"; that each phase could function independently and/or in consort with the prior completed phases. In order to address this requirement the Applicant offered a construction Phasing Plan in the FEIS which is attached hereto and made a part hereof.

This Phasing Plan identifies all of the improvements; roadways, water, sewer, stormwater management, etc. that must be in place for each individual phase to function as an independent development unit. *The Final Subdivision Plat/Site Plan approval will include a condition that the Phasing Plan be implemented as proposed with no deviations, unless the Applicant seeks a Resubdivision/Site Plan Amendment approval by the TOWN OF CHESTER PLANNING BOARD or the Applicant will be required to construct/install all proposed and required improvements prior to the issuance of the first building permit per the Town Code (and as outlined below).* Either the Phasing Plan or full construction of all improvements per the Town Code will be followed by the Applicant and the Town to ensure that the development meets the objectives stated herein.

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 47

There are two (2) potential methods by which the Town will "enforce" the Phasing Plan. Which method is used will depend in the form of Final Subdivision/Site Plan approval sought by the Applicant. The method preferred by the Town would involve a Final Preliminary Plat/Site Plan approval, and Final Subdivision Plat/Site Plan approval at each individual phase. This would allow the TOWN OF CHESTER PLANNING BOARD to again review each phase as it is offered for Final approval. Items that were not adequately addressed in earlier phases could and would be subject to conditions on the approval of the current Final Application. This method would have the TOWN OF CHESTER PLANNING BOARD playing a major role in project development oversight. The Town Engineer and Code Enforcement officer would still have their normal roles of inspection and review of certifications provided by the Applicant's designers. The TOWN OF CHESTER PLANNING BOARD would ensure at each subsequent Final application that the various improvements that were offered in the Phasing Plan as required for a phase, were in place and functioning appropriately. The additional traffic analysis that is to be required at each new phase would be reviewed by the TOWN OF CHESTER PLANNING BOARD and determined to be acceptable or mitigation offered at that point for the Board's consideration.

The second method of enforcement available to the Town would be employed if the Applicant chooses to seek Final Subdivision Plat/Site Plan approval for the entire project at one time. Such an full Final Approval would require, per the Town of Chester Code, that all public improvements were constructed and accepted by the Town as satisfactory prior to the issuance of a single building permit for the proposed dwelling units. This would essentially eliminate the Phasing Plan. The entire water system, all fine (5) wells and the storage tank, lines, etc. would all have to be completed to the satisfaction of the Town prior to the first building permit being issued. All of the roadways, stormwater management facilities and sewage collection system would have to be in place and accepted by the Town prior to that first building permit being issued. The only item that could be phased is the actual capacity at the Town sewage treatment plant. In this case the Town Engineer would certify to the Code Enforcement Officer how many Certificates of Occupancy could be issued based on the capacity available at the plant.

Either of these methods can and will ensure that all of the proposed/required improvements and mitigation measures are installed and operational at the appropriate times. The Applicant will make a decision as to the form of Final Subdivision Plat/Site Plan approval that he will seek prior to the application for same. Thus the TOWN OF CHESTER PLANNING BOARD will be able to place as a condition(s) on Final Subdivision Plat/Site Plan approval the process or method that will be employed to ensure that all of the approved Subdivision/Site Plan elements, as well as, all of the mitigation measures relied on in this Finding are implemented.

F.   **ALTERNATIVES**

The FEIS analyzed the following alternatives: NO-BUILD; Alternate Sites; Alternate Size/Type of Development; Alternate Construction Schedule; and an Alternate Land Use. The TOWN OF CHESTER PLANNING BOARD has reviewed and considered each alternative and the associated, identified potential impacts, as well as the alternate

RESOLUTION
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 48

proposal considered in a prior full SEQR evaluation process previously at this site, by this Applicant. This alternative involved a project with 900 condominium units. The TOWN OF CHESTER PLANNING BOARD having given full consideration to these alternatives and the current proposal, has selected the current proposal as, on balance providing the least potential adverse environmental impacts.

## G.   ADVERSE IMPACTS WHICH CAN NOT BE AVOIDED:

The TOWN OF CHESTER PLANNING BOARD finds that impacts which cannot be avoided consist of removal of vegetation and loss of wildlife habitat, loss of natural vegetation and changes in viewsheds to a developed state, development in the federal wetlands, increased traffic, and changes in land use. There will also be short-term construction impacts such as noise and dust associated with the phasing of the project over five (5) phases and potentially ten (10) years.

## H.   IRREVERSIBLE/IRRETRIEVABLE COMMITMENT OF RESOURCES:

The TOWN OF CHESTER PLANNING BOARD finds that there will be an irreversible and irretrievable commitment of resources associated with the Project. These include the conversion of vacant lands to residential use, consumption of ground water supply, consumption of electric and gas, an increase in the school-aged children to the Chester Union Free School District and consumption of a portion of the capacities at the new TOWN OF CHESTER Sewer District #8 sewage treatment facility and County landfill.

## I.   GROWTH INDUCING IMPACTS:

The TOWN OF CHESTER PLANNING BOARD finds that the development of the Green at Chester is in part a response to existing and anticipated demand for one-- and two-unit residential dwellings. The development of the employment opportunities in the Town and Village as well as the continued migration from the Metropolitan Area generate the need for additional residential units and styles/types. The existence of Chester Mall and other shopping opportunities in the community and surrounding communities actually support the attractiveness of the site for the project as proposed. Given that the area is a regional shopping draw, it is unlikely this project will directly induce additional retail or business development. The opportunity for additional residential units and styles, may support additional development in the already established Chester Industrial Park.

The TOWN OF CHESTER PLANNING BOARD determines that the GREENS AT CHESTER will not generate a significant increase in population beyond that anticipated in the Town's Comprehensive planning. Nor will the Project create a significant increased demand for services, other than the impacts that are directly associated with the project improvements as outlined in the FEIS.

AND BE IT FURTHER RESOLVED, that the TOWN OF CHESTER PLANNING BOARD acting as Lead Agency has carefully considered the FEIS, and the full and complete public record; AND

**RESOLUTION**
TOWN OF CHESTER PLANNING BOARD
LEAD AGENCY FINDINGS
PAGE 49

BE IT FURTHER RESOLVED, that the Lead Agency finds that the requirements of Article 8 of the NYS Environmental Conservation Law and the Rules and Regulations promulgated thereunder (6NYCRR Part 617), herein referred to as SEQR, have been met; AND

BE IT FURTHER RESOLVED, that the TOWN OF CHESTER PLANNING BOARD, based on the information set forth in the DEIS and the FEIS, the preceding mitigation measures and the specific findings, and having relied on those environmental, social, economic and other considerations set forth in the above statement, finds that:

1.    All of the substantive and procedural requirements of the Environmental Conservation Law and Part 617 of the New York Code of Rules and Regulations, Volume 6, have been met; and

2.    Consistent with social, economic and other essential considerations from among the reasonable alternatives thereto, the granting of the Subdivision Approval and Site Plan Approval on the terms and conditions set forth in this Resolution minimizes or avoids adverse environmental effects to the maximum extent practicable, including the effects disclosed in the DEIS, and FEIS; and

3.    Consistent with social, economic and other essential considerations, to the maximum extent practicable, adverse environmental effects revealed in the environmental impact statement process will be minimized or avoided by incorporating as conditions to the decisions those mitigative measures set forth herein.

CARRIED AYES:       4

        NAYS:       0