UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GREENS AT CHESTER LLC,

Plaintiff,

    -against-

TOWN OF CHESTER, JAMES M. FARR, individually
and as Building Inspector of the Town of Chester,
ROBERT VALENTINE, individually and as Supervisor
of the Town of Chester, ALEXANDER J. JAMIESON, as
former Supervisor of the Town of Chester, STEVEN M.
NEUHAUS, individually and as County Executive of the
County of Orange, and THE COUNTY OF ORANGE,

Defendants.
----------------------------------------------------------------X

MEMORANDUM OF LAW OF DEFENDANTS,
STEVEN M. NEUHAUS AND THE COUNTY
OF ORANGE, IN OPPOSITION TO STATE OF NEW
YORK'S MOTION SEEKING INTERVENTION

----------------------------------------------------------------X

ANTHONY F. CARDOSO
Assistant County Attorney to
LANGDON C. CHAPMAN
County Attorney for Orange County
*Attorneys for Defendants County of Orange
and Steven M. Neuhaus*
255-275 Main Street
Goshen, New York 10924
(845) 291-3150

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES      i

PRELIMINARY STATEMENT      1

STATEMENT OF FACTS      2

ARGUMENT

     POINT I

         INTERVENTION WOULD BE FUTILE      7

     POINT II

         THE STATE DOES NOT MEET THE STANDARD
         FOR INTERVENTION      12

     POINT III

         THE ATTORNEY GENERAL'S OFFICE SHOULD BE
         DISQUALIFIED FROM REPRESENTING THE PEOPLE
         OF THE STATE OF NEW YORK      14

CONCLUSION      16

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

Cabrera v. Jakabovitz,
   24 F.3d 372 (2d Cir. 1994)...................................................................................... 11

Catanzano by Catanzano v. Wing,
   103 F.3d 223 (2d Cir. 1996)................................................................................... 12

Cinema 5 Ltd. v. Cinerama, Inc.,
   528 F.2d 1384 (2d Cir. 1976).................................................................................. 14

Cohen v. Strouch,
   No. 10 Civ. 7828 (DLC), 2011 WL 1143067 (S.D.N.Y. Mar. 24, 2011) ................................. 15

Congregational Rabbinical College of Tartikov, Inc. v. Village of Pomona,
   915 F. Supp. 2d 574 (S.D.N.Y. 2013)....................................................................... 9

Cruz v. Coach Stores, Inc.,
   202 F.3d 560 (2d Cir. 2000).................................................................................. 10

Farmland Dairies v. Commissioner of New York Sate Dept of Agriculture and Markets,
   847 F.2d 1038 (2d Cir.1988)................................................................................. 12

Huntington Branch, N.A.A.C.P. v. Town of Huntington,
   844 F.2d 926 (2d Cir.1988)................................................................................... 11

In re Bank of New York Derivative Litigation,
   320 F.3d 291 (2d Cir. 2003).............................................................................. 12, 13

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
   Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK) 2008 WL 2594819 (S.D.N.Y. June 26, 2008). 7

Kirby v. Coastal Sales Assocs. Inc.,
   199 F.R.D. 111 (S.D.N.Y. 2001) .............................................................................. 7

Lynn v. Vill. of Pomona,
   212 Fed. Appx. 38 (2d Cir. 2007) ......................................................................... 7, 11

Lynn v. Vill. of Pomona,
   373 F. Supp. 2d 418 (S.D.N.Y. 2005)....................................................................... 10

i

Mhany Mgmt., Inc. v. Cty. of Nassau,
    819 F.3d 581 (2d Cir. 2016) .................................................................................. 11

Murphy v. New Milford Zoning Comm'n,
    402 F.3d 342 (2d Cir. 2005) .................................................................................... 8

Osborne v. Fernandez,
    No. 06-CV-4127 (CS)(LMS), 2009 WL 884697 (S.D.N.Y. Mar. 31, 2009) ......................... 8, 9

Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,
    294 F.3d 35 (2d Cir. 2002) ...................................................................................... 10

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
    743 F.3d 11 (2d Cir. 2014) ...................................................................................... 10

Safe Harbor Retreat LLC v. Town of E. Hampton, N.Y.,
    629 Fed. Appx. 63 (2d Cir. 2015) .......................................................................... 7, 8

Spokeo, Inc. v. Robins,
    578 U.S. ——, 136 S.Ct. 1540, (2016) .................................................................... 12

Sunrise Detox V, LLC v. City of White Plains,
    769 F.3d 118 (2d Cir. 2014) ..................................................................................... 8

Town of Chester, N.Y. v. Laroe Estates, Inc.,
    __ U.S. __, 137 S. Ct. 1645 (2017) ........................................................................ 12

Town of Woodbury v. Cty. of Orange,
    114 A.D.3d 951 (2d Dept. 2014) ........................................................................... 4, 5

U.S. v. Glen Falls Newspapers Inc.,
    160 F.3d 853 (2d Cir. 1998) .................................................................................... 7

**Statutes**
42 U.S.C. § 3604(a) ...................................................................................................... 7

42 U.S.C. § 3604(c) ..................................................................................................... 11

42 U.S.C. § 3617 ....................................................................................................... 7, 9

42 U.S.C. § 12203(a) ................................................................................................... 10

NY Exec. Law § 63(1) ........................................................................................................... 14

section 3604 ............................................................................................................................. 9

**<u>Regulations</u>**

10 NYCRR § 5-122 ................................................................................................................. 6

10 NYCRR § 5-1.22(a) ........................................................................................................ 5, 8

## PRELIMINARY STATEMENT

The State of New York brings this motion to intervene to raise unripe Fair Housing Act ("FHA") claims on behalf of unknown, and potentially non-existent individuals (the "People"), who may never buy or be denied housing.  It does so in a case where the interests of the People are adequately represented by counsel for the plaintiff Greens at Chester LLC, whose interests entirely align with theirs.  The Attorney General's Office wades into this dispute at the expense of its own client, the State Department of Health, an involved alleged discriminator.  The Court should deny this politically motived motion to intervene.

Regardless of the motivations or merits of intervention, intervention would be futile as the State's claims are unripe for review.  The State identifies no County of Orange final agency action that deprived the plaintiff of the ability to develop housing.  The County granted every permit for which plaintiff applied.

Even if the State's claims could survive this fatal defect, it fails to state a claim.  The retaliation claim fails because the State alleges no protected activity <u>preceding</u> the County's alleged adverse action.  And for the disparate treatment claim, the State alleges no facts showing similarly situated developers were treated differently than the plaintiff.

In any event, the State does not meet Rule 24's requirements.  The existing plaintiff is represented by competent counsel and is adequately representing the interests of the "People," as plaintiff seeks the same relief:  build houses for the People to buy.  The State's claims are essentially cut and pasted from the plaintiff's complaint; it serves no purpose here.

Finally, the Attorney General's Office needs to be disqualified from representing the proposed intervenors, as it is conflicted due to its concurrent representation of one of the alleged discriminators, the State Department of Health, whose demands for additional water testing the

1

"People" allege is discriminatory. The Attorney General's Office cannot zealously represent both the "People" and the Department of Health.

For these reasons, and for all the reasons set forth below, the Court should deny the State's motion to intervene. To avoid duplication here, the County also joins in the separate arguments raised by the Town co-defendants in their motion in opposition to intervention.

### STATEMENT OF FACTS

The allegations in the proposed complaint in intervention are assumed true for the purposes of this motion only. The complaint largely parrots the plaintiff's complaint. Most of the allegations deal with the Town, and thus have nothing to do with the ability of the State to press claims against the County.

Initially, it appears the State lumps the County and the twice-elected County Executive together with all "the Defendants," when neither the County nor the County Executive have any say in the permits and approvals the plaintiff demands. The County has fully approved, and for years extended its approval of, this project. The County Executive has no decision-making responsibility over County Department of Health approvals and certainly no authority over the Town of Chester or State's granting of permits, which both appear to have legitimate concerns.

The State is seeking to intervene on behalf of as-yet unidentified Hasidic families who may or may not ever buy a home in this one development. (Ex. A., ¶¶ 14-17). The State also claims it is seeking to end the County's allegedly discriminatory policies in the future, but does not identify these "policies" or other projects involving similar events. (Ex. A., ¶ 18).

The State references tensions between the Village of Kiryas Joel and neighboring communities, citing various restrictive zoning laws passed by those communities. (Ex. A, ¶¶ 28-32). The State, however, does not reference any action <u>by the County</u> to pass restrictive zoning

ordinances nor does it allege facts reflecting "tension" between the County and the Hasidic community in general. (Ex. A, ¶ 32). Just because something happens in Orange County (the area) does not mean the County (the entity) is responsible.

This case involves a 117-acre property approved for 431 housing units. (Ex. A, ¶ 34). Following litigation between the plaintiff's predecessor and the Town of Chester, the Town approved the subdivision. (Ex. A, ¶ 36). The County issued realty subdivision approval of the project in 2013. (Ex. A, ¶ 37). The County extended the approvals again in 2018, after plaintiff bought the property. (Ex. A, ¶ 80). The State does not allege that the County ever revoked this approval.

The State claims that unidentified "County officials" made unspecified statements regarding the religion of the developer's managing partners, religion and family size of prospective residents, alongside strategies to halt development. (Ex. A, ¶¶ 40-41). The State does not allege the County had any involvement in the Town's enactment of the "Floor Area Ratio" law (Ex. A, ¶¶ 43-56), the passage of a "PDR" tax, Ward System, denial of building permits, implementation of costly requests on the developer, attempts to restrict development through local laws, or a "No Solicitation Law," all cited as discriminatory acts by "Defendants" in general. (Ex. A, ¶¶ 58-76, 87-100).

Since the State cannot claim that the County rejected permits (it did not), or indeed took any final action against the Greens that deprived them of the ability to develop their property, it focuses instead on County Executive Neuhaus' non-discriminatory public comments at two board meetings. (Ex. A, ¶¶ 78-79). The first meeting was on April 25, 2018 ("April Meeting").[1] County Executive Neuhaus made clear in his comments that he had opposed this long-planned high-

---

[1] The YouTube video is located at https://www.youtube.com/watch?v=EqGzrTBKoFw and is incorporated by reference into the complaint, and thus reviewable on this opposition.

density subdivision since its inception, long before the plaintiff (and their claimed Hasidic identity) came into the picture, stating "when we came in [to Town government]… we fought against this project." April Meeting at 1:20:40. Neuhaus then explained he did not want the project when it was owned by the prior owner and "asked him all along [to go commercial], he took us to Federal Court and beat us up there." Supra at 1:22:42. The County Executive went on to reiterate he was concerned about the high density of the 431 unit subdivision and its impact on the school district. He also explained that there were serious sewage capacity issues at the County treatment facilities. Supra at 1:23:24. None of the cited comments reference the religion of the applicant, but focus solely on his long-held, non-discriminatory concerns about the impacts from dense development.

On May 9, 2018, the State alleges the County Executive appeared at another Town Board meeting. (Ex. A, ¶ 79). Notwithstanding the State's editorializing, County Executive Neuhaus stated only that the County did not have the sewer capacity to provide to the Town to accommodate this high-density project. See May 9, 2018 Meeting at 1:19:40.[2] Recognizing that sewer capacity is a finite amount in the County's sewer district is not discriminatory and is beside the point. The Town guaranteed sewer capacity for the project in the referenced Settlement Agreement. (Ex. B). The County is just one possible source of contracted sewer treatment. It is the Town's responsibility to provide it, not the County's, whether from other municipal facilities or building its own treatment facility.[3] Then-Supervisor Jamieson said as much, stating "the Town has to

---

[2] Video of the meeting is located at:  https://www.youtube.com/watch?v=WRySBTqQndA.

[3] The Court can take judicial notice that this is not a fabricated concern regarding the present strains and sewer capacity issues in the County sewer district from just in-District users who are entitled to access it. See e.g. Times Herald Record, "Orange facing tough, costly decisions on sewage treatment," September 19, 2019 available at https://www.recordonline.com/news/20190921/orange-facing-tough-costly-decisions-on-sewage-treatment.
Notably, the County provides sewer treatment to the Town of Palm Tree (formerly the Village of Kiryas Joel), a predominantly Hasidic community and in-District user. The relationship between the rights of in-District and out-of-District users is discussed in some detail in various reported cases, including Town of Woodbury v. Cty. of Orange, 114 A.D.3d 951, 952, 981 N.Y.S.2d 126, 128 (2d Dep't 2014).

provide them sewer, so if Harriman doesn't have it, then the Town is going to be on the hook to go to Goshen or somewhere else, but we are on the hook to provide them the sewer capacity." (May 9, 2018 meeting at 1:34:36)

Regardless of these comments, the State does not allege the County took any final action in response affecting its own approvals. It approved, and extended, plaintiff's realty subdivision approvals. (Ex. A, ¶ 80). The State does not allege that the Town or the developer requested connection to the County Sewer District at this juncture, and the County has not rejected any such application.

On June 11, 2018, Deputy Commissioner of Health Christopher Ericson wrote to the New York State Health Department ("NYSDOH") to relay concerns about the water system for the Greens. (Ex. C). Ericson noted that in the intervening 16 years since the 2002 approval, Orange County was one of the fastest growing counties in the state. (Ex. C). The County Health Department expressed its concern that the water system had not been evaluated in decades and there were no updated studies as to whether the project still had a potable water supply. (Ex. C). The Health Department recommended the State seek updated studies. Nonetheless, the letter does not indicate that any previous approval is or should be revoked. The letter did not revoke any prior County approvals. Critically, the County is not the approval authority for community water supplies. The State's reference to a County "water permit" is inaccurate. The County issues its realty subdivision approval of the engineering, but the State Department of Health (Attorney General James' own client) is the sole approval authority for new community water systems in large subdivisions. See 10 NYCRR § 5-1.22(a). The State issues the "water permit" and determines if there is sufficient water quantity and quality. Id. Indeed, on August 3, 2018, NYSDOH ordered plaintiff to submit an updated application for approval of its water system,

5

including an updated engineering report and well-testing.  (Ex. D).  The request did not "undermine" the County's approval, as the County's approval had nothing to do with the quality and quantity of water; that is the State's sole purview.  See 10 NYCRR § 5-122.  Plaintiff's subdivision remains fully approved by the County.  If the State of New York is holding up plaintiff's permits, then the "People" should look to the Attorney General's other client for redress.

To the extent the State claims the County attempted to "re-zone" the Greens' property, this is impossible.  (Ex. A, ¶¶ 82-86).  The County has no power to re-zone property.  See e.g. Town Law § 261.  At most, the State alleges that County officials had one discussion with the plaintiff about commercial development and took no further action.  The State does not allege the County took any final action to "buy out" or "re-zone" the Greens (even if it had the power to do so).  The State further claims the County engaged in a "broader effort" to re-zone other properties in other communities, but provides no plausible allegations about this "effort."  Again, the County has no power to re-zone land.  See Town Law § 261.

6

## ARGUMENT

## POINT I

### INTERVENTION WOULD BE FUTILE

Whether or not the State meets the criteria for Rule 24 intervention (it does not) intervention would be futile because the proposed intervenors fail to state a claim.

The Court can properly deny intervention to a party where it would be futile due to meritless underlying claims. See U.S. v. Glen Falls Newspapers Inc., 160 F.3d 853, 856 (2d Cir. 1998) (District Court correctly denied intervention on futility grounds); see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 02 MDL 1484 (JFK), 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008) (collecting cases); Kirby v. Coastal Sales Assocs., 199 F.R.D. 111, 118 (S.D.N.Y. 2001).

Though not clearly spelled out, the County interprets the complaint as raising a disparate treatment[4] claim under 42 U.S.C. § 3604(a) (on the basis of religion) and retaliation under 42 U.S.C. § 3617.  These claims are not ripe for review and the State failed to state a claim under either statute.  The Court should deny the State permission to intervene as futile.

### A. THE UNDERLYING FHA CLAIMS ARE NOT RIPE FOR REVIEW

Ripeness is a threshold jurisdictional question.  Parties bringing land use challenges must "meet the high burden of proving that [the Court] can look to a final, definitive position from a local authority to assess precisely how they can use their property before this Court may entertain their claims." Safe Harbor Retreat LLC v. Town of E. Hampton, N.Y., 629 F. App'x 63, 64 (2d Cir. 2015) cert. denied 137 S.Ct. 74 (2016) (unpublished) (applying final decision requirement to

---

[4] See e.g. Lynn v. Vill. of Pomona, 212 F. App'x 38, 40 (2d Cir. 2007) (analyzing claim that defendants violated FHA by imposing construction delays and withholding regulatory approvals on certain of plaintiff's properties because he sold those properties to members of racial minorities as a "disparate treatment" claim).

FHA and ADA claims) (quoting Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 121 (2d Cir.2014)). The ripeness requirement defers federal review of claims until they have "arisen in a more concrete and final form." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). The salient issue for ripeness is whether the municipality has made a final decision on a landowner's ability to "use its land in its desired way." Safe Harbor, 629 F. App'x at 65; see also Osborne v. Fernandez, No. 06-CV-4127CSLMS, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009), aff'd, 414 F. App'x 350 (2d Cir. 2011). This requirement applies equally to claims involving injunctive relief. See e.g. Sunrise Detox, 769 F.3d at 123 (holding claims unripe where plaintiff sought, *inter alia*, "an injunction blocking the disapproval and authorizing construction of its project").

The State does not allege that the County made any final decision that prevented the plaintiff from developing its property or providing housing. It is undisputed that the County granted all approvals it is empowered to grant to this project. (Ex. A, ¶ 80). The State does not allege the County revoked any permits. The County has granted every permit for which the plaintiffs have applied to the County. While the County, in its role as public health agency, voiced concern about whether the project still had sufficient quantity and quality of water, that concern was voiced to the State who approves the water supply. See 10 NYCRR § 5-1.22(a). The County cannot take final action on something it has no power to approve. Notwithstanding Mr. Ericson's letter, plaintiff always had to do the testing the State is asking it to do now. The State requires a developer to show it has sufficient water quantity and quality at the time it activates its water system for residents, i.e. completed works approval. See 10 NYCRR § 5-1.22(d). Neither plaintiff nor the "People" were injured by something that has to be done anyway, whether now or later.

8

Similarly with sewer, while the County Executive suggested sewage capacity issues at the public meeting, neither plaintiff nor the State allege anybody submitted "at least one meaningful application" for connection to the County's sewer district. <u>Osborne</u>, No. 06-CV-4127CSLMS, 2009 WL 884697, at *5. Nor has the County taken any final agency action with respect to sewage treatment for this project. No homes are built and no infrastructure is in place to even make the connection. Generic allegations of hostility to a project cannot supplant the requirement for a final action depriving the plaintiff of the ability to develop. <u>Tartikov</u>, 915 F. Supp. 2d at 599-601 (holding FHA claims unripe where plaintiff had not submitted a formal application to develop property; general hostility to the project was not enough).

Any injury to the "People" or the developer is pure speculation at this point. If anything, the facts alleged show a fully approved subdivision with nothing in the way except permits from non-County entities.

## B. FAILURE TO STATE A RETALIATION CLAIM

Even if the retaliation claim was ripe for review, the State failed to state a claim. 42 U.S.C. § 3617 is the anti-retaliation provision under the FHA. Under the FHA, it is unlawful, "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [*inter alia,* section 3604] of this title." 42 U.S.C. § 3617. To state a claim under Section 3617, a plaintiff must plead facts showing "that [it was] engaged in protected activity, that the [defendant] was aware of this activity, that the [defendant] took adverse action against the plaintiff, and a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse

9

employment action." Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002) (citation omitted) ("RECAP").

The State's retaliation claim is confusing. The State dedicates just a few boilerplate sentences to this cause of action, which appeared to be an after-thought. The State alleges nowhere that the "People" engaged in any protected activity or that, following this non-existent protected activity, the County took some specific adverse action connected to that protected activity. "Protected activity" means "action taken to protest or opposed statutorily prohibited discrimination." RECAP, 294 F.3d at 54 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.2000)); see also 42 U.S.C. § 12203(a). All alleged County action occurred in 2018, nearly a year before plaintiff's alleged protected activity (i.e. filing the federal complaint). The "People" do not allege they engaged in any protected activity. This is insufficient to state a retaliation claim. See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 25 (2d Cir. 2014) (adverse action that occurs before protected activity is not actionable). Intervention as on this ground would be futile.

### C. FAILED TO STATE A FHA VIOLATION BY THE COUNTY

Even if the disparate treatment claims were ripe for review, the State failed to state a claim.

To state a claim for intentional discrimination under the FHA, a plaintiff must allege (1) they contracted with persons who are members of a class protected by the FHA; (2) those persons sought and were qualified to purchase the housing in question; (3) defendants "otherwise made unavailable" or refused to sell the housing to those persons; and (4) the housing opportunity remained available to other purchasers. Lynn v. Vill. of Pomona, 373 F. Supp. 2d 418, 428–29 (S.D.N.Y. 2005), aff'd, 212 F. App'x 38 (2d Cir. 2007). A plaintiff must also allege that "defendants treated other builders, similarly situated to himself, more favorably because their

purchasers were not [members of a protected class] or that his minority-owned homes were subject to more scrutiny than homes he built for non-minority buyers." <u>Lynn v. Vill. of Pomona</u>, 212 F. App'x 38, 40 (2d Cir. 2007) (unpublished); <u>Cabrera v. Jakabovitz</u>, 24 F.3d 372, 390 (2d Cir.1994) ("As long as a plaintiff can prove that a defendant afforded an African–American person fewer housing opportunities than a similarly-situated White person on account of race, the plaintiff has made out a case under Title VIII."); <u>see also</u> <u>Huntington Branch, NAACP v. Huntington</u>, 844 F.2d 926, 933–934 (2d Cir.1988) (noting that disparate treatment analysis involves differential treatment of similarly situated persons or groups).[5]

There are no facts alleging that the "People" are qualified buyers that will seek housing in this community or that they will in fact be a member of a protected class. Indeed, the very implication in this case, that this housing is being built just <u>for</u> members of the Hasidic sect, is itself endorsing a violation of the FHA's marketing rules. <u>See</u> 42 U.S.C. § 3604(c). Aside from these fatal defects, the State failed to allege anybody similarly-situated who were treated differently than the plaintiff developer or the "People." For example, the State does not allege another project with a 20-year old approval for a water system, never activated closer in time to that approval, that did not similarly raise concern to public health agencies over continued viability. (Ex. C). They also do not allege facts showing that other developers are not subject to sewage capacity limitations in the County Sewer District. To show disparate treatment, somebody else had to be treated differently under similar circumstances. The State alleged nothing to support their claim involving the County's actions. Intervention would be futile.

---

[5] Both <u>Cabrera</u> and <u>Huntington Branch</u> have been subsequently modified by statutory and regulatory changes on other grounds, but these changes do not impact the validity of their holdings on the issue here. <u>See</u> <u>Mhany Mgmt., Inc. v. Cty. of Nassau</u>, 819 F.3d 581, 613, 617 (2d Cir. 2016).

**POINT II**

**THE STATE DOES NOT MEET THE STANDARD FOR INTERVENTION**

To intervene as a matter of right under Rule 24(a)(2), an intervenor must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." In re Bank of New York Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003). An intervenor's failure to satisfy "*any one* of these requirements is a sufficient ground to deny the application." Catanzano by Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) (quoting Farmland Dairies v. Commissioner, 847 F.2d 1038, 1043 (2d Cir.1988)). Following the Supreme Court's recent decision in Town of Chester, N.Y. v. Laroe Estates, Inc., __ U.S. __, 137 S. Ct. 1645, 1651, 198 L. Ed. 2d 64 (2017), where an intervenor seeks relief that is different than a party, like here, the intervenor itself "must have Article III standing[.]"

Initially, the "People" lack standing to intervene to seek different relief than the plaintiff. To establish Article III standing, the State must allege facts showing the "People:" "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. ——, ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)). Any injury to the "People" is purely speculative at this point. No development is built, the developers are not selling the houses, and any potential qualified buyers are not identified. Indeed, the development may never be built or even be marketed to the people claiming injury now. Critically, even if not speculative, any injury to the "People" is not fairly traceable to any action by the County. As comprehensively laid out above, the County has fully approved this subdivision.

12

Even if the State has standing, intervention is still not warranted. The State has not explained how the "People's" interests will be impaired by the disposition of this action in its absence. The plaintiff is adequately represented by competent counsel diligently pursuing similar claims and working to achieve the same result the "People" seek: housing being built. Even if the plaintiff were to settle this case, any such settlement will certainly include the plaintiff building housing for eligible buyers like the proposed intervenors.[6] The State's presence adds nothing to this case and indeed makes settlement and discovery more complicated and less efficient, with no gain to the "People." Similarly, the State cannot claim that the "People's" rights are not adequately represented by the existing parties. The People's interest, obtaining housing, align entirely with the current plaintiff, building housing. The Attorney General's involvement adds nothing to the case. Of course, in the future the Attorney General can always bring an enforcement action if actual housing violations come to pass in the future when such a claim would be ripe, but as of right now the State has neither a ripe claim nor a viable plaintiff.[7]

The Court should deny the State's application to intervene.

---

[6] Indeed, neither party to this litigation takes the position that the plaintiffs will not build houses of some amount or size on this property. The primary dispute regards the size of houses and availability of infrastructure to support them.
[7] The standard for permissive intervention is essentially the same. The Court should, for the same reasons as above, deny permissive intervention. See Bank of New York, 320 F.3d at 300, fn. 5.

<u>Point III</u>

<u>The Attorney General's Office Should be Disqualified From
Representing the People of the State of New York</u>

The Attorney General's Office, as counsel for the State of New York and its agencies, cannot represent both the State Department of Health, one of the parties to the alleged discrimination, and the "People of the State of New York," alleged victims of its other client's actions. <u>See</u> NY Exec. Law § 63(1). This is a textbook case of adverse concurrent representation that the Second Circuit has held to be "prima facie improper." <u>Cinema 5 Ltd. v. Cinerama, Inc., et al.,</u> 528 F.2d 1384, 1387 (2d Cir.1976).

This conflict is clear if the Court looks at a possible successful outcome of the State's FHA claim. To find in favor of the "People" on the FHA claim against the County, it would likely require the Court to hold that the imposition of additional water testing requirements <u>by the State,</u> allegedly initiated by the County's letter, was a violation of the Fair Housing Act. This finding would impute liability to the Attorney General's client, the State Department of Health, which is the sole approving authority for the Green's water system. The State argues in its complaint this is an impediment to the development of the project.[8] (Ex. A, ¶¶ 80-81, 100). This is an impossible conflict to resolve for the Attorney General, who is seeking to actively harm her own client's legal interests by representing another client, i.e. the People. It is hard to believe that the State could vigorously represent the People of the State of New York while juggling the fact that it would also have to avoid pointing the finger at its other client, the State and the Department of Health, who is clearly a responsible, albeit (strategically) unnamed, party in this lawsuit.

---

[8] The Attorney General is also involved as counsel to the DEC, which will be the approval authority for both water withdrawal permits for the wells and the sewage system for this project.

There is another problem.  Zealous, unconflicted counsel for the "People" would have likely sued the Department of Health and/or its officials for its alleged involvement in the discrimination.  But the Attorney General's Office, irrevocably and totally conflicted in its simultaneous representation, cannot.  The Attorney General's office cannot serve two masters, though that is what it seeks to do here.  See Cohen v. Strouch, No. 10 CIV. 7828 DLC, 2011 WL 1143067, at *4–5 (S.D.N.Y. Mar. 24, 2011) ("Where, as here, an attorney or firm takes on multiple representations that will require advocating a position for one client that would directly adversely affect another client's interest, there is an "imminent threat of a serious conflict," making disqualification appropriate from the start of the proceedings.").

## CONCLUSION

For the reasons stated above, the Court should deny the proposed intervenor's motion to intervene in its entirety against the defendants County of Orange and Steven M. Neuhaus, with such other and further relief as the Court deems just and proper.

Dated:  Goshen, New York
         December 19, 2019

Respectfully submitted,

_____
ANTHONY F. CARDOSO
Assistant County Attorney to
LANGDON C. CHAPMAN
County Attorney for Orange County
*Attorneys for Defendants County of Orange,*
*and Steven M. Neuhaus*
255-275 Main Street
Goshen, New York 10924
Tel. No.: (845) 291-3150

16