UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GREENS AT CHESTER LLC,

       Plaintiff,

               No. 19-cv-06770 (CS)

   -against-

TOWN OF CHESTER, JAMES. M. FARR,     Hon. Cathy Seibel
individually and as Building Inspector of the
Town of Chester, ROBERT VALENTINE,
individually and as Supervisor of the Town of
Chester, ALEXANDER J. JAMIESON,
as former Supervisor of the Town of Chester,
STEVEN M. NEUHAUS, individually and as
County Executive of the County of Orange,
and THE COUNTY OF ORANGE,

       Defendants.
-------------------------------------------------------------X


      _____


## MEMORANDUM OF LAW IN OPPOSITION TO THE NYAG'S MOTION INTERVENE

      _____



      Respectfully submitted,

      FEERICK NUGENT MACCARTNEY, PLLC
      By: Mary E. Marzolla
        Patrick A. Knowles
      96 South Broadway
      South Nyack, NY 10960
      Tel.: (845)353-2000

      *Attorneys for Defendants Town of Chester,*
      *James M. Farr, Robert Valentine, and*
      *Alexander Jamieson*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 5

    I.      2010 Federal Litigation And Settlement ................................................................ 5

    II.     Alleged Bases Of Plaintiff's Complaint And Amended Complaint ....................... 6

    III.    Relief Sought Against The Town In The Instant Action ........................................ 7

    IV.    The NYAG Seeks To Intervene To Force The Town to Give Into
             Plaintiff's Demands .............................................................................................. 7

    V.     The NYAG's Proposed Intervenor Complaint ..................................................... 8

ARGUMENT ...................................................................................................................... 9

    I.      The Court Should Deny The NYAG's Request To Intervene As Of
             Right Under Rule 24(a)(2). .................................................................................. 9

          A.    The NYAG has not met the Rule 24(a) requirements.................................... 10

               1.    The NYAG has asserted no protectable interest. ...................................... 10

               2.    The NYAG's interest, if any, will not be impaired by not
                     participating in this action.......................................................................... 13

               3.    The NYAG has made no showing that Plaintiff will not vigorously
                     pursue its shared claims. ............................................................................ 16

    II.     The Court Should Deny The NYAG's Request For Permissive Intervention
             Under Rule 24(b)(1)(B). ..................................................................................... 17

    III.    The NYAG Lacks Article III Standing To Intervene, Either As Of Right
             Or Permissively.................................................................................................... 19

    IV.    The NYAG Cannot Bring Claims Under The FHA Because It Does Not
             Provide For *Parens Patriae* Standing. .............................................................. 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,
    458 U.S. 592 ................................................................................................. 21, 22

Allen v. Wright,
    468 U.S. 737 (1984)...................................................................................... 20

Ashcroft v. Twombly,
    556 U.S. 662 (2009)........................................................................................ 2

Brennan v. N.Y.C. Bd. of Educ.,
    260 F.3d 123 (2d Cir. 2001)...................................................................... 11, 12

British Airways Bd. v Port Auth. of New York and New Jersey,
    71 F.R.D. 583 (S.D.N.Y. 1976), aff'd, 556 F2d 554 (2d Cir. 1976), ...................................... 19

Butler, Fitzgerald & Potter v. Sequa Corp.,
    250 F.3d 171 (2d Cir. 2001).......................................................................... 16

Christie v. Phoenicia Water Dist.,
    194 A.D.2d 912 (3d Dept. 1993). ................................................................... 3

City of Cleveland v. NRC,
    17 F.3d 1515 (D.C. Cir. 1994)...................................................................... 10

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013)................................................................................ 20, 23

Cobell v. Jewell,
    No. 96-cv-1285 (TFH), 2106 WL 1070459 (D.D.C. Mar. 30, 2016)...................... 17

Connecticut v. Physicians Health Servs. of Conn., Inc.,
    287 F.3d 110 (2d Cir. 2002)................................................................ 21, 22, 24

Ctr. For Biological Diversity v. EPA,
    274 F.R.D. 305 (D.D.C. 2011)....................................................................... 19

Ctr. for Biological Diversity v. U.S. Dep't of the Interior,
    563 F.3d 466 (D.C. Cir. 2009)...................................................................... 24

Deutsche Bank Nat'l Trust Co. v. FDIC,
    717 F.3d 189 (D.C. Cir. 2013) ................................................................... 9, 18

Diaz v. Southern Drilling Corporation,
   427 F.2d 1118 (5th Cir. 1970) .................................................................................. 10

Diesenhouse v. Town of Wallkill,
   184 A.D.2d 966 (3d Dept. 1992), leave to appeal denied, 82 N.Y.2d 657 (1993) ................... 3

Donaldson v. United States,
   400 U.S. 517 (1971) ............................................................................................ 10

Edmondson v. State of Neb. ex rel. Meyer,
   383 F.2d 123 (8th Cir. 1967) .................................................................................. 10

EEOC v. Nat'l Children's Ctr., Inc.,
   146 F.3d 1042 (D.C. Cir. 1998) ............................................................................... 16

Floyd v. City of New York,
   302 F.R.D. 69 (S.D.N.Y. 2014) ............................................................................... 12

Flynn v. Hubbard,
   782 F.2d 1084 (1st Cir. 1986) ........................................................................... 13, 16

Friends of the Pine Bush v. Planning Board of the City of Albany,
   86 A.D.2d 246 (3d Dept. 1982) ................................................................................. 3

Fund for Animals, Inc. v. Norton,
   332 F.3d 728 (D.C. Cir. 2003) .......................................................................... 10, 19

Garcia v. Vilsack,
   304 F.R.D. 77 (D.D.C. 2014) .................................................................................. 18

H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,
   797 F.2d 85 (2d Cir. 1986) .......................................................................... 13, 15, 18

Hobson v. Hansen,
   44 F.R.D. 18 (D.D.C 1968) .................................................................................... 10

Kamdem-Ouaffo v. Pepsico, Inc.,
   314 F.R.D. 130 (S.D.N.Y. 2016) .............................................................................. 10

Keepseagle v. Vilsack,
   307 F.R.D. 233 (D.D.C. 2014) ................................................................................. 18

Kowalski v. Tesmer,
   543 U.S. 125 (2004) ............................................................................................ 20

Lexmark Int'l, Inc. v. Static Control Components, Inc.,
   572 U.S. 118 (2014) ............................................................................................ 20

Lujan v. Defs of Wildlife,
    504 U.S. 555 (1992)......................................................................................... 19

Mhany Mgt. Inc. v. Inc. Vill. of Garden City,
    4 F.Supp.3d 549 (E.D.N.Y. 2014) ................................................................. 15

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,
    72 F.3d 361 (3d Cir. 1995)............................................................................. 10

Nat. Resources Defense Council, Inc. v. New York State Dept. of Envtl. Conservation,
    834 F.2d 60 (2d Cir. 1987)............................................................................. 17

Natl. Fair Housing Alliance v. Carson,
    330 F.Supp.3d 14,  (D.D.C. 2018) .............................................................. 1, 21

New York News, Inc. v. Kheel,
    972 F.2d 482 (2d Cir. 1992)........................................................................... 10

Park View Heights Corp. v. City of Black Jack,
    605 F.2d 1033 (8th Cir.1979) ........................................................................ 15

People by Vacco v. Mid Hudson Med. Group, P.C.,
    877 F.Supp. 143 (S.D.N.Y. 1995) ............................................................ 21, 23

People v. Peter & John's Pump House, Inc.,
    914 F.Supp. 809 (N.D.N.Y. 1996)............................................................ 23, 24

People v. Utica City School District,
    177 F.Supp.3d 739 (N.D.N.Y. 2016)............................................................. 22

Peregrine Myanmar Ltd. v. Segal,
    89 F.3d 41 (2d Cir. 1996)............................................................................... 15

R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.,
    467 F.3d 238 (2d Cir. 2006)........................................................................... 18

S.E.C. v. Petro-Suisse Ltd.,
    12 Civ. 6221 AJN, 2013 WL 5348595, at *3 (S.D.N.Y. Sept. 25, 2013)................................ 16

Sandy Hollow Assoc. LLC v. Inc. Vil. of Port Washington N.,
    2010 WL 6419570 (E.D.N.Y. 2010)................................................................. 2

Save the Pine Bush, Inc. v. Planning Bd. of the City of Albany,
    130 A.D.2d 1 (3d Dept. 1987) ......................................................................... 4

Shea v. Angulo,
    19 F.3d 343 (7th Cir.1994) ............................................................................. 17

Sierra Club v. E.P.A.,
    292 F.3d 895 (D.C. Cir. 2002) ................................................................................ 19

Sierra Club v. McCarthy,
    308 F.R.D. 9 (D.D.C. 2015) .................................................................................... 18

Simon v. E. Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) .................................................................................................. 20

Smoke v. Norton,
    252 F.3d 468 (D.C. Cir. 2001) ................................................................................ 13

Spokeo, Inc. v. Robins,
    136 S.Ct. 1540 (2016) ............................................................................................. 20

Starr Int'l Co. v. United States,
    856 F.3d 953 (Fed. Cir. 2017) ................................................................................ 20

Stewart v. Rubin,
    948 F.Supp. 1077 (D.D.C.1996) aff'd, 124 F.3d 1309, 1997 WL 369455 (D.C.Cir. 1997). .... 12

Support Ministries for Pers. With AIDS, Inc. v. Village of Waterford,
    799 F.Supp. 272 (N.D.N.Y. 1992) .......................................................................... 23

Town of Chester, N.Y. v. Laroe Estates, Inc.,
    137 S.Ct. 1645 (2017) ............................................................................................. 19

United Keetoowah Band of Cherokee Indians of Okla. v. United States,
    480 F.3d 1318 (Fed Cir. 2007) ................................................................................ 14

United States Postal Serv. v. Brennan,
    579 F.2d 188 (2d Cir. 1978) .................................................................................... 10

United States v. City of New York,
    198 F.3d 360 (2d Cir. 1999) .................................................................................... 18

United States v. Pitney Bowes, Inc.,
    25 F.3d 66 (2d Cir. 1994) .......................................................................................... 9

Vazman v. Fidelity Int'l Bank,
    418 F.Supp. 1084 (S.D.N.Y. 1976) ........................................................................ 11

Walker v. Jones,
    82 Civ. 2723, 1988 WL 73866 (D.D.C. July 1, 1988) ........................................... 12

Westhab, Inc. v. City of New Rochelle,
    03 Civ. 8377(CM), 2004 WL 1171400 (S.D.N.Y. May 3, 2004) ........................... 14

Wisconsin Educ. Ass'n Council v. Walker,
    705 F.3d 640 (7th Cir. 2013) ................................................................ 9, 10

**Statutes and Rules**

7 U.S.C. § 13a-2(1) ................................................................................. 24

18 U.S.C. § 248(c)(3)(A) ........................................................................ 24

15 U.S.C.

    § 15c(a) ............................................................................................... 24
    § 1640(e) ............................................................................................. 24
    § 1681s(c) ........................................................................................... 24
    § 6309(c) ............................................................................................. 24

42 U.S.C.

    § 1981. ................................................................................................... 6
    § 1982. ................................................................................................... 6
    § 3602(d). ............................................................................................ 24
    § 3602(k). ............................................................................................ 14
    § 3604(a) .......................................................................................... 8, 14
    § 3610 .................................................................................................. 24
    § 3610(f) .............................................................................................. 24
    § 3612 .................................................................................................. 23
    § 3613 .................................................................................................. 23
    § 3613(c)(1) ........................................................................................ 15
    § 3614 ............................................................................................ 23, 24
    § 3617 ........................................................................................ 6, 8, 14

Fed. R. Civ. P. 19 .............................................................................. 13, 14

Fed. R. Civ. P. 24 .......................................... 1, 9, 10, 11, 12, 13, 14, 16, 17, 18

Fed. R. Civ. P. 65(d) ............................................................................. 15

New York Town Law § 277 ................................................................. 2, 4

New York Town Law § 278 ................................................................... 5

**Other**

Advisory Committee's Notes to the 1966 FRCP 19 amendment, 39 F.R.D. 69, 111 (1966) ........ 13

## INTRODUCTION

The People of the State of New York, by Letitia James, Attorney General of the State of New York ("NYAG"), seek to intervene as a plaintiff in this action, both as of right and by permission pursuant to Rules 24(a)(2) and 24(b)(1)(B) of the Federal Rules of Civil Procedure ("FRCP").  The Court should deny the NYAG's motion, as the NYAG has not met the requirements for intervention as of right or permissive intervention.[1]

## PRELIMINARY STATEMENT

The NYAG's interest in intervention is not to benefit the People of the State of New York.  Rather, it is to pressure the Town of Chester to accede to unrealistic demands for the benefit of the private developer Plaintiff and to force the Town to immediately grant Plaintiff any and all approvals for its development project.  The NYAG's motive was made clear in an interview with the *New York Times*, released the day after filing the instant motion to intervene:

> The motion is a prelude to Ms. James's office filing a separate lawsuit against the town and Orange County if officials do not settle with the developer and allow the project to proceed, she said.

Def. Ex. C.[2]

Yet, both before and after making the above statement to the press, the NYAG has declined to hear the Town's position.  The NYAG ignores that the Town of Chester is a creature of statute, which cannot summarily grant approvals in the fashion Plaintiff demands without violating well-established New York Law and exposing itself to litigation by third parties.  Had the NYAG conferred with the Town in good faith before moving to intervene, the NYAG would

---

[1] To be sure, this is not the first time the NYAG has erroneously sought intervention.  See Natl. Fair Housing Alliance v. Carson, 330 F.Supp.3d 14, 40, 64-66 (D.D.C. 2018) (denying NYAG's motion to intervene for lack of *parens patriae* and Article III standing).

[2] Defendants' Exhibits A-E are annexed to the accompanying Marzolla Decl.; Exhibits F-H are annexed to the accompanying Knowles Decl.

have learned that Plaintiff had no legitimate claim of entitlement to the building permits demanded for several reasons including, but not limited to, the following:

First, when Plaintiff acquired the property in 2017, the former property owner's Performance Guarantee had lapsed without it having completed – or even started – required infrastructure improvements on the property.  Plaintiff admits that a Performance Guarantee or the completion of infrastructure improvements is required "prior to issuance of a building permit."  (See, e.g., Pl. Compl. at ¶ 220, ECF No. 1; Pl. Am. Compl. at ¶ 136, ECF No. 38.)[3]  By having neither the required Performance Guarantee in place nor the required infrastructure improvements completed before applying for building permits, Plaintiff was not qualified for the relief demanded.  See Sandy Hollow Assoc. LLC v Inc. Vil. of Port Washington N., 2010 WL 6419570, at **12-13 (E.D.N.Y. 2010) (granting 12(b)(6) dismissal because no legitimate claim of entitlement existed where, at the time of application, plaintiff did not have a performance bond), report and recommendation adopted, 2011 WL 1260245 (E.D.N.Y. 2011), amended sub nom., 2012 WL 273143 (E.D.N.Y. 2012).

More particularly, Plaintiff has repeatedly admitted, both in Court filings and correspondence, that it was aware of the Performance Guarantee mandated by the 2013 Resolution of Subdivision Approval, New York State Town Law § 277, and the Town Code. That obligation was initially met when Plaintiff's predecessor-in-title tendered an Unconditional One Year Letter of Credit on May 19, 2014 ("Letter of Credit") to the Town as the required Performance Guarantee.  But that Letter of Credit expired before Plaintiff had submitted any

---

[3]  In this regard, the Complaint and Amended Complaint's internal inconsistencies and admissions do not allow "the reasonable inference that the defendant is liable for the misconduct alleged", but rather, Plaintiff's predicament is due to Plaintiff's own self-acknowledged failure to comply with statutory and contractual prerequisites necessary to entitle it to a building permit in the first instance.  Ashcroft v. Twombly, 556 U.S. 662, 678 (2009).

building permit applications, and without applying for any extension.  (See Pl. Compl. at Ex. 18, and referred to in Pl. Am. Compl. at ¶¶ 134 et seq.)  The obligation to ensure that the proper performance security remains in place rests on the developer alone and not the Town. Diesenhouse v. Town of Wallkill, 184 A.D.2d 966 (3d Dept. 1992), leave to appeal denied, 82 N.Y.2d 657 (1993).  What is more, "once a town determines that a particular improvement is necessary, it may not waive the requirement that the owner either install the improvement or post the bond."  Christie v. Phoenicia Water Dist., 194 A.D.2d 912, 912-13 (3d Dept. 1993).  Thus, the Town could not grant the building permits Plaintiff sought without any performance security in place, or the approval would have been subject to challenge(s) under CPLR Article 78 and/or via a declaratory judgment action on this ground alone.  See Friends of the Pine Bush v. Planning Board of the City of Albany, 86 A.D.2d 246, 249 (3d Dept. 1982) ("[T]his procedure, designed to assure soundly conceived subdivisions of stable character in contrast to excessive subdivision of lands not yet ready for building improvement, resulting in serious economic loss to purchasers and severe tax delinquencies and impairment of municipal credit, cannot be waived by the planning board.").

Second, Plaintiff's own actions and filings confirm it had actual knowledge the performance security was lacking and had no legitimate claim of entitlement to any building permit during all relevant times.[4]  Instead of attempting to satisfy that requirement in compliance

---

[4]  Confirming Plaintiff's pre-purchase, pre-application, and pre-litigation knowledge of this defect, Plaintiff annexed to its Amended Complaint an October 18, 2017 email, wherein Plaintiff's predecessor-in-title advised the Town Engineer and Plaintiff's Engineer, John Petroccione, that "[t]he bond was posted when the development plan was approved and filed.  It just needs to be replaced by the new development group."  (Def. Ex. F and ECF No. 39-14 (email); Pl. Am. Compl. at ¶ 139 (referring to Richard "RJ" Smith as "a representative of Plaintiff's predecessor").)  Thus, when Plaintiff acquired title days later on October 27, 2017, Plaintiff knew it had to satisfy the Performance Guarantee requirement, and, nonetheless, chose not to.

with law, Plaintiff attempted to pull a fast one by unexpectedly dropping-off an unsolicited check at the Town Clerk's Office on July 18, 2019, without any agreement or approval required by Town Code, *one day before* filing its Complaint on July 19, 2019.  (Pl. Compl. at ¶ 240 ("Following the 2019 Building Permit Denial, on July 18, 2019 Plaintiff filed with the Town a cash deposit in the sum of $1,676,979.66 as . . . 'Renewal Security'"); Pl. Am. Compl. at ¶ 144 (referring to Ex. 17).)  Plaintiff delivered this "Renewal Security" check at the eleventh hour without prior notice or communication.  In addition, the check was in an amount that had previously been agreed upon for the development project six years earlier (in 2013).  To be sure, Plaintiff remitted the check without any agreement or discussion with the Town as to whether the 2013 amount was sufficient in 2019.  The unsolicited delivery was then followed by several post-commencement letters concerning the Performance Guarantee that were designed to attempt a transparent, retroactive cure of the long-standing deficiency, and such could not cure the defect.[5]

Third, even assuming, *arguendo*, the Performance Guarantee or completed infrastructure were carried out before Plaintiff applied for the building permits, Plaintiff nevertheless had no entitlement because Plaintiff's applications failed to facially comply with the Approved Plans[6] as

---

[5] Plaintiff's conduct in this regard violates Town Law § 277(9)(d), which provides that the term of a performance guarantee "shall" "in no case [run] for a longer term than three years provided, however, that the term of such performance bond or security agreement may be extended by the planning board with consent of the parties thereto."  Neither Plaintiff nor its predecessor-in-title ever applied for or sought the Planning Board's consent to extend the term of the required Performance Guarantee, which lapsed on its face years earlier.  The Town is not authorized to waive, extend, or alter this express statutory requirement.  Id.; see also Save the Pine Bush, Inc. v. Planning Bd. of the City of Albany, 130 A.D.2d 1, 5 (3d Dept. 1987) ("[T]he Board's decision not to require a bond for the full amount of the projected costs of improvements and instead to allow for bonding in stages over the four-phase 10–year period that the KMRS development will be under construction violated General City Law § 33 . . . .").  The Town must agree to the security.

[6] "Approved Plans" refers to the Plans attached to and made a part of the 2010 Settlement Agreement.  Both documents are annexed to the Amended Complaint.  (ECF Nos. 38-1, 38-2.)

well as the Town Zoning Code and incorporated SEQRA Review.  This point will be more fully set forth in the Town's upcoming motion to dismiss Plaintiff's Amended Complaint.

The red herrings in Plaintiff's pleadings are plentiful.  They include references to various Town local laws that were not applied to Plaintiff and/or were not enacted, as well as to purported issues regarding fees that were never raised or disputed by Plaintiff via the available mechanisms provided for in the Town Code, thus rendering all such complaints unripe.

In short, far from being discriminatory, the Town simply lacks the luxury or authority to set aside the law for a private developer's benefit as a means to avoid this lawsuit, or to surrender to the NYAG's unjustified demands to avoid the NYAG's threatened enforcement action.  Under these circumstances, the NYAG's decision to seek intervention for the admitted purpose of forcing the Town to grant building permit approvals that diverge from Town Law, the Code, the 2010 Settlement Agreement, and the 2013 Resolution of Subdivision Approval, for the benefit of a for-profit developer – and not for the greater assistance of New York's citizenry – is untenable.

This Court should deny the NYAG's unprecedented and unsound efforts to intervene.

## STATEMENT OF FACTS

**I.    2010 Federal Litigation And Settlement**

Plaintiff's predecessor-in-title and the Town entered into a 2010 Settlement Agreement arising out the predecessor's claim that its due process and other rights were violated because of an alleged conflict between the Town's Code and New York State Town Law § 278 regarding subdivision approval, brought after the Town Board failed to take action on its application. (See Def. Ex.  G.)  No allegations of religious discrimination were made or at issue there.  (Id.)

The 2010 Settlement Agreement provided, in pertinent part, for the predecessor, at its option, to "request conditional final subdivision approval of all or part of the plat" "in

accordance with the filing requirements of the Town of Chester Code", and for the Town Planning Board to thereafter grant final subdivision approval as a cluster subdivision in accordance with the preliminary subdivision approval granted by the Planning Board in 1998 "as modified in accordance with the 28 revised plan sheets annexed thereto."  (Def. Ex. H and ECF No. 38-1.)  The Town Zoning Code and SEQRA Review are expressly incorporated into the Approved Maps annexed to the 2010 Settlement Agreement.

Thereafter, the property and project lay dormant for years.  Plaintiff purchased the property on October 27, 2017.  In November 2018 and May 2019, Plaintiff submitted building permit applications to build homes far larger than permitted under the Settlement Agreement and Approved Maps and without having completed required infrastructure or having posted any security for performance.  The applications were denied – as they should have been.  Rather than submit a compliant application, Plaintiff elected to commence this action on July 19, 2019.

## II.   Alleged Bases Of Plaintiff's Complaint And Amended Complaint

The gravamen of Plaintiff's voluminous 101-page, 568-paragraph Complaint (with an accompanying 253 pages of exhibits) and subsequent voluminous Amended Complaint is that determinations by the Town Building Inspector denying one building permit application made in 2018 and a second made in 2019 violated the constitutional, statutory, and contractual rights of the Plaintiff, a corporate land developer, even though Plaintiff had not completed the required infrastructure and had not posted any security for performance.  Plaintiff asserts various constitutional claims, including violations of its substantive due process and equal protection rights as well as an unconstitutional taking.  Plaintiff also pleads claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of §§ 3404 and 3617 of the Fair Housing Act ("FHA") as well as §§ 1981 and 1982 of the Civil Rights Act.

The FHA claims allege "disparate treatment and impact upon Hasidic Jews and The Greens" and "Town animus towards Hasidic Jews moving into the Town and The Greens" that has "precluded Hasidic Jewish individuals from moving into the Town and County, by virtue of, *inter alia*, preventing the construction of homes at The Greens" and/or "effectively prevent[ed] Hasidic Jews from moving into the Town and County at The Greens", and, as a result, "Plaintiff has suffered actual injury as a result of Defendants' Fair Housing Act violations committed against both Plaintiff and Hasidic Jews" due to "intentionally interfere[ing] with the Hasidic Jewish community's right to available housing and Plaintiff's right to build and sell houses to Hasidic Jews . . . ."  (Pl. Compl. at ¶¶ 416-430, 437.)

## III.   Relief Sought Against The Town In The Instant Action

In addition to seeking $80,000,000 in compensatory damages, Plaintiff's FHA claims also demand injunctive and declaratory relief, including, but not limited to, "enjoining Defendants from engaging in any of the Discriminatory Acts or any other act of discrimination aimed at or that has the effect of defeating development of The Greens" and "directing the Town . . . to grant in the ordinary course building permit applications".[7]

## IV.   The NYAG Seeks To Intervene To Force The Town To Give Into Plaintiff's Demands

The NYAG seeks intervention to force the Town to accede to Plaintiff's demands, by granting immediate approvals to Plaintiff.  Such motive was made explicit in an interview given by the NYAG detailing the decision to seek leave to intervene.  (Def. Ex. C.)  Apparently, should

---

[7] Plaintiff, however, was not qualified for the relief it sought and cannot secure approval pursuant to non-compliant applications.  As will be shown in the Town's motion to dismiss Plaintiff's Amended Complaint, remedying any alleged acts of discrimination does not warrant approval of an unqualified project in conflict with conditions of prior approvals, the agreed upon plans, and the law.  Such an outcome would result in an unjustified windfall to Plaintiff.

this Court not grant intervention and/or if Defendants do not give in to Plaintiff's settlement demands, the NYAG will proceed with a separate enforcement action against Defendants.  (Id.)

## V.    The NYAG's Proposed Intervenor Complaint

The NYAG's Proposed Complaint (ECF No. 36-1) mirrors the facts in Plaintiff's pleadings and Plaintiff's FHA claims brought under Sections 3604(a) and 3617.  Both sets of pleadings are based on (1) broad-stroke allegations of discrimination against both the Plaintiff and the Hasidic Jewish community by Town-wide laws that either have never been applied to anyone or have not been enacted, including, for instance, the Town's Purchase of Development Rights ("PDR") Law, which was vetoed by Governor Cuomo on November 25, 2019[8]; and (2) narrower allegations involving solely Plaintiff, all of which erroneously assume Plaintiff had a clear entitlement to the building permits sought.

Both the NYAG and Plaintiff seek to redress the Defendants' alleged discriminatory interference with Plaintiff's land use rights.  According to the NYAG, intervention is sought "in this action because of the Defendants' obstruction against development of The Greens [by the Plaintiff], and policy or practice of preventing Hasidic Jewish families from purchasing and occupying those homes [at The Greens], all in violation of the FHA."  (NYAG's Motion to Intervene at p. 3, ECF No. 36; NYAG's Proposed Compl. at ¶ 15, ECF No. 36-1.)  The NYAG seeks injunctive relief in the form of "[a]n order requiring that Defendants immediately approve the development of the Greens at Chester without further administrative delay or obstruction" and "[e]njoing Defendants from enforcing any local laws proposed or enacted to prevent the development of The Greens . . . ."  (NYAG's Proposed Compl. at p. 19, Prayer for Relief at (d), (d)(i).)  While the NYAG's Motion to Intervene purports to involve some broader harm different

---

[8] The Governor's Veto Memo cited this very litigation as the reason for vetoing. (Def. Exs. D and E.)

than what is set forth in Plaintiff's pleadings, no plausible, non-conclusory facts are alleged to support such a claim.  A plain reading of the NYAG's submission reveals that intervention is aimed to benefit Plaintiff, a for-profit developer fully capable of representing itself.  And the NYAG's statement to the *New York Times* belies any other purpose.

Notably, the NYAG's prayer for relief seeks relief that is either unripe or gives Plaintiff exactly what Plaintiff asks for on its own; namely, immediate issuance of permits without regard to Plaintiff's non-compliance with New York State Law, Town of Chester Code, the Settlement Agreement, the Approved Maps, or SEQRA Review, while forever enjoining the Town from ever enforcing its local laws to the property.  Such a request is extraordinary.  Government resources and taxpayer funds should not be used to serve the individualized interests of a private developer, especially where, as here, the developer is well-funded, has already hired capable, experienced counsel, and filed a Complaint and Amended Complaint demanding virtually the same relief.

## ARGUMENT

### I.     The Court Should Deny The NYAG's Request To Intervene As Of Right Under Rule 24(a)(2).

As the FHA does not grant the NYAG a statutory right to intervene under Rule 24(a)(1), intervention is sought under Rule 24(a)(2).  The NYAG bears the burden of satisfying four requirements to qualify for intervention under Rule 24(a)(2): "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interest."  Deutsche Bank Nat'l Trust Co. v. FDIC, 717 F.3d 189, 192 (D.C. Cir. 2013) (quotations omitted); Wisconsin Educ. Ass'n Council v. Walker, 705 F.3d 640, 658 (7th Cir. 2013).  The requirements are not weighing factors; intervention "*will be denied unless all four requirements are met*."  United States v. Pitney Bowes, Inc., 25 F.3d 66, 70

(2d Cir. 1994) (emphasis added); United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978).  "[C]ourts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." Kamdem-Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (quotation omitted).

"[I]n addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." Fund for Animals, Inc. v. Norton, 332 F.3d 728, 723-33 (D.C. Cir. 2003); City of Cleveland v. NRC, 17 F.3d 1515, 1517 (D.C. Cir. 1994) ("[B]ecause a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, [it] must satisfy the standing requirements imposed on those parties.").  And particularly significant here, "[w]hen improper motive in seeking intervention appears, the trial court should be wary to grant the request." Edmondson v State of Neb. ex rel. Meyer, 383 F.2d 123, 128 (8th Cir. 1967).

### A.    The NYAG has not met the Rule 24(a) requirements.

#### 1.    The NYAG has asserted no protectable interest.

The NYAG must demonstrate a direct, substantial, legally protectable interest in "the property or transaction that is the subject of the action." Diaz v. Southern Drilling Corporation, 427 F.2d 1118, 1124 (5th Cir. 1970); New York News, Inc. v. Kheel, 972 F.2d 482, 486 (2d Cir. 1992); Donaldson v. United States, 400 U.S. 517, 532 (1971) ("What is obviously meant [by Rule 24(a)(2)] is a significantly protectable interest.").  The "interest must be unique to the proposed intervenor."  Wisconsin Educ. Ass'n Council, 705 F.3d at 658.  Interests of a general and indefinite character are insufficient.  Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995); Hobson v Hansen, 44 F.R.D. 18, 25 (D.D.C. 1968) ("petitioners have an obligation to set forth their interest with clarity . . . .").  And "[a]n interest

that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) (citation omitted). What this means is that a proposed intervenor, here the State, must have an actual stake in the proceeding, as opposed to a mere concern over the decision's precedential import.

The NYAG has not met the burden of demonstrating a ripe, direct, and significant legally protected interest in this litigation's subject matter. The NYAG purports to intervene "because of the Defendants' obstruction against *development of The Greens*, and policy or practice of *preventing Hasidic Jewish families from purchasing and occupying those homes [at The Greens]*, all in violation of the FHA." (NYAG Motion to Intervene at p. 2, Point (I)(B) (emphasis added); NYAG's Proposed Compl. at ¶ 15 (emphasis added).) The NYAG says that enforcing the FHA is "core to the NYAG's mission and clearly constitutes a strong interest in this litigation." (Id.) The NYAG's interest is thus based on the allegations that (1) Defendants obstructed development of The Greens, and (2) Defendants have prevented Hasidic Jewish families from purchasing and occupying prospective, undeveloped homes at The Greens. But the NYAG's interest is not supported by the allegations asserted. Nor is it ripe.

First, the NYAG's actual interest was made evident when the NYAG told the *New York Times* that this "motion is a prelude to Ms. James's office filing a separate lawsuit against the town and Orange County *if officials do not settle with the developer and allow the project to proceed . . . .*" (Def. Ex. C (emphasis added).) Vindication of that interest belongs to the Plaintiff, not the NYAG. Rule 24(a) requires that the asserted interest "must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit." Vazman v. Fidelity Int'l Bank, 418 F.Supp. 1084, 1086 (S.D.N.Y. 1976). Attaining development approvals

11

for a private developer certainly is not an interest belonging to the People of New York State.

Second, the NYAG's bare, conclusory allegations that the Defendants prevented Hasidic Jewish families from purchasing and living at The Greens cannot support any alleged interest of the NYAG.  Those allegations are too indirect, remote, and speculative.  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."  Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) (citation omitted); Stewart v. Rubin, 948 F.Supp. 1077, 1105-06 (D.D.C. 1996) (holding that speculation about possible future injury from settlement implementing race-conscious remedies was insufficient to give putative intervenors standing to intervene), aff'd, 124 F.3d 1309, 1997 WL 369455 (D.C. Cir. 1997).  Simply put, there are no homes presently available at The Greens.  And any ultimately built development cannot exclusively serve Hasidic Jewish families; it must be open and integrated.  To be sure, residency at The Greens must be available to persons of all races, sexes, ethnicities, and religions.  The NYAG implies that because Hasidic Jewish families may encompass a subset of future residents at the Plaintiff's private housing development, Defendants have violated the FHA by denying building permits for the development.  This is not a direct or ripe basis to support the NYAG's interest in this action.

For the NYAG's failure to allege factual details supporting any direct or ripe interest belonging to the People, intervention should be denied.  Floyd v. City of New York, 302 F.R.D. 69, 101 (S.D.N.Y. 2014) (holding that failure to meet burden of propounding non-conclusory allegations supporting interest results in denial of motion to intervene under Rule 24(a)(2)); Walker v. Jones, 82 Civ. 2723, 1988 WL 73866, at *2 (D.D.C. July 1, 1988) ("To justify intervention as a matter of right, the movant's interest must be direct rather than contingent and

based on an independent right which belongs to the intervenor rather than a right that belongs to an existing party to the action.")  The NYAG's motion should be denied.

### 2.  The NYAG's interest, if any, will not be impaired by not participating in this action.

Even if the NYAG established a cognizable interest in "the property or transaction that is the subject of the action[,]" no "impairment of that interest" has been shown.  Smoke v. Norton, 252 F.3d 468, 470 (D.C. Cir. 2001).  The NYAG lacks a "significantly protectable interest in the litigation that will be impaired by the [court's] disposition of the action" in the NYAG's absence.  H.L. Hayden Co. of New York, Inc. v Siemens Med. Sys., Inc., 797 F.2d 85, 88 (2d Cir. 1986) (citation and internal quotations omitted).  The NYAG fails to show how this action will impair, impede, curtail, or even slightly impact an interest in ensuring compliance with the FHA.

The NYAG's says that "[a]ny resolution of the instant case would significantly affect the NYAG's ability to seek broad and systemic remedies to cure the effects of the Defendants' discriminatory conduct, and the well-documented tensions between the County and members of the Hasidic community in other towns."  (NYAG's Motion to Intervene at p. 3.)  But the NYAG fails to explain how that will happen.  "[C]onclusory allegations . . . do not entitle [a movant] to intervention as of right under Rule 24."  Flynn v Hubbard, 782 F.2d 1084, 1093 (1st Cir. 1986) (Coffin, J. concurring).

Also relevant is that Rule 24(a)(2) is the "counterpart" to Rule 19(a)(1)(B), which concerns mandatory joinder, and shares nearly identical language.  The drafters explained: "an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)[(1)(B)]".[9]  Advisory Committee's Notes to the 1966 amendment, 39 F.R.D. 69,

---

[9] When Rule 24 was amended in 1996, Rule 19 was styled differently, but its text is substantively the same.

111 (1966).  The "interest" required under Rule 24(a)(2) is thus the same as required by Rule 19.  See id.; United Keetoowah Band of Cherokee Indians of Okla. v United States, 480 F.3d 1318, 1324 (Fed Cir. 2007) (holding that the "interest" requirement under RCFC 24(a) and RCFC 19(a)(2) apply similarly).  And under Rule 19, the person's "interest" in the action is so great that the Court "must order that the person be made a party", even "involuntarily", and the case may be dismissed in the person's absence.  FRCP 19(a)(2), (b).  The NYAG's interest is not close to that of a required party under Rule 19.

In any event, the NYAG's Proposed Complaint asserts two claims against the Defendants under Sections 3604(a) and 3617 of the FHA.  The NYAG raises the same claims and relies on the same facts as Plaintiff, but NYAG purports that its general interests concerning FHA compliance are not sufficiently represented by Plaintiff because the NYAG brings "the additional claim of discrimination on the basis of *familial status* in violation of the FHA" and because the NYAG seeks "broad injunctive and declaratory relief that would address the Town and County's ongoing, systemic discrimination based on religion and familial status."  (NYAG's Motion to Intervene at p. 3.)  These assertions are meritless.

First, "the FHA defines familial status as '(1) one or more minors (2) 'domiciled with' (3) a parent or legal custodian or the designee of a parent or custodian.'"  Westhab, Inc. v. City of New Rochelle, 03 Civ. 8377(CM), 2004 WL 1171400, at *14 (S.D.N.Y. May 3, 2004) (citation omitted); See 42 U.S.C. § 3602(k).  The NYAG, however, does not allege that Defendants discriminated against any children under the age of 18 or that Defendants discriminated against anyone because they had minor children.  No facts relating to a minor are alleged.  Rather, the NYAG alleges the same facts as Plaintiff.

Second, NYAG's supposedly different "broad injunctive and declaratory relief" requests a declaration that Defendants violated the FHA and an injunction enjoining Defendants from future non-compliance with the FHA.[10]  But Plaintiff also seeks injunctive and declaratory relief, in addition to "such other, further and different relief as to the Court may seem just and proper" under the FHA.  The FHA "gives the district court the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair Housing Act."  Mhany Mgt. Inc. v. Inc. Vill. of Garden City, 4 F.Supp.3d 549, 555 (E.D.N.Y. 2014) (citing Park View Heights Corp. v. City of Black Jack, 605 F.2d 1033, 1036 (8th Cir. 1979)); 42 U.S.C. § 3613(c)(1).  The Court fashions remedies and relief as the Court sees fit.  The NYAG does not identify how this action would not redress any asserted interest.

Finally, and more generally, the NYAG has not explain how resolution of this case would affect the NYAG's enforcement interests against the Defendants.  Indeed, according to the NYAG, this "motion is a prelude to [the NYAG] filing a separate lawsuit against the town and Orange County if officials do not settle with the developer and allow the project to proceed." (Def. Ex. C).  Thus, by the NYAG's own words, this case will not impact the NYAG's enforcement capabilities, and thus, does not affect any supposed interest.[11]  See H.L. Hayden Co., 797 F.2d at 88 ("[T]he modest impairment of the State's enforcement efforts that results from the district court's decision is not sufficient to justify an automatic right of intervention, since New York's ability to enforce its anti-trust laws has not been destroyed or even

---

[10] Importantly, "an injunction must be more specific than a simple command that the defendant obey the law."  Mhany Mgt. Inc., 4 F.Supp.3d at 555 (quoting Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 51 (2d Cir.1996)).  FRCP 65(d) requires that injunctions be "specific in terms."

[11]  Defendants dispute whether the NYAG has standing to pursue claims under the FHA.  See Point IV, infra.  Regardless, the end result requiring denial of this motion does not change – if the NYAG lacks standing under the FHA, its motion must be denied under Article III; if the NYAG has standing under the FHA, this case will not impair her ability to enforce those rights.

significantly curtailed."); <u>see also</u> <u>S.E.C. v Petro-Suisse Ltd.</u>, 12 Civ. 6221 AJN, 2013 WL 5348595, at *3 (S.D.N.Y. Sept. 25, 2013) ("[E]ven if the [proposed intervenors] did have a cognizable interest in this case, their motion would fail under the third prong of the Rule 24(a)(2) standard, because their interest would not be impaired by the entry of the Consent Judgment. The Consent Judgment does not preclude the [proposed intervenors] from bringing private actions against the Defendants . . . .") (citation omitted).

In short, this case's disposition would not "significantly affect the NYAG's ability to seek broad and systemic remedies."  Accordingly, the NYAG's motion should be denied.

**3.  <u>The NYAG has made no showing that Plaintiff will not vigorously pursue its shared claims.</u>**

Even assuming, *arguendo*, that the NYAG satisfied the requirements of "interest" and "impairment", the NYAG failed to meet the fourth requirement that Plaintiff will not adequately represent the NYAG's interests.  The NYAG supplies no legitimate explanation for how Plaintiff will not represent their identical interests.  "Rule 24(a)(2) is designed to allow participation in a litigation by nonparties whose interests may be impaired.  To avoid judicial inefficiency, however, the rule contains an adequacy of representation requirement, which precludes intervention when a nonparty's interests are already adequately represented by an existing party." <u>Flynn v Hubbard</u>, 782 F.2d at 1090 (Coffin, J. concurring).

Here, the NYAG asserts the same claims and facts as Plaintiff.  And the NYAG has expressly acknowledged sharing the same objective as Plaintiff.  This concession alone requires the denial of the NYAG's motion.  Where there is an identity of interest, the proposed intervenor must rebut the presumption of adequate representation by the existing party.  <u>See, e.g.</u>, <u>Butler, Fitzgerald & Potter v. Sequa Corp.</u>, 250 F.3d 171, 179-80 (2d Cir. 2001) (courts apply a heightened burden "where the putative intervenor and a named party have the same ultimate

objective."); <u>Shea v. Angulo</u>, 19 F.3d 343, 347 (7th Cir.1994) ("Where a prospective intervenor has the same goal as the party to a suit, there is a presumption that the representation in the suit is adequate."); <u>Cobell v. Jewell</u>, No. 96-cv-01285 (TFH), 2016 WL 10704595, at *2 & n. 1. (D.D.C. Mar. 30, 2016) ("[A] presumption of adequate representation exists if both the intervenor and existing party have the same ultimate objective[.]") (citation omitted).   The NYAG has not done so here.

Moreover, "[a] putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party. So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." <u>Nat. Resources Defense Council, Inc. v. New York State Dept. of Envtl. Conservation</u>, 834 F.2d 60, 61-62 (2d Cir. 1987).   There is no question that this Plaintiff, who commenced this action with a 101-page, 568-paragraph Complaint (with an accompanying 253 pages of exhibits), will vigorously litigate its claims.

In short, the NYAG's Motion to Intervene, Proposed Complaint, and public statements, make self-evident that intervention is sought to force Defendants to accede to Plaintiff's demands regardless of their lack of merit.   The NYAG has not explained how it could advance Plaintiff's interests more adequately than the Plaintiff itself, a well-funded, for-profit private land use developer, with highly capable, experienced counsel; the answer is simple: because it cannot.

## II.     The Court Should Deny The NYAG's Request For Permissive Intervention Under Rule 24(b)(1)(B).

Absent intervention as of right, the NYAG seeks intervention by permission under Rule 24(b)(1)(B).   This request should be denied, too.   For permissive intervention, the movant must

show (1) an independent ground for subject matter jurisdiction; (2) a claim or defense that has a question of law or fact in common with the main action; and (3) the intervention must not unduly delay or prejudice the adjudication of the rights of the original parties.  EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998); Garcia v. Vilsack, 304 F.R.D. 77, 81 (D.D.C. 2014) (quoting FRCP 24(b)(3)).

Courts also consider substantially the same factors under Rule 24(b) permissive intervention as with intervention as of right under Rule 24(a).  R Best Produce, Inc. v Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006) (citation omitted).  Among those considerations are "the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues . . . and . . . the just and equitable adjudication of the legal questions presented."  H.L. Hayden Co., 797 F.2d 85 at 89.  Denial is appropriate where the movant seeks to inject "collateral" or "extraneous" issues into the action.  See United States v. City of New York, 198 F.3d 360, 367 (2d Cir 1999).  Moreover, because permissive intervention is "inherently discretionary," a court may deny a motion for permissive intervention even where the proposed intervenor has met all requirements.  Nat'l Children's Ctr., Inc., 146 F.3d at 1046.

In addition to those reasons addressed above regarding intervention "as of right",[12] the NYAG's intervention will also not "significantly contribute to . . . the just and equitable adjudication of the legal question presented".  Sierra Club v. McCarthy, 308 F.R.D. 9, 12 (D.D.C.

---

[12] Moreover, the NYAG's failure to establish standing is fatal to its request for permissive intervention.  Deutsche Bank Nat'l Trust Co., 717 F.3d at 193; see also, e.g., Keepseagle v. Vilsack, 307 F.R.D. 233, 245-46 (D.D.C. 2014) (explaining that movants' "lack of standing renders them ineligible for permissive interventions").  Without standing, the State cannot establish the requisite "independent ground for subject matter jurisdiction." Nat'l Children's Ctr., Inc., 146 F.3d at 1046.  Standing is addressed below.

2015) (quoting Ctr. For Biological Diversity v. EPA, 274 F.R.D. 305, 313 (D.D.C. 2011)).  In

British Airways Bd. v Port Auth. of New York and New Jersey, 71 F.R.D. 583, 585 (S.D.N.Y.

1976), aff'd, 556 F.2d 554 (2d Cir. 1976) (citation omitted), the Court explained:

> It is easy enough to see what are the arguments against intervention where, as
> here, the intervenor merely underlines issues of law already raised by the primary
> parties. Additional parties always take additional time. Even if they have no
> witnesses of their own, they are the source of additional questions, objections,
> briefs, arguments, motions and the like which tend to make the proceeding a
> Donnybrook Fair. Where he presents no new questions, a third party can
> contribute usually most effectively and always most expeditiously by a brief
> amicus curiae and not by intervention.

Here, the NYAG's intervention would result in a doubling down on the arguments that

the sophisticated and well-funded Plaintiff is already making and vigorously pursuing through

highly capable, experienced counsel.  Adding the NYAG will unnecessarily complicate and delay

all stages of this case: via pre-answer motions, as well as, if necessary, discovery, dispositive

motions, and trial.  Indeed, the NYAG has already sought to interject itself into this proceeding to

force the Defendants to accede to Plaintiff's demands.  Finally, since this Court could accept the

NYAG's arguments as an amicus submission on the issues, the Court should properly exercise

discretion to deny permissive intervention under these circumstances.

## III.  The NYAG Lacks Article III Standing To Intervene, Either As Of Right Or Permissively.

The NYAG cannot intervene because the NYAG failed to allege a concrete harm to the

State's interests.  "To establish standing under Article III, a prospective intervenor – like any

party – must show: (1) injury-in-fact, (2) causation, and (3) redressability."  Fund for Animals,

322 F.3d at 732-33 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); Sierra Club v

E.P.A., 292 F.3d 895, 898 (D.C. Cir. 2002)); Town of Chester, N.Y. v. Laroe Estates, Inc., 137

S.Ct. 1645, 1651 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.").

"To establish injury in fact, a plaintiff must show that he suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1548 (2016) (citation omitted).  When considering a future injury, the Supreme Court "has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 (2013) (citations and quotations omitted).

A plaintiff bears the burden of establishing standing for each claim asserted.  Starr Int'l Co. v. United States, 856 F.3d 953, 964 (Fed. Cir. 2017).  It must establish that it is "assert[ing its] own legal rights and interests, and cannot rest [its] claim[s] to relief on the legal rights or interests of third parties." Kowalski v. Tesmer, 543 U.S. 125, 129 (2004); see also Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976).  The label assigned to a claim is irrelevant; it is the substance of the allegations that control.  Allen v. Wright, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claim asserted."), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).  Factual allegations establishing a causal relationship between the defendant's actions and the plaintiff's injury are necessary.  Warth v Seldin, 422 U.S. 490, 508 (1975).

Lacking any statutory standing under the FHA, the NYAG claims to invoke *parens patriae* authority on behalf of the People of New York State "for violations of federal law" and "further . . . because Defendants' conduct of attempting to prevent Hasidic families from moving

20

into The Greens and their discriminatory conduct against this community harms a large number of New York residents." (NYAG's Proposed Compl. at ¶¶ 14, 17.)  Neither alleged injury is concrete enough to confer the NYAG *parens patriae* standing.  The NYAG "has not satisfied its burden of showing "[a] quasi-sovereign interest" that is "sufficiently concrete to create an actual controversy between the State and the defendant."  Natl. Fair Hous. All. v. Carson, 330 F.Supp. 3d 14, 65-66 (D.D.C. 2018) (quoting Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S. 592, 601 (1982)).  Similarly stated, there is no harm to the State's interest that is fairly traceable to the Town.

*Parens patriae* is "the common-law principle that a sovereign, as 'parent of the country,' may step in on behalf of its citizens to prevent 'injury to those who cannot protect themselves.'"  Connecticut v. Physicians Health Services Of Connecticut, Inc., 287 F.3d 110, 119 (2d Cir. 2002) (quoting Alfred L. Snapp & Son, Inc., 458 U.S. at 601).  Consistent with this and Article III standing requirements, "*parens patriae* standing . . . must involve more than a state merely stepping in to represent the interests of particular citizens."  People v. Peter & John's Pump House, Inc., 914 F.Supp 809, 811 (N.D.N.Y. 1996) (citations omitted).  Rather, a state must assert an injury to a "quasi-sovereign interest," such as the health and well-being of its citizens, that is "sufficiently concrete" to "create an actual controversy between the State and the defendant."  Id. at 811 (citations omitted).

In Snapp, the Supreme Court detailed three requirements for *parens patriae* standing: the State must (1) "articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party"; (2) "express a quasi-sovereign interest"; and (3) have "alleged injury to a sufficiently substantial segment of its population."  Alfred L. Snapp & Son, Inc., 458 U.S. at 607.  The Second Circuit added an additional requirement: a "finding that

individuals could not obtain complete relief through a private suit." People by Vacco v. Mid Hudson Med. Group, P.C., 877 F.Supp. 143, 148 (S.D.N.Y. 1995) (quotations omitted); Physicians Health Servs. of Conn., Inc., 287 F.3d at 119–20 (prerequisite for *parens patriae* standing includes whether there were "adequate alternative means of civil enforcement by which individual plaintiffs may obtain complete relief"); Peter & John's Pump House, Inc., 914 F.Supp. at 811 (footnote and citations omitted).

Here, while the Town does not dispute that the State has an interest in protecting its residents from discrimination, see, e.g., Alfred L. Snapp & Son, Inc., 458 U.S. at 609; Peter & John's Pump House, Inc., 914 F.Supp. at 811 (noting the Second Circuit has expressly acknowledged that New York "has a quasi-sovereign interest in preventing racial discrimination [against] its citizens"), the NYAG also does not show how complete relief from the injury complained of could not be obtained by individuals aggrieved under the FHA, as the Second Circuit requires. See, e.g., Mid Hudson Med. Group, P.C., 877 F.Supp. at 148. To be sure, the Plaintiff, who brought this action, has the means of civil enforcement to obtain complete relief, as well as the resources and stamina necessary for prolonged litigation, and is well-prepared to carry this litigation to a conclusion. Likewise, any other future individual who believes that the Defendants or Plaintiff, who owns this property, have violated their FHA rights can sue.

Moreover, it should be self-evident that the State's interest does not extend to the representation of private individuals or corporations in matters involving the enforcement of private rights. Alfred L. Snapp & Son, Inc., 458 US at 600-01. "[I]f nothing more than [representation of private interests] is involved . . .then [a state] will not have standing under the *parens patriae* doctrine." Id. at 600. *Parens patriae* standing does not exist where the state is merely a nominal party. People v. Utica City School District, 177 F.Supp.3d 739 (N.D.N.Y.

2016).  Accordingly, the NYAG's interest cannot be based upon alleged discrimination against Plaintiff.

In a similar vein, the NYAG has not allege an "injury in fact" to a sufficiently substantial segment of the population.  While "there is no numerical talisman" that must be pleaded, Peter & John's Pump House, Inc., 914 F.Supp. at 812; see also Support Ministries for Pers. With AIDS, Inc. v. Village of Waterford, 799 F.Supp. 272, 277 (N.D.N.Y. 1992) (finding the affected segment of population "not insubstantial" when it was an "ever-increasing" segment), the only present party alleged to be adversely affected here is the Plaintiff, a private land use developer, who has indicated that he intends to sell or rent to Hasidic and non-Hasidic equally, as the law compels.

Nor can the NYAG obtain standing by asserting an interest that is based upon harm that is contingent, conjectural, and hypothetical, such as the alleged inability of Hasidic Jewish families to live at the Plaintiff's development, once built.  There are too many steps to be completed before units are sold or leased.  The NYAG's alleged injury based upon those individuals that *may* one day purchase and occupy homes should the development's homes be safely built, appropriately marketed, and purchased, is not sufficiently concrete to confer standing.  See Clapper, 568 U.S. at 414 (2013); see also Warth, 422 US at 508.  The NYAG has simply not satisfied its burden of showing a concrete, actual, and redressable controversy between the State and the Town.  Id.

## IV.    The NYAG Cannot Bring Claims Under The FHA Because It Does Not Provide For *Parens Patriae* Standing.

The NYAG lacks standing to bring an action to enforce the FHA.  The FHA provides for enforcement by the Secretary of HUD, U.S. Attorney General, and private persons.  42 U.S.C. §§ 3612, 3613, 3614.  With respect to private persons, the FHA uniquely and explicitly defines

"person" to include a list of individuals and entities; it does not state any status that may fairly viewed to include state attorneys general.  42 U.S.C. § 3602(d).[13]

In the context of other statutory schemes, Congress has expressly provided for enforcement of a federal statute by the states attorneys general via their *parens patriae* authority.  See, e.g., Antitrust Improvements Act, 15 U.S.C. § 15c(a) ("Parens Patriae; monetary relief . . .") ("Any attorney general of a State may bring a civil action in the name of such State, as *parens patriae* on behalf of natural persons residing in such State . . . ."); Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(c)(3)(A) ("Actions by state attorneys general.") ("Attorney General may commence a civil action in the name of [a] State, as *parens patriae* on behalf of natural persons residing in such State"); Fair Credit Reporting Act, 15 U.S.C. § 1681s(c) ("State action for violations") ("chief law enforcement officer of a state, or another official or agency designated by a state"); Truth in Lending Act, 15 U.S.C. § 1640(e) ("State attorney general enforcement"); Commodity Exchange Act, 7 U.S.C. § 13a-2(1) ("attorney general of any State"); Professional Boxing Safety Act, 15 U.S.C. § 6309(c) ("Actions by States") ("the State, as parens patriae, may bring a civil action on behalf of its residents in an appropriate district court of the United States").

But, under the FHA, Congress did not grant the NYAG explicit *parens patriae* authority to bring an action.  See Physicians Health Servs. of Conn., Inc., 287 F.3d at 120 ("When determining whether a state has *parens patriae* standing under a federal statute, we ask if Congress intended to allow for such standing."); Ctr. for Biological Diversity v. U.S. Dep't of the Interior, 563 F.3d 466, 477 (D.C. Cir. 2009) (explaining that "only the United States, and not

---

[13] While the FHA assigns explicit roles for the U.S. Attorney General (42 U.S.C. § 3614), HUD (id. at § 3610), and HUD-certified state and local agencies (id. at § 3610(f)), the states attorneys general are not mentioned.

the states, may represent its citizens and ensure their protection under federal law in federal matters.") (citation omitted).

## **CONCLUSION**

For the foregoing reasons, the Court should deny the NYAG's motion to intervene.

Dated: South Nyack, New York
       December 19, 2019

                              Respectfully submitted,

                              FEERICK NUGENT MACCARTNEY PLLC
                              *Attorneys for the Town Defendants*
                              96 South Broadway
                              South Nyack, New York  10960
                              (845) 353-2000

                              By:  /s/ Mary E. Brady-Marzolla
                                   Mary E. Brady-Marzolla, Esq.
                                   Patrick A. Knowles, Esq.