# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

GREENS AT CHESTER LLC,

     Plaintiff,

  v.

TOWN OF CHESTER, et al.,

     Defendants.

19 Civ. 6770

# MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO THE NYAG'S MOTION TO INTERVENE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

A. The NYAG Has Article III Standing and a Legally Protected Interest Here ............................ 2

B. The NYAG's Interest May Be Impaired Absent Intervention ................................................... 6

C. Plaintiff Does Not Adequately Represent the NYAG's Interest ............................................... 7

D. The NYAG Sufficiently and Properly Alleges Defendants Violated the FHA ......................... 8

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chevron Corp. v. Donziger*,
No. 11-cv-691, 2011 WL 2150450 (S.D.N.Y. May 31, 2011) ................................7

*Citizens for an Orderly Energy Policy, Inc. v. Suffolk Cty.*,
101 F.R.D. 497 (E.D.N.Y. 1984) ...............................................................................6

*Clearing House Ass'n, LLC v. Cuomo*,
510 F.3d 105 (2007), *affirmed in part, reversed in part on other grounds by*
*Cuomo v. Clearing House Ass'n LLC*, 557 U.S. 519 (2009) ....................................3

*Congregation Rabbinical Coll. of Tarkitov, Inc. v. Vill. of Pomona*,
915 F. Supp. 2d 574 (S.D.N.Y. 2013) .......................................................................5

*Crossroads Grassroots Policy Strategies v. Fed. Elec. Com'n*,
788 F.3d 312 (D.C. Cir. 2015) ..................................................................................2

*E.E.O.C. v. Fed. Express Corp.*,
268 F. Supp. 2d 192 (E.D.N.Y. 2003) .......................................................................4

*Francis v. Kings Park Manor, Inc.*,
944 F.3d 370 (2d Cir. 2019) ....................................................................................10

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ..................................................................................7

*Home Ins. Co. v. Liberty Mut. Ins. Co.*,
No. 87-cv-675, 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990)....................................7

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000).......................................................................................1

*Jenkins v. Eaton*,
No. 08-cv-713, 2009 WL 811592 (E.D.N.Y. Mar. 27, 2009).........................5, 6, 10

*Lax v. 29 Woodmere Blvd. Owners, Inc.*,
812 F. Supp. 2d 228 (E.D.N.Y. 2011) .......................................................................9

*LeBlanc-Sternberg v. Fletcher*,
781 F. Supp. 261 (S.D.N.Y. 1991)..............................................................................3

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................................................2

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
471 F.3d 377 (2d Cir. 2006)............................................................................1

*Mill St. Partners, LLC v. City of Newburgh*,
No. 18-cv-5465, 2019 WL 4274212 (S.D.N.Y. Sept. 10, 2019) .............................8

*New York ex rel. Vacco v. Mid Hudson Med. Grp., P.C.*,
877 F. Supp. 143 (S.D.N.Y. 1995).....................................................................5

*New York v. Utica City Sch. Dist.*,
177 F. Supp. 3d 739 (N.D.N.Y. 2016) ........................................................2, 4, 7

*People by Abrams v. Merlino*,
694 F. Supp. 1101 (S.D.N.Y. 1988)...................................................................3

*Purdue Pharma L.P. v. Kentucky*,
704 F.3d 208,215 (2d Cir. 2013)........................................................................3

*Rhode Island Com'n for Human Rights v. Graul*,
120 F. Supp. 3d 110 (D. R.I. 2015)....................................................................9

*Support Ministries for Persons With AIDS, Inc. v. Vill. of Waterford*,
799 F. Supp. 272 (N.D.N.Y. 1992) ..................................................................2, 3

*Town of Chester v. Laroe Estates, Inc.*,
137 S.Ct. 1645 (2017).....................................................................................2

*U.S. v. AT&T*,
642 F.2d 1285 (D.C. Cir. 1980) .........................................................................7

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
922 F.2d 92 (2d Cir. 1990)............................................................................2, 7

*Westhab, Inc. v. City of New Rochelle*,
No. 03-cv-8377, 2004 WL 1171400 (S.D.N.Y. May 3, 2004) ................................9

**FEDERAL STATUTES**

42 U.S.C.
§ 3601, et seq. ..............................................................................................1
§ 3604..........................................................................................................8
§ 3613(a)(1)(A) ............................................................................................2
§ 3617.........................................................................................................10

**RULES**

Federal Rule of Civil Procedure 24(a)(2) ..............................................................1, 2

**MISCELLANEOUS AUTHORITIES**

*Keep the Hasidic Out": A Small-Town meeting Housing Showdown*, N.Y. Times, Aug. 14, 2019 ............................................................................................................3

# INTRODUCTION

The Office of the New York State Attorney General (the "NYAG") seeks to intervene to protect its quasi-sovereign interests that have been harmed because of the concerted efforts by the Town of Chester (the "Town") and County of Orange (the "County") (collectively, "Defendants") to prevent Hasidic Jewish families from moving into the Town by blocking the construction of The Greens at Chester ("The Greens"). Contrary to Defendants' claims, the NYAG has a strong interest in protecting residents from unlawful discrimination, and it seeks relief that cannot be achieved through Plaintiff's private suit. The Court should grant this motion.

# ARGUMENT

Intervention as of right under Federal Rule of Civil Procedure 24(a)(2) is appropriate here because the NYAG (1) brings a timely motion; (2) "asserts an interest relating to the property or transaction that is the subject of the action;" (3) "is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest;" and (4) has an interest that "is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).[1]

Neither the Town nor the County assert that the NYAG's motion is untimely. Instead, Defendants erroneously claim that the NYAG has no legally protected interest here or standing to bring claims under the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA"), and even if it did, such an interest would be adequately protected by Plaintiff. Defendants also argue that intervention is futile because the NYAG fails to state claims under the FHA. All of these

---

[1] Even if this Court were to find that the NYAG cannot intervene as of right, permissive intervention is appropriate. "A district court may grant a motion for permissive intervention if the application is timely and if the applicant's claim or defense and the main action have a question of law or fact in common." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (internal quotation marks omitted). For the reasons explained *infra*, each of these considerations support intervention.

arguments are meritless.

## A. The NYAG Has Article III Standing and a Legally Protected Interest Here.

A prospective intervenor must have Article III standing to "seek[ ] additional relief beyond that which the [P]laintiff requests." *Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017). The NYAG has standing to assert the claims it brings in this action because Defendants' actions harm New York's quasi-sovereign interests to protect residents from unlawful discrimination; these injuries are directly traceable to Defendants' actions; and an order enjoining Defendants' unlawful activity and requiring affirmative relief would remedy New York's interests. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Furthermore, the NYAG's interests are "direct, substantial, and legally protectable" and therefore cognizable under Rule 24(a)(2). *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). Defendants' arguments to the contrary fail.[2]

As a threshold matter, New York has *parens patriae* standing to bring FHA claims. It is well recognized that a state may "'enforce federal statutes that . . . do not specifically provide standing for the state attorney generals' in cases where the statutes at issue include[ ] broadly phrased enforcement provisions." *New York v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 747 (N.D.N.Y. 2016) (quoting *New York ex rel. Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 149 (S.D.N.Y. 1995)). This includes claims under the FHA, which permits any "aggrieved person" to "commence a civil action . . . after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). *See Support Ministries for Persons With AIDS, Inc. v. Vill. of Waterford*, 799 F. Supp. 272, 277 (N.D.N.Y. 1992) (holding that the

---

[2] Defendants' nearly identical arguments challenging both the NYAG's Article III standing and its interest in the action pursuant to the requirements of Rule 24(a)(2) both fail for substantially the same reasons, as described below. *See Crossroads Grassroots Policy Strategies v. Fed. Elec. Com'n*, 788 F.3d 312, 320 (D.C. Cir. 2015) (equating standing and legally protected interest).

NYAG had standing to maintain a *parens patriae* action for violations of the FHA); *People by Abrams v. Merlino*, 694 F. Supp. 1101, 1105 (S.D.N.Y. 1988) (upholding NYAG's FHA claims on behalf of several victims); *see also Clearing House Ass'n, LLC v. Cuomo*, 510 F.3d 105, 125 (2007), *affirmed in part, reversed in part on other grounds by Cuomo v. Clearing House Ass'n LLC*, 557 U.S. 519 (2009) (noting that while "th[e] Court has never . . . address[ed] the underlying question of whether a state attorney general has standing to sue as a *parens patriae* under the FHA . . . we have generally interpreted [ ] broad grants of standing as reflecting Congressional intent to permit states to enforce the rights protected by federal statutes through *parens patriae* actions" (internal quotation marks omitted)).[3]

The NYAG meets all the elements of *parens patriae* here. It has (1) a quasi-sovereign interest in the public's well-being; (2) that is distinct from that of a particular private party; and (3) an "injury to a sufficiently substantial segment of the population." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208,215 (2d Cir. 2013) (internal quotation marks omitted). The Town rightly concedes the first element, and its challenges to the second and third requirements fail. *See* Town Mem. of Law in Opp'n to NYAG's Mot., Dkt No. 45 ("Town Br.") at 22.

The NYAG's action is distinct and far broader than vindicating Plaintiff's private interests. As alleged in the Proposed Complaint, Defendants have engaged in a concerted, systematic scheme to prevent Hasidic Jewish families from moving into the Town in violation of the FHA.[4] NYAG Letter to Court (Dec. 5, 2019), Ex. A, Dkt. No. 36-1 ("Proposed Compl.")

---

[3] *Cf. LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261, 270 (S.D.N.Y. 1991) ("[U]nder the [FHA] the distinction between 'third party' and 'first party' standing is of little significance." (internal citations omitted).

[4] For the same reason, the Town's argument that the NYAG has not alleged injury to a significant segment of the population fails. Town Br. 23. The County and surrounding communities have witnessed a significant growth in Hasidic Jewish families in recent years, *see* Sharon Otterman, "*Keep the Hasidic Out": A Small-Town meeting Housing Showdown*, N.Y. Times, Aug. 14, 2019, and the number of anti-Semitic incidents recorded in the State in 2017 rose by 90 percent from the previous year, Proposed Compl. ¶ 32. Accordingly, these discriminatory practices injure a significant segment of the population. *See Support Ministries*, 799 F. Supp. at 277 (finding the population at issue "not insubstantial" when it was an "ever-increasing" segment).

¶¶ 1-2. This "tension between the County, Town[ ], and members of the Hasidic community is indicative of a broader state-wide concern regarding an uptick in instances of anti-Semitism throughout the [S]tate." *Id.* ¶ 32; *see also id.* ¶ 33 ("[The] pattern of discriminatory conduct and anti-Semitic sentiment has continued and is evident in the Defendants' treatment of the development of The Greens and its developers."). Such discriminatory conduct is squarely within the NYAG's quasi-sovereign interests, as it contravenes New York State's longstanding commitment to ensure equal access to housing for all residents irrespective of religious identity and familial status. *Id.* ¶ 1. *See Utica City Sch. Dist.*, 177 F. Supp. 3d at 747 (explaining that the NYAG has "broad authority . . . to prosecute legal actions in which the state has an interest," including the power to "bring discrimination cases on behalf of the People of New York" (internal quotation marks omitted)); *see also E.E.O.C. v. Fed. Express Corp.*, 268 F. Supp. 2d 192, 195-96 (E.D.N.Y. 2003) (same).

Moreover, the NYAG has a "unique status as the representative of the greater public good and [a] concomitant mandate to secure wide-ranging relief that will inure to the direct and indirect benefit of the broader community." *Utica City Sch. Dist.*, 177 F. Supp. 3d at 753-54. The NYAG seeks to vindicate its interests by seeking injunctive relief to redress harms to the People, including by requiring Defendants to take affirmative steps to change their policies, conduct training, and undergo monitoring to ensure that they comply with the FHA, eliminate ongoing discrimination and its effects, and prevent discriminatory conduct in the future. Proposed Compl. Prayer for Relief ¶ (d)(ii). Contrary to the Town's protests otherwise, Town Br. 22, such relief is distinct from Plaintiff's requests that the Court vacate its permit denials, direct Defendants to grant required approvals, award damages, and enter declaratory relief. *See* First Am. Compl., Dkt. No. 39 ("Am. Compl.") Prayer for Relief ¶¶ 1-9. Indeed, the very case on which the Town

relies, supports that such relief on behalf of all individuals that may be discriminated against is exactly the "complete" relief the NYAG is entitled and uniquely positioned to seek. *See Mid Hudson Med. Grp., P.C.*, 877 F. Supp. at 149.

The NYAG's demand for relief is ripe and not speculative, as Defendants argue. Town Br. 12-13, 23; County Mem. of Law in Opp'n to NYAG's Mot., Dkt No. 42 ("County Br.") at 12. The NYAG need not wait to bring this action until there are homes available at The Greens, or until members of the Hasidic community have attempted to move in. Instead, challenges to local laws adopted with a discriminatory purpose, like the challenges the NYAG asserts here, are ripe for review under the FHA. *See Congregation Rabbinical Coll. of Tarkitov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 610 (S.D.N.Y. 2013) (collecting cases); *see also* Proposed Compl. ¶¶ 43-56, 58-65, 93-100, Prayer for Relief ¶ b (alleging that the Town proposed and/or enacted various local laws to prevent the development of The Greens, or to otherwise discriminate based on religion and familial status).[5]

Finally, the NYAG has alleged injury traceable to the County. "The FHA's conferral of standing is extremely broad, . . . and has been construed to include standing to bring suit for injuries resulting from having aided or encouraged any other person in the exercise or enjoyment of . . . a right protected by the FHA." *Jenkins v. Eaton*, No. 08-cv-713, 2009 WL 811592 (E.D.N.Y. Mar. 27, 2009), at *7 (citations and internal quotation marks omitted). Here, the NYAG alleges that the County engaged in a systematic and concerted effort both separately and with the Town to obstruct Plaintiff from building housing on The Greens with discriminatory animus, including by effectively undermining Plaintiff's sewer and water permits, and

---

[5] The Town does not and cannot dispute that its denial of Plaintiff's building permits for The Greens is ripe for review. *See* Proposed Compl. ¶¶ 87-92*; Congregation*, 915 F. Supp. 2d at 607-610 (explaining that challenges under the FHA are ripe once a plaintiff has made at least one formal application to the relevant governmental entity).

attempting to re-zone The Greens for commercial purposes in violation of Sections 3604 and 3617 of the FHA. Proposed Compl. ¶¶ 77-86. Such allegations of interference are directly traced to the County and are sufficient to confer standing under the FHA. *See Jenkins*, 2009 WL 811592, at *7 (allegations of lodging complaints with authorities, denying parking passes, and citing property for violations were sufficient for standing under the FHA).

**B. The NYAG's Interest May Be Impaired Absent Intervention.**

Absent intervention, the NYAG's quasi-sovereign interest to ensure Defendants cease their discrimination based on religion and familial status, and to secure complete and comprehensive relief to address such conduct will be impaired. Defendants' arguments to the contrary fail.

First, as discussed above in Part A, the NYAG's demand for relief is far more expansive than Plaintiff's. Plaintiff is focused solely on relief with respect to The Greens and its development. This relief would fall far short of protecting and remedying the systemic violations of the FHA. As such, the NYAG seeks not only to ensure Defendants comply with the FHA, but also that they take affirmative steps in the form of training and monitoring (among others) to prevent future violations.

Second, the Town's arguments that the NYAG's interests will not be impaired absent intervention because the NYAG "raises the same claims and relies on the same facts as Plaintiffs," Town Br. 14, and may bring a separate enforcement action against Defendants, *id.* at 15-16, fail. Even assuming all of these contentions are true, such considerations favor intervention because of the principle of stare decisis. *See Citizens for an Orderly Energy Policy, Inc. v. Suffolk Cty.*, 101 F.R.D. 497, 501 (E.D.N.Y. 1984) (explaining that where a proposed intervenor may bring its own separate action to protect its interests, the principle of stare decisis

warranted intervention and collecting cases); *cf. Wash. Elec. Co-Op., Inc.*, 922 F.2d at 97 ("The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved."). Here, any resolution on the merits of Plaintiff's case with respect to whether and how Defendants discriminated against Plaintiff may impair or impede the NYAG's ability to bring a separate action alleging similar violations. No greater showing of impairment at this stage is required. *See Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87-cv-675, 1990 WL 188925, at *5 (S.D.N.Y. Nov. 20, 1990) (applicant "need not demonstrate that a substantial impairment of its interest *will* result" (emphasis added)).

### C. Plaintiff Does Not Adequately Represent the NYAG's Interest.

"[T]he putative intervenor has the burden of showing that its interests will not be represented adequately by the named parties." *Chevron Corp. v. Donziger*, No. 11-cv-691, 2011 WL 2150450, at *4 (S.D.N.Y. May 31, 2011). Such burden is "minimal," *id.*, and intervention "'ordinarily should be allowed . . . unless it is clear' that [an existing] party will provide adequate representation," *U.S. v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).[6]

Here, Plaintiff does not adequately represent the NYAG's interests. Plaintiff seeks to obtain necessary approvals and seeks damages for Defendants' conduct toward Plaintiff; whereas the NYAG seeks to vindicate the interests of the larger community that has been discriminated against as a result of Defendants' actions. The NYAG asserts unique sovereign interests in preventing discrimination and ensuring equal opportunity to housing for all New Yorkers that Plaintiff cannot represent. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (allowing intervention due to unique sovereign interests); *accord Utica City Sch.*

---

[6] Defendants are wrong that the NYAG must meet a heightened burden here, Town Br. 16-17, because the NYAG does not have the same ultimate objective as Plaintiff but, instead, seeks additional affirmative relief to ensure that Defendants comply with the FHA. In any event, under either standard, the NYAG meets its burden here.

*Dist.*, 177 F. Supp. 3d at 753-54 (the NYAG has "unique status as the representative of the greater public good and [a] concomitant mandate to secure wide-ranging relief that will inure to the direct and indirect benefit of the broader community").

### D. The NYAG Sufficiently and Properly Alleges Defendants Violated the FHA.

Defendants' arguments that intervention should be denied as futile because the NYAG fails to state claims for relief under the FHA (Sections 3604 and 3617), or that the NYAG is conflicted from asserting such claims, fall flat and do not defeat intervention.

First, the Proposed Complaint states a claim under Section 3604. This Section makes it unlawful to, among other things, "otherwise make unavailable or deny[ ] a dwelling to any person because of . . . religion [or] . . . familial status." 42 U.S.C. § 3604. To allege a disparate treatment claim under the FHA, a plaintiff must plead facts suggesting "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Mill St. Partners, LLC v. City of Newburgh*, No. 18-cv-5465, 2019 WL 4274212, at *5 (S.D.N.Y. Sept. 10, 2019) (quoting *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016)).[7] Here, the NYAG has sufficiently alleged a clear pattern of discriminatory statements by Town and County officials, followed by discriminatory actions taken in an effort to prevent Hasidic families from moving into the Town. *See* Proposed Compl. ¶¶ 43-100.

The NYAG is not required under Section 3604 to allege that it is a qualified buyer or that it will seek housing at The Greens, as the County maintains. *See* County Br. 11. Instead, it brings these claims under *parens patriae* authority to address Defendants' discrimination based on

---

[7] "Evidence that . . . animus played a significant factor can be demonstrated by the sequence of events, including . . . contemporaneous statements by members of the decision-making body.'" *Id*.

religion and familial status.[8] Similarly, the NYAG is not required to allege the existence of similarly situated entities. *See Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 239 (E.D.N.Y. 2011) (explaining that "if plaintiff is able to prove direct evidence of discrimination based upon [protected class], the failure to allege or prove the existence of a similarly situated [entity] would not be required").[9] Even if it were, the Proposed Complaint is replete with examples of Defendants taking unprecedented steps and adopting new laws specifically designed to stop The Greens based on the religion and familial status of prospective residents.

Further, the Proposed Complaint states a claim for familial status discrimination under Section 3604.[10] The NYAG alleges a pattern of conduct to prevent families with children from moving into the Town. The Town passed a law to limit the size of nearly half of the homes in The Greens to no larger than 577 square feet to discourage families with children from moving in. *See* Proposed Compl. ¶¶ 44, 51, 52. Moreover, the NYAG alleges the Town denied building permits, in part, because of an effort to limit the number of people who could reside in the home. *See id.* ¶¶ 69, 74, 75, 76, 89. These allegations constitute discrimination against families with children. *Cf. Rhode Island Com'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 131 (D. R.I. 2015) (policy limiting the number of people in home violated the FHA's familial status protections).

---

[8] Contrary to the County Defendants' unsupported claim, the NYAG does not allege that The Greens is solely "being built just *for* members of the Hasidic sect." County Defs.' Br. 11 (emphasis in original). The NYAG agrees that any such housing would violate the FHA, but that is not what is alleged here. Instead, the Proposed Complaint alleges that Defendants tried to block The Greens because of *Defendants' belief* that members of the Hasidic community would move into the Town. It is their discriminatory conduct that is at issue in this case.

[9] All of the cases the County Defendants cite for this assertion were either at the motion for summary judgment phase or post-trial. County Br. 11.

[10] Town Defendants cite to *Westhab, Inc. v. City of New Rochelle*, No. 03-cv-8377, 2004 WL 1171400, at *14 (S.D.N.Y. May 3, 2004), which was decided on motion for summary judgment (far past the stage of litigation of this case), and where the Court found that because minors were not "domiciled with" their guardians, the protected category of familial status did not apply.

Second, the County's arguments with respect to ripeness and failure to state a claim under Section 3617 of the FHA are likewise without merit. County Br. 7-10. Under Section 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [the FHA]." 42 U.S.C. § 3617. This provision prohibits interfering with rights protected under the FHA, regardless of whether housing was, in fact, denied. *See Francis v. Kings Park Manor, Inc.*, 944 F.3d 370 (2d Cir. 2019) ("[I]f a landlord rents to a white tenant but then threatens to evict him upon learning that he is married to a black woman, the landlord has plainly violated § 3617, whether he actually evicts the tenant or not." (internal quotation and citation omitted)). Here, as alleged in the Proposed Complaint, the County, motivated by discriminatory animus, threatened to stop The Greens and interfered with its development. *See supra* Part A. Such interference violates Section 3617. *See Jenkins*, 2009 WL 811592, at *7.

Lastly, the County inaccurately contends that the NYAG is conflicted from intervening in the underlying action because the NYAG represents the Department of Health ("DOH") in certain matters, and DOH granted the County's request for further water testing.[11] County Br. 14-15. DOH's actions, however, are not at issue here.[12] The Proposed Complaint, instead, alleges that after a water permit was granted, the County Defendants complained to DOH that it should reconsider its approval. The County's actions in requesting the involvement of DOH, an effort taken for discriminatory reasons to block the development of The Greens, is what is at issue here. There is no conflict in challenging this discriminatory conduct.

---

[11] The County's argument that the NYAG is conflicted based on potential prospective applications relating to The Greens before the New York State Department of Environmental Conservation is likewise misguided.

[12] The NYAG currently understands that the application for further water testing is no longer pending to the extent it has been granted by DOH. It is also the NYAG's understanding that Plaintiff is in compliance with the subsequent water testing required of The Greens.

## CONCLUSION

The NYAG respectfully requests that the Court grant its motion for intervention.

DATED:  December 30, 2019

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: *<ins>/s/ Jessica Clarke</ins>*
Jessica Clarke, *Bureau Chief*
Sania W. Khan, *Assistant Attorney General*
Vinita Kamath, *Assistant Attorney General*
Clarence Okoh, *Intern*
Civil Rights Bureau
Office of the New York State Attorney General
New York, New York 10005
Phone:  (212) 416-8252
Jessica.Clarke@ag.ny.gov

*Attorneys for the State of New York*