UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GREENS AT CHESTER LLC,

                        Plaintiff,

v.

TOWN OF CHESTER, JAMES M. FARR,
individually and as Building Inspector of the Town
of Chester, ROBERT VALENTINE, individually
and as Supervisor of the Town of Chester,
ALEXANDER J. JAMIESON, and as a former
Town Supervisor of the Town of Chester, STEVEN
M. NEUHAUS, Individually and as County
Executive of the County of Orange, and THE
COUNTY OF ORANGE,

                        Defendants.
---------------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

19-CV-6770 (PMH)

PHILIP M. HALPERN, United States District Judge:

On July 19, 2019, Plaintiff Greens at Chester LLC ("Plaintiff") commenced this action (Doc. 1), and on December 9, 2019, Plaintiff filed a First Amended Complaint against the Town of Chester ("the Town"), the County of Orange ("the County"), James M. Farr, Robert Valentine, Alexander J. Jamieson, and Steven M. Neuhaus (collectively "Defendants") seeking damages and permanent injunctive relief. (Doc. 39, First Am.. Compl., "FAC"). Plaintiff alleges discrimination on the basis that Defendants obstructed Plaintiff's fully approved housing development because of their desire to prevent members of the Hasidic Jewish community from moving into the Town and County. *Id.* As a result, Plaintiff asserts various violations of rights under 42 U.S.C. §§ 1981-1985; the Fifth Amendment of the United States Constitution; the Fair Housing Act ("FHA"); as well as related state claims. *Id.* ¶¶ 152-267.

By motion dated December 5, 2019, the New York State Attorney General ("NYAG") moved to intervene on behalf of the People of the State of New York pursuant

1

to Fed. R. Civ. P. 24(a)(2), or in the alternative, permissive intervention, pursuant to Fed. R. Civ. P. 24(b)(1)(B). (Doc. 36, "Mot. to Intervene"). By motions dated January 6, 2020, the Town and County separately moved to dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (Docs. 51 and 54). Those motions will be decided separately.

For the reasons set forth herein, the NYAG's Motion to Intervene is GRANTED.

## BACKGROUND

The following facts are taken from the allegations of the NYAG's Proposed Complaint. (Doc. 36, Ex. A, "Prop. Compl."). According to the NYAG, beginning in the 1970s, the County and Town have had a history of tension with members of the Hasidic community. Prop. Compl. ¶¶ 27-33. In 2010, as part of a settlement agreement, Plaintiff's predecessor purchased a 431-unit development ("the Greens"), for which the Town was ordered to grant final subdivision and site plan approval. *Id.* ¶¶ 34-35. As part of the agreement, the Town was not to rezone or enact additional regulations affecting the project, unless the project was exempted from the effects of such rezoning and/or additional regulations. *Id.* ¶¶ 36. In 2017, Plaintiff purchased the Greens. *Id.* ¶ 39.

Following Plaintiff's purchase, there were several discussions at public town meetings regarding blocking Plaintiff's development due to Plaintiff's Hasidic Jewish religion. *Id.* ¶¶ 40-42, 50-51, 57, 66-69. The NYAG alleges that following such meetings, Town officials proposed various laws, implemented costly special requests, and denied building permits, all aimed at preventing Plaintiff from developing the Greens. *Id.* ¶¶ 43, 52-53, 58, 65, 70-72, 74-76, 87-92. One law that was enacted restricted the square footage

of all newly constructed homes to a maximum percentage of the square footage of the lot on which they sit, which would have required many of Plaintiff's homes to be restricted to 577.5 square feet. *Id.* ¶ 43-45. Another proposed law was vetoed by Governor Cuomo, citing the underlying lawsuit and the "well-documented tension between local elected officials and a specific population of Hasidic people in the community." *Id.* ¶ 59. The special requests required Plaintiff to purchase costly easements, re-route the sewer waste line, purchase substantially more material, and revise previously submitted model home plans. *Id.* ¶¶ 70-72, 74-76. Further, the Town denied two building permit requests made by the Plaintiff, and to date, have yet to approve a single permit. *Id.* ¶¶ 87-88, 92.

According to the NYAG, the County, like the Town, also attempted to stop Plaintiff's development. *Id.* ¶ 77. At several town meetings, Defendant County Executive Steven Neuhaus ("Defendant Neuhaus") outlined the County's intentions and options to stop the development, such as putting pressure on Plaintiff to develop the land commercially and not authorizing sewer permits. *Id.* ¶¶ 78-79. Following such meetings, and after granting the Plaintiff a water permit for the development, the County's Department of Health ("DOH") contacted the State's DOH and requested further water testing for Plaintiff's development. *Id.* ¶ 80. The NYAG alleges that the Town and County made multiple offers to purchase the development, followed by attempts to pressure the Plaintiff to re-zone the development for commercial use in an effort to prevent members of the Hasidic community from moving into the community. *Id.* ¶¶ 82-86.

The NYAG alleges that Plaintiff has been unable to begin constructing a single home, and hundreds of homes that should be available to New Yorkers, including members of the Hasidic community, have been denied. *Id.* ¶ 100. As a result, the NYAG seeks

3

declaratory and injunctive relief alleging intentional discrimination and interference in the enjoyment of rights in violation of § 3604(a) and § 3617 of the FHA. *Id.* ¶¶ 101-08.

## STANDARD OF REVIEW

Fed. R. Civ. P. 24(a)(2) requires a Court to permit intervention as of right if: "(1) the motion is timely; (2) the applicant has asserted an interest relating to. . . the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Mastercard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006); *see* Fed. R. Civ. P. 24(a)(2).

Fed. R. Civ. P. 24(b)(1)(B) permits a Court to allow intervention upon "[(1)] [a] timely motion…[that] [2] has a claim or defense that shares with the main action a common question of law or fact." In deciding whether to permit permissive intervention, courts consider "substantially the same factors" as for interventions as of right. *Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 300 n.5 (2d Cir. 2003).

## ANALYSIS

Defendants have raised several preliminary issues that must be addressed prior to an analysis of the NYAG's motion to intervene.

### A. The NYAG's Authority to Bring an FHA Action

The first issue is whether the NYAG can bring claims for relief under the FHA. Section 3613 of the FHA permits "[a]n aggrieved person" to commence a civil action in state or federal court to obtain appropriate relief for discriminatory housing practices. 42 U.S.C. § 3613. An "aggrieved person" is defined to include "any person who . . . (1) claims

4

to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

Here, the Town argues that the NYAG cannot bring an FHA action as there is no explicit provision providing state attorneys general such authority. (Doc. 45, "Town's Mem. of Law in Opp'n" at 23-25). In support, the Town argues that in the context of several other federal statutes, Congress has expressly provided authority for state attorneys general to sue, but has not provided such authority in the FHA.[1] *Id.* at 24-25. In response, the NYAG does not dispute the FHA's lack of express authority, but instead argues that Congress's intent has been to broadly permit states to enforce federal statutes that do not expressly provide such authority, such as the FHA. (Doc. 48, "NYAG's Mem. in Reply" at 2-3); *Clearing Housing Ass'n, LLC v. Cuomo*, 510 F.3d 105, 125 (2007), *affirmed in part, reversed in part on other grounds by Cuomo v. Clearing House Ass'n LLC*, 557 U.S. 519 (2009); *see also New York v. Utica City. Sch. Dist.*, 177 F.Supp.3d 739, 747 (N.D.N.Y. 2016) (finding a state attorney general had *parens patriae* standing to bring a § 1983 action in violation of the Equal Protection and Due Process Clauses, Equal Educational Opportunities Act (EEOA), Title VI, and state law, as "states have frequently been allowed to . . . enforce federal statutes that . . . do not specifically provide standing for attorney generals in cases where the statutes at issue included broadly phrased civil enforcement provisions.").

While the parties correctly acknowledge that the issue of whether the NYAG has

---

[1] *See, e.g.*, Antitrust Improvements Act, 15 U.S.C. § 15c(a); Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(c)(3)(A); Fair Credit Reporting Act, 15 U.S.C. § 1681s(c); Truth in Lending Act, 15 U.S.C. § 1640(e); Commodity Exchange Act, 7 U.S.C. § 13a-2(1); Professional Boxing Safety Act, 15 U.S.C. § 6309(c).

such authority under the FHA has not been explicitly addressed by a higher court, there is case law in this Circuit permitting the NYAG *parens patriae* standing to maintain an action for violations of the FHA. *See Support Ministries for Persons With AIDS, Inc. v. Vill of Waterford*, 799 F. Supp. 272, 277-79 (N.D.N.Y. 1992) (finding the Attorney General of the State of New York had *parens patriae* standing to bring an action of unlawful discrimination pursuant to 42 U.S.C. § 3601 et. seq. of the FHA, as well as claims under § 1983; 28 U.S.C. § 2201 et seq., sections 296(5)(a)(2) and 296(6) of the Human Rights Law, § 40-c of the New York Civil Rights law; and Article 78 of the New York Civil Practice Law and Rules); *People by Abrams v. Merlino*, 694 F. Supp. 1101, 1105 (S.D.N.Y. 1988) (denying Defendants' motion to dismiss the Attorney General of the State of New York's claims of racial discrimination pursuant to §§ 3604 and 3617 of the FHA for failure to state a timely claim).

Further, in *Clearing Housing Ass'n LLC*, while declining to address the issue of whether a state attorney general has authority to bring an FHA action expressly, the Second Circuit discussed the Supreme Court's interpretation of § 3613(a)(1)(a) of the FHA, and noted that, "[t]he Supreme Court has interpreted the language of this provision as evincing 'a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.'" 510 F.3d at 125 (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) (finding, in an action by tenants challenging allegedly racially discriminatory practices of landlords that the definition of "'persons aggrieved' in the Civil Rights Act of 1968 is consistent with Congress's intent to "define sanding as broadly as is permitted by Article III of the Constitution.")).

The Second Circuit further acknowledged Congress's broad intent by pointing to

6

the 1988 amendments of the FHA, where the definition of an aggrieved person was added and included "any person who . . . believes that such person will be injured by a discriminatory housing practice that is about to occur." *Clearing Housing Ass'n LLC,* 510 F.3d at 125; *see also* H. R. Rep. No. 100-711 (1988); 42 U.S.C. § 3602(i). While the Supreme Court ultimately reversed the Second Circuit in *Clearing Housing Ass'n LLC*, the reversal was unrelated to the FHA claims. *See Cuomo*, 557 U.S. 519 (2009).

Since *Clearing Housing Ass'n LLC*, there has been no Second Circuit case law expressly addressing a state attorney general's authority to bring an FHA action. However, in 2017, the Supreme Court found that the City of Miami was an "aggrieved person" under 42 U.S.C. § 3613 and thus was authorized to bring an action against a mortgage lender claiming a decade-long pattern of racially discriminatory lending and discrimination in the residential housing market pursuant to 42 U.S.C. §§ 3604(b) and 3605(a) of the FHA. *Bank of America Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017). The Court concluded that the City's interests and alleged economic injuries were at least "arguably within the zone of interests" the FHA protects. *Id.* at 1299. Similarly, here, the NYAG's interest in preventing Defendants from ongoing discrimination is arguably within the zone of the FHA's protections of preventing discriminatory housing practices.

Thus, while the issue of whether the NYAG is classified as an "aggrieved person" does not appear to have been definitively addressed by the Second Circuit, the operative statute has been construed broadly in this Circuit, and the NYAG's interests arguably are sufficient for the NYAG to bring an action under the FHA as an aggrieved party.

 B. Standing

The next issue Defendants raise is whether the NYAG has standing to bring claims

7

for relief under the FHA. A prospective intervenor must have Article III standing to "seek[] additional relief beyond that which the [Plaintiff] requests." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). To establish Article III standing, a party must show: (1) injury in fact, (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In New York, *parens patriae* standing is met if there is: (1) a quasi-sovereign interest in the public's well-being, (2) that is distinct from that of a particular private party, and (3) an "injury to a sufficiently substantial segment of the population." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013).

Here, the NYAG has *parens patraie* standing. The NYAG's quasi-sovereign interest in protecting its residents from discrimination is undisputed. The Town argues that such interest is not distinct from private parties who can bring their own lawsuit on their own behalf. Town's Mem. of Law in Opp'n at 22. However, the NYAG's Proposed Complaint seeks relief broader than what the Plaintiff—or any other private litigant who brings an FHA claim—can seek.  The NYAG seeks relief in preventing all future discrimination based on religion and familial status as well as requiring Defendants to take affirmative steps to stop such conduct. The NYAG has standing to bring the claims proposed.

### C. Futility

The County next argues that intervention should be denied as futile for the NYAG's failure to state claims for relief under the FHA against the County. The Court can deny intervention if it would be futile due to meritless underlying claims. *See U.S. v. Glen Falls Newspapers Inc.*, 160 F.3d 853, 856 (2d Cir. 1998). Section 3604(a) of the FHA makes it unlawful to "otherwise make unavailable or deny[] a dwelling to any person because of . .

8

. religion . . . [or] familial status." 42 U.S.C. § 3604(a). Section 3617 of the FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [the FHA]." 42 U.S.C. § 3617.

Here, the County argues that regardless of whether intervention is permissible, such intervention would be futile and thus should be denied. (Doc. 42, "Cty. Mem. of Law in Opp'n" at 7). First, the County argues that the NYAG's claims are not ripe, as the County never made a final decision or took any final agency action regarding the Plaintiff's property. *Id.* at 8-9. The County alleges it never denied the Plaintiff any permits, and merely suggested sewer capacity issues and concern over whether the project has sufficient water supply. *Id*. However, in response, the NYAG suggests that standing under the FHA is broad and includes "suit for injuries resulting from having aided or encouraged any other person in the exercise or enjoyment of . . . a right protected by the FHA." NYAG's Mem. in Reply at 5 (quoting *Jenkins v. Eaton*, No. 08-cv-713, 2009 WL 811592 at *7 (E.D.N.Y. Mar. 27, 2009)).

In *Jenkins*, the Court found Defendants' conduct in aiding and abetting other Defendants in violating the FHA was sufficient to deny its Motion to Dismiss. *Jenkins*, 2009 WL 811592 at *2. Similarly, here, despite the fact that the County did not revoke any permits, the Proposed Complaint alleges sufficient facts demonstrating the County's conduct in expressing their intentions to the Town to stop the development, followed by specific actions taken, such as contacting the State Department of Health to suggest that the Plaintiff's water be tested, is sufficient conduct for a ripe claim against the County. Prop. Compl. ¶¶ 78-80, 82-86.

The County also argues that the NYAG failed to state a claim for relief under FHA

§§ 3604 and 3617. Cty. Mem. of Law in Opp'n at 9-11. The Town does not dispute intervention on such grounds. With regard to § 3604 of the FHA, the County argues that no claim for relief has been stated as the NYAG has failed to show that the County treated other similarly situated developers different than the Plaintiff or the "People," and further, that the "People" are qualified buyers seeking housing in the community. *Id.* at 10-11. In response, the NYAG alleges that such showings are not required and all that is required to allege a disparate treatment claim under the FHA are facts suggesting that "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." NYAG's Mem. in Reply at 8 (quoting *Mill St. Partners, LLC v. City of Newburgh*, No. 19-cv-5465, 2019 WL 4274212, at *5 (S.D.N.Y. Sept. 10, 2019)).

Here, the Proposed Complaint pleads sufficient facts to make a disparate treatment claim under § 3604. For example, following the Plaintiff's purchase, several discussions took place at public town meetings regarding blocking Plaintiff's development due to Plaintiff's Hasidic Jewish religion. Prop. Comp. ¶¶ 40-42, 50-51, 57, 66-69. At these meetings, Defendant Neuhaus expressed the County's intentions and several options to stop the development. *Id*. ¶¶ 78-79. The County sought to pressure Plaintiff to develop the land commercially and not authorize sewer permits. *Id*. Following these meetings, the County contacted the State's DOH and requested further water testing for the development. *Id.* ¶80. Such allegations are sufficient to demonstrate that the County's actions were motivated by a discriminatory animus towards Plaintiff based on Plaintiff's religion and familial status.

Further, the Proposed Complaint pleads facts sufficient to state a claim for relief

under §3617. The County argues that the NYAG fails to demonstrate any protected activity or adverse action, which is required to support a retaliation claim under § 3617. Cty. Mem. of Law in Opp'n at 9-10. However, as previously mentioned, conduct in "aiding and abetting" others in violation of the FHA has been found sufficient to withstand a motion to dismiss. *Jenkins*, 2009 WL 811592 at *2. The Proposed Complaint alleges facts illustrating an alleged tension between the County and Town and the Hasidic community. Prop. Compl. ¶¶ 27-33. Further, the Proposed Complaint alleges that following several meetings during which Town and County officials expressed ways to exert pressure on Plaintiff, both the Town and County made multiple offers to purchase the development, as well as efforts to re-zone it for commercial use. *Id.* ¶¶ 82-86.

Therefore, the Proposed Complaint sufficiently sets forth claims for relief, and intervention, if proper, should not be denied as futile.

D. Disqualification

The last issue raised by Defendants is whether the NYAG should be disqualified. The County suggests that the NYAG's representation of the State DOH, who is an alleged discriminator in the action, creates a "prima facie improper" case of adverse concurrent representation. Cty. Mem. of Law in Opp'n at 14 (quoting *Cinema 5 Ltd. V. Cinerama, Inc. et al.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). The Court disagrees. In *Cinema 5, Ltd.*, the Second Circuit stated that "[w]here…adverse representation is prima facie improper . . . the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his [or her] representation." *Id.* Here, as the NYAG correctly asserts, the basis of this lawsuit is focused on the County's alleged discriminatory motives and actions in requesting the State to conduct further water

11

testing, and not the State's unknowing involvement in such discrimination. Thus, there is no apparent conflict warranting disqualification of the NYAG.

### E. Intervention

As none of the precatory issues raised by Defendants warrant a denial of intervention, the next issue is whether intervention is proper.

First, the Court must address whether to permit the NYAG to intervene as of right. Here, it is undisputed that the motion to intervene is timely, as it was brought both prior to the filing of Plaintiff's Amended Complaint, and prior to Defendants' motions to dismiss and discovery deadlines. The Town makes several arguments that the NYAG's interest is not ripe, direct, significant, or legally protected. *See* Town's Mem. of Law in Opp'n However, such arguments overlook the fact that the NYAG has a strong interest in the subject of this action. That is, stopping Defendants' allegedly discriminatory housing practices which prevent Hasidic Jewish families from buying and occupying homes in violation of the FHA. Next, the County and Town both argue that the NYAG has not demonstrated that without intervention, disposition of the action may impair or impede their ability to protect its interest. *Id.* at 13-16; Cty's Mem. of Law in Opp'n at 13. Further, both the Town and County argue that the NYAG raises the same claims as Plaintiff and can bring a separate action in the future. *Id.*

However, the Proposed Complaint alleges that the NYAG is seeking to "requir[e] Defendants [to] take all affirmative steps, including changing policies, conducting training . . . among others, to ensure . . . compliance with the FHA, eliminate ongoing discrimination and its effects, and prevent discriminatory conduct in the future." Prop. Compl., Prayer for Relief at (d)(ii). As addressed by the NYAG, the demand for relief is unique and more

12

expansive than Plaintiff's relief which is focused on the Greens development. NYAG's Mem. in Reply at 4-5. As such, the NYAG has demonstrated that without intervention, disposition of the Plaintiff's action may, as a practical matter, impair or impede their ability to protect its interest in preventing future discriminatory conduct.

Finally, the NYAG has demonstrated that the Plaintiff does not adequately represent the NYAG's interests. The Town and County both argue that the NYAG's interest is being represented by the Plaintiff, who has an identical interest and objective. Town's Mem. of Law in Opp'n at 16-17; Cty's Mem. of Law in Opp'n at 13. The County argues that Plaintiff's objective is to obtain and provide housing. Cty. Mem. of Law in Opp'n at 13. However, such arguments overlook the fact that the NYAG has a unique interest in preventing discrimination and providing equal opportunity to housing for all New Yorkers. Further, an award making the Plaintiff whole does not accomplish the NYAG's objectives as set forth in the Proposed Complaint. The Proposed Complaint makes clear that the NYAG's interest is distinct from Plaintiff's interest, as the NYAG seeks broader relief than the Plaintiff whose sole focus is the Greens development.

Thus, the NYAG has established its ability to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2).

Regardless of the NYAG's intervention as of right, under Fed. R. Civ. P. 24(b)(1)(B), permissive intervention would be proper as the Proposed Complaint annexed to the NYAG's timely motion alleges claims for relief under §§3604(a) and 3617 of the FHA, which are also alleged by the Plaintiff, and share common questions of law or fact. While the Town argues that such intervention would result in complication and delay in all stages of the case, *see* Town's Mem. of Law in Opp'n at 17-19, this argument overlooks

the fact that when the same questions of law or fact are involved, the Court may permit intervention. Thus, regardless of the NYAG's ability to intervene as of right, intervention is permissible under Fed. R. Civ. P. 24(b)(1)(B).

## **CONCLUSION**

Based upon the foregoing, the NYAG's Motion to Intervene is GRANTED. The NYAG's Complaint shall be served and filed within ten days of the date of this Order.

**SO ORDERED:**

Dated: New York, New York
May 8, 2020

_____
Philip M. Halpern
United States District Judge