UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GREENS AT CHESTER, LLC,

                       Plaintiff,

      -against-

                                         Civil Action #: 19-cv-06770

TOWN OF CHESTER, JAMES M. FARR,
Individually and as Building Inspector of the
Town of Chester, ROBERT VALENTINE,
individually and as Supervisor of the Town of
Chester, CYNTHIA SMITH, RYAN C. WENSLEY,
ORLANDO PEREZ, and VINCENT FINIZIA,
collectively, as Members of the Town Board of
the Town of Chester, ALEXANDER J. JAMISON,
as former Town Supervisor of the Town of Chester,
STEVEN M. NEUHAUS, individually and as
County Executive of the County of Orange
and THE COUNTY OF ORANGE,

                      Defendants.

-------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS, STEVEN M. NEUHAUS AND THE
COUNTY OF ORANGE MOTION TO RECONSIDER
COURT'S DECISIONS ON MOTION TO DISMISS
COMPLAINT AND COUNTY'S OPPOSITION TO
STATE'S MOTION FOR INTERVENTION

-------------------------------------------------------------------X

ANTHONY F. CARDOSO
Assistant County Attorney
Langdon C. Chapman
County Attorney for Orange County
Attorney for Steven M. Neuhaus and County
  Of Orange
Orange County Government Center
255-275 Main Street, Second Floor
Goshen, New York 10924
(845) 291-3150

## TABLE OF CONTENTS

                                                                    **PAGE**

TABLE OF AUTHORITIES                                                   i

PRELIMINARY STATEMENT                                                  1

STATEMENT OF FACTS                                                     1

ARGUMENT                                                               3

    STANDARD OF REVIEW                             3

    POINT I

        THE FUTILITY EXCEPTION DOES NOT APPLY TO THE
        COUNTY'S ACTIONS UNDER CONTROLLING SECOND
        CIRCUIT CASELAW                                   3

    POINT II

        THE "IMMEDIATE INJURY" STANDARD IS NOT MET
        FOR THE STATE'S INTERVENTION AFTER THE SECOND
        CIRCUIT'S DECISION IN SUNRISE FOR FHA CLAIMS      6

    POINT III

        CONTROLLING SECOND CIRCUIT FHA CASELAW
        REQUIRES AN ALLEGATION OF PROTECTED ACTIVITY
        THAT PRECEDES THE RETALIATION                     9

CONCLUSION                                                           13

# TABLE OF AUTHORITIES

**PAGE**

## Federal Cases

*Brooks v. Macy's, Inc.,*
No. 10 Civ. 5304 (BSJ)( HBP), 2011 WL 1362191 (S.D.N.Y. Apr. 8, 2011)............................ 3

*Di Pompo v. Ruggiero,*
No. 17-CV-8077 (CS), 2018 WL 5045339 (S.D.N.Y. Oct. 17, 2018)........................................ 9

*Dreher v. Doherty,*
531 Fed.Appx. 82 (2d Cir. 2013) ............................................................................................. 4

*Francis v. Kings Park Manor, Inc.,*
944 F.3d 370 (2d Cir. 2019).................................................................................................... 10

*Gallagher v. Magner,*
619 F.3d 823 (8th Cir. 2010).................................................................................................... 12

*Jenkins v. Eaton,*
No. 08-CV-0713 (NGG)(LB), 2009 WL 811592 (E.D.N.Y. Mar. 27, 2009) ........................... 10

*Johnson v. YWCA Residence, LLC,*
No. 12-CV-3301 (CS), 2014 WL 12782728 (S.D.N.Y. July 9, 2014)...................................... 11

*Joseph's House & Shelter, Inc. v. City of Troy, N.Y.,*
641 F.Supp.2d 154 (N.D.N.Y. 2009) ...................................................................................... 11

*Kendrick v. Greenburgh Hous. Auth.,*
No. 07-CV-5859 (CS), 2011 WL 1118664 (S.D.N.Y. Mar. 22, 2011)..................................... 11

*Knick v. Twp. of Scott, Pennsylvania,*
139 S.Ct. 2162 (2019) ............................................................................................................... 5

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,*
729 F.3d 99 (2d Cir. 2013)......................................................................................................... 3

*Kowalczyk v. Barbarite,*
594 Fed.Appx. 690 (2d Cir. 2014) ............................................................................................ 9

*Lynn v. Vill. of Pomona,*
212 Fed.Appx. 38 (2d Cir. 2007) ............................................................................................ 10

i

*Lynn v. Vill. of Pomona*,
    373 F.Supp.2d 418 (S.D.N.Y. 2005) ........................................................................... 11

*Murphy v. New Milford Zoning Com'n*,
    402 F.3d 342 (2d Cir.2005) ............................................................................ 2, 3, 4, 5

*Nenninger v. Vill. of Port Jefferson*,
    509 Fed.Appx. 36 (2d Cir. 2013) ............................................................................... 2

*Puglisi v. Underhill Park Taxpayer Ass'n*,
    947 F.Supp. 673 (S.D.N.Y. 1996) ........................................................................... 10

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,
    294 F.3d 35 (2d Cir. 2002) ................................................................................ 10, 11

*Safe Harbor Retreat LLC v. Town of East Hampton, N.Y.*,
    629 Fed.Appx. 63 (2d Cir. 2015) ........................................................................... 6, 7

*Santulli v. Russello*,
    519 Fed.Appx. 706 (2d Cir. 2013) ........................................................................... 10

*Sunrise Detox V, LLC v. City of White Plains*,
    769 F.3d 118 (2d Cir. 2014) ............................................................................ 4, 6, 7

*Williamson Cty. Reg'l Planning Com'n v. Hamilton Bank of Johnson City*,
    473 U.S. 172 (1985) .............................................................................................. 5

**Federal Statutes**

42 U.S.C. § 3617 ............................................................................................... 1, 12

**State Regulations**

10 NYCRR § 5-1.22(d) ............................................................................................. 8

10 NYCRR §§ 5-1.90, 5-1.91, 5-1.92, 5-1.93 .............................................................. 8

**Other Authorities**

Local Civil Rule 6.3 ................................................................................................. 3

### PRELIMINARY STATEMENT

The County of Orange and Steven Neuhaus ("County defendants") move under Local Rule 6.3 seeking reconsideration of the Court's decision on the County's motion to dismiss and its decision granting intervention to the Attorney General on the narrow grounds that the Court overlooked controlling Second Circuit caselaw on ripeness and the Fair Housing Act claims. We respectfully submit that, when the County's alleged actions are separated from the Town defendants (which the decision did not appear to do in some respects), and the controlling standards applied, the Court should dismiss the claims against the County as unripe for review. The facts here do not come close to the futility nor "immediate injury" exceptions to ripeness applying to the County.

In addition, plaintiff abandoned its 42 U.S.C. § 3617 retaliation claim on the motion to dismiss by not responding to the County's argument in support of dismissal. But the State pressed a similar claim. Controlling Second Circuit caselaw, however, requires an allegation of protected activity that precedes any alleged adverse action, a hurdle the Court did not analyze, and the intervenor did not allege. We respectfully submit the Court should reconsider its decision with respect to the State's retaliation claim and expressly recognize that plaintiff abandoned its retaliation claim.

### STATEMENT OF FACTS

To avoid repetition, the Court is respectfully referred to the statement of facts contained in the County's prior submissions in its motion to dismiss the plaintiff's complaint and in opposition to the State's motion to intervene. Both complaints make clear the County's alleged actions are starkly different from the Town's in scope and impact and needs to be separately analyzed. The

County defendants cannot be lumped in with "Defendants" generally.   In short, the County allegedly took the following specific actions involving the plaintiff's property:

- Granted plaintiff all requested County Department of Health approvals and renewals (Ex. A, ¶ 3; Ex. B, ¶¶ 37, 80; Ex. C [Docket No. 38-6])[1]

- In June 2018, the County Department of Health sent a letter to the State Department of Health, the regulator of the water supply.  (Ex. A, ¶ 86; Ex. D [Docket No. 38-5]).  The letter did not indicate the County was taking any action beyond its recommendation that the last water supply testing was approximately 20 years prior and that the State should look at that in its role as sole regulator of water supplies.

In response to the County's motion to dismiss, the plaintiff focused its claims solely on the aforementioned letter, i.e. the "water letter" and abandoned its claims about a hypothetical sewer connection, for which they never applied and were never denied.[2]  See Plaintiff's Opposition Memorandum of Law.  As the County did not take any other action, it is only these activities that the Court must analyze under the controlling ripeness rubric the Second Circuit established for all land use matters.   We respectfully submit the Court overlooked this caselaw in analyzing the County's alleged actions.

---

[1] Though these documents are on the docket, for the Court's convenience we are reassembling the documents and attaching them to the Declaration of Anthony F. Cardoso in support of this motion.

[2] The lack of any application for a "sewer permit" before suit is fatal to any such claim even if not abandoned, as it would certainly be unripe for review.    Plaintiff must allege at minimum that it first submitted "'at least one meaningful application' to the relevant government entity for the relief sought" under Murphy.  Nenninger v. Vill. of Port Jefferson, 509 F. App'x 36, 38 (2d Cir. 2013) (quoting Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir.2005)).

## ARGUMENT

### STANDARD OF REVIEW

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." 'To be entitled to reargument under Local Civil Rule 6.3, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." Brooks v. Macy's, Inc., No. 10 CIV. 5304 BSJ HBP, 2011 WL 1362191, at *1 (S.D.N.Y. Apr. 8, 2011). A motion for reconsideration is appropriate where there is a "need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). We respectfully submit the Court overlooked controlling decisions on the underlying motion to dismiss and motion in opposition to the State's intervention, and thus reconsideration is appropriate to avoid manifest injustice.

### POINT I

### THE FUTILITY EXCEPTION DOES NOT APPLY TO THE COUNTY'S ACTIONS UNDER CONTROLLING SECOND CIRCUIT CASELAW

In the Court's decision on the motion to dismiss, while the County's respective actions were not analyzed, the Court relied on the narrow "futility" exception to ripeness articulated in Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). But Murphy does not apply to the County's actions, given that the County granted all requested permits. Tellingly, neither plaintiff nor the intervenors even argued futility in response to the County's motion to dismiss. This is because the County's act of sending of a non-binding letter to another agency simply does not fall under the "futility" standard in Murphy.

3

The <u>Murphy</u> case begins with the maxim that to establish jurisdiction in land use challenges, the plaintiff has the "'high burden' of proving that we can look to a final, definitive position from a local authority to assess precisely how they can use their property." <u>Id.</u> at 347. There are four considerations that the Second Circuit applies in determining ripeness:  1) requiring a final decision would aid in development of a full record; 2) a final decision, following all variances, allows a Court to precisely know how a regulation will apply to a particular property; 3) a variance might provide full relief without the Court's involvement; and 4) reflects the judiciaries' appreciation that land use matters are uniquely matters of local concern.  <u>See id.</u> at 348.

The Second Circuit in <u>Murphy</u> created a narrow "futility" exception to the requirement that a plaintiff obtain both a final decision and exhaust all variance opportunities in two circumstances: 1) where a "zoning agency lacks discretion to grant variances" (and thus no variance is possible); or 2) where the zoning agency has "dug in its heels and made clear that all such applications will be denied." <u>Id.</u> at 349.  Even the Court in <u>Murphy</u> found the plaintiff there did <u>not meet</u> these strict standards.  In subsequent cases, the Second Circuit has made clear that "mere doubt that their application would be denied" is insufficient to establish futility.  <u>Dreher v. Doherty</u>, 531 F. App'x 82, 83 (2d Cir. 2013) (summary order).   Further, <u>Murphy</u> does not apply in the absence of a meaningful application for relief from the entity first.   <u>Sunrise Detox V, LLC v. City of White Plains</u>, 769 F.3d 118, 124 (2d Cir. 2014) ("in the absence of and Sunrise's own failure to 'submit [ ] at least one meaningful application for a variance' prevents us from determining whether the board 'has dug in its heels and made clear that all such applications will be denied,'") (<u>citing</u> <u>Murphy</u>, 402 F.3d at 348, 349).

Once the County's actions are isolated from those of the other defendants, <u>Murphy</u> simply does not apply to the County defendants.[3] The County granted every approval it is empowered to grant. Neither the plaintiff nor the intervenors allege that any application was made to the County that was denied, which fails the threshold <u>Murphy</u> test. <u>Murphy</u> only comes in to play <u>after</u> an application was denied, at the step where a landowner is normally required to pursue "an appeal to a zoning board of appeals or seek[] a variance" to ripen their claims. <u>Murphy</u>, 402 F.3d at 349. <u>Murphy</u> then says essentially "landowner, you do not need to apply for a variance." Here, the plaintiff never reached the futility stage because the County never denied any applications. The Court should reconsider its decision on the motion to dismiss on this basis alone: <u>Murphy</u> just does not apply.

As argued at length in the underlying motion, to the extent plaintiff and intervenors claim non-final and non-binding statements by County officials are "final" action, the Second Circuit's controlling caselaw does not support this assertion. Though the Court did not analyze this issue, to the extent it held that the sending of a non-final advisory letter to a regulator constitutes both application, denial, and futile variance procedure, that is far beyond any controlling caselaw in land use jurisprudence. The County defendants' alleged actions were unripe, non-final advisory recommendations by non-decisionmakers, not final decisions by "the government entity charged with implementing the regulations." <u>Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 186, 105 S. Ct. 3108, 3116, 87 L. Ed. 2d 126 (1985)[4]; <u>see</u> <u>also</u> County Reply Memo of Law, pp. 2-6. <u>Murphy</u> and its futility exception is inapplicable.

---

[3] It is telling that neither plaintiff nor the intervenors even raised this defense with respect to the County's actions.
[4] <u>Overruled on other grounds by</u> <u>Knick v. Twp. of Scott, Pennsylvania</u>, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019). <u>Knick</u> left the final decision requirement untouched.

5

**POINT II**

**THE "IMMEDIATE INJURY" STANDARD IS NOT MET FOR THE STATE'S INTERVENTION AFTER THE SECOND CIRCUIT'S DECISION IN SUNRISE FOR FHA CLAIMS**

In response to the State's intervention, the County opposed the motion by arguing, *inter alia*, that intervention as against the County would be futile because the State's FHA claims were unripe for review in the absence of any final decision by the County to prevent the plaintiff's development. The State responded by citing to a 2010 Eastern District decision, <u>Jenkins v. Eaton</u> a *pro se* case that vaguely applied the "immediate injury" exception to ripeness.[5]  The Court's decision adopted <u>Jenkins</u>' reasoning. In doing so, the Court overlooked controlling Second Circuit caselaw the County cited, issued since <u>Jenkins</u>, that clarified this standard:  <u>Sunrise Detox V, LLC v. City of White Plains</u>, 769 F.3d 118, 121 (2d Cir. 2014) and <u>Safe Harbor Retreat LLC v. Town of E. Hampton, N.Y.</u>, 629 F. App'x 63, 65 (2d Cir. 2015). When the Second Circuit's standard is applied, it is clear that the "immediate injury" standard does not apply.[6]

As the Second Circuit clarified in <u>Sunrise</u>, to invoke the "immediate injury" exception to the final decision requirement, the plaintiff must show that he or she suffered some "injury independent of the challenged land-use decision." 769 F.3d at 123. The Court identified two occasions where this might occur: (1) the zoning policy is discriminatory on its face or (2) the manipulation of a zoning process out of discriminatory animus to avoid making a final decision. <u>Id.</u> The idea behind this "independent injury" exception is that further administrative decision would do nothing to further define the injury.

<u>Sunrise</u> demonstrates how this standard works in land use cases like this and how it cannot apply where, like here, the claimed injury is <u>dependent</u> on the outcome of a land use process, rather

---

[5] Due to the procedural posture of the intervention motion, the County was not permitted a reply.
[6] Tellingly, plaintiff did not invoke this exception in response to the County's motion to dismiss on ripeness.

6

than inflicted <u>independently</u> of that process. Sunrise was a developer of facilities for individuals recovering from drug or alcohol addiction. The City of White Plains determined that the facility was not a "community residence" and, absent a variance or appeal from the building inspector, it could not allow the facility. <u>Id.</u> at 119. Sunrise did not seek that variance or appeal, but instead sued claiming it suffered an immediate injury and intentional discrimination, and thus did not need a final decision. The District Court dismissed the case. On appeal, the Second Circuit held, despite plaintiff's allegation of intentional discrimination and immediate injury, "in light of administrative avenues for relief" available, the City's preliminary actions did not give rise to an injury "independent of the city's ultimate land-use decision." <u>Id.</u> at 124. This is because the injuries they suffered were inextricably linked to the City's eventual decision to allow the facility or not.

Similarly, in <u>Safe Harbor Retreat LLC v. Town of East Hampton</u>, 629 Fed.Appx. 63 (2d Cir. 2015), the Court extended its <u>Sunrise</u> analysis to an FHA claim. Like in <u>Sunrise</u>, the plaintiff in <u>Safe Harbor</u> attempted to avoid seeking a final decision by claiming it suffered an immediate injury. There, the plaintiff had received a negative determination from the building department but not yet a final decision, which they could obtain by seeking a special permit. Rather than doing so, it sued, claiming immediate injury and intentional discrimination under the FHA against disabled people. The Second Circuit once again held that the plaintiff did not allege an injury independent of the land use decision, as its grievance arose solely from the Town's land use determinations to allow (or not) the facility. Safe Harbor did not allege the zoning policy was facially discriminatory or that the Town was delaying issuing a final decision. General allegations of animus combined with negative press coverage was not enough to create an immediate injury. <u>Id.</u> at 65.

Jenkins was decided prior to the Second Circuit's decisions in Sunrise and Safe Harbor, so did not apply the now-controlling standard. Jenkins is no longer good law. And the very facts of Jenkins are not analogous here. In Jenkins, the pro se plaintiff claimed "immediate injury" from the completed act of the defendant posting unadjudicated housing complaints, which "immediately" caused her emotional damages, embarrassment, and a cloud on title. The court rightly held the claims were not actionable against the municipal defendants and questioned whether they were actionable at all. At no point did the Jenkins court hold that allegations of "aiding and abetting" somehow avoided ripeness requirements against a municipality. The private defendants did not argue ripeness; they only argued the plaintiff lacked standing.

Here, the State does not allege the same kinds of injuries found to be acceptable in Jenkins. Ms. Jenkins claimed she suffered emotional damage. The State's injury, a deprivation of housing opportunities for certain people, is solely dependent on the final conclusion of the land use process. The County granted every approval it has authority to grant. Indeed, plaintiff conceded that the water testing has to be conducted anyway before the plaintiff can obtain final clearance from the State to sell homes. See 10 NYCRR § 5-1.22(d); Ex. A, ¶¶ 94, 150. Notwithstanding the County has no role in water supply approval, that process is incomplete and any injury is speculative until the approval process concludes. If the water testing is clear, then neither the "People" nor the plaintiff suffered any impediment to building housing. Plaintiff also failed to utilize the variance process under the State Sanitary Code for water suppliers, a vehicle by which the plaintiff could seek further relief. See 10 NYCRR §§ 5-1.90, 5-1.91, 5-1.92, 5-1.93. The plaintiff and the State's alleged injury may never occur. [7] Sunrise, not Jenkins, controls here and commands dismissal of

---

[7] Indeed, the State's role as regulator here empowers it to grant its own relief. The State can certainly simply decide to ignore the County's questions, waive the water testing requirement both now and in connection with final approval, and clear any roadblocks to approval on its own initiative. Why it has not done so, and instead bring this suit, is

the claims as unripe. [8] See e.g. Kowalczyk v. Barbarite, 594 F. App'x 690, 693 (2d Cir. 2014) (ripeness applied because to "grant Kowalczyk's requested relief, the Court must therefore determine whether the local land-use body correctly decided the relevant zoning disputes and properly applied its zoning laws").

## POINT III

### CONTROLLING SECOND CIRCUIT FHA CASELAW REQUIRES AN ALLEGATION OF PROTECTED ACTIVITY THAT PRECEDES THE RETALIATION

The plaintiff abandoned its retaliation claim by not responding to the County's motion to dismiss the claim. See County Reply Memo at p. 1; Plaintiff's Opp. Mem. Of Law in Response to County (no reference to County's arguments under 3617) [Docket No. 61]; Di Pompo v. Ruggiero, No. 17-CV-8077 (CS), 2018 WL 5045339, at *3 (S.D.N.Y. Oct. 17, 2018) (citation omitted) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendants' arguments in support of dismissing that claim."). The Court should reconsider its decision on the motion to dismiss to the extent it did not acknowledge this abandonment to prevent manifest injustice to the County by having to defend abandoned claims. Moreover, the Court should reconsider its decision on the State's intervention with respect to the retaliation claim, as the Court overlooked controlling precedent cited in the County's opposition papers.

To state a claim under Section 3617, a plaintiff must plead facts showing "that [it was] engaged in protected activity, that the [defendant] was aware of this activity, that the [defendant] took adverse action against the plaintiff, and a causal connection exists between the protected

---

beyond the context of this motion. To the extent the State finds there is merit to the water supply concerns, then that is just more support for the process to be allowed to finish.

[8] The State further conceded in its reply papers that this testing was already done; if true, that means the issue is simply moot. See Docket 48, pg. 10, fn,. 12.

activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse employment action." Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002) (citation omitted) ("RECAP"); Santulli v. Russello, 519 F. App'x 706, 710 (2d Cir. 2013) (summary order); Lynn v. Vill. of Pomona, 212 F. App'x 38, 42 (2d Cir. 2007) (summary order). RECAP and its progeny are controlling precedent.

While the Court relied on Jenkins, that case neither cited to RECAP nor applied its controlling framework. In fact, the private defendants in Jenkins did not apparently raise this defense at all (the claims against the municipality were dismissed). Indeed, the part of the Jenkins decision that the Court cites only addressed standing, which is separate from whether a retaliation claim was stated. Jenkins, 2009 WL 811592, at *7 (E.D.N.Y. Mar. 27, 2009) (citing Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 696 (S.D.N.Y. 1996). To the extent Jenkins applied a different standard than RECAP, controlling precedent from the Second Circuit overrides unreported Eastern District decisions.

The County argued that, due to a lack of any allegation of protected activity under the RECAP standard, whether or not the plaintiff or the "People" had standing, they nonetheless failed to state a claim. In response to this argument, the plaintiff (wisely) abandoned their retaliation claim on the motion to dismiss. The State did not bother to identify any protected activity required under RECAP. To the extent the State relied on dicta in Francis v. Kings Park Manor, Inc., 944 F.3d 370, 377 (2d Cir. 2019), reh'g en banc granted, 949 F.3d 67 (2d Cir. 2020), this case did not overrule RECAP or establish a new standard to state retaliation claims. Francis is pending rehearing en banc and is of dubious precedential value. Francis also was not a land use claim (unlike RECAP) but rather dealt with tenant on tenant harassment. Moreover, in Francis the tenant alleged he submitted multiple complaints to the defendants and then those complaints were ignored

and the landlord did not act, so the lack of precedent protected activity was not at issue. The State cites to no Second Circuit case that directly addresses the holding in RECAP or replaces its binding framework. RECAP is controlling on this Court and, specifically, this issue.

In RECAP, the court identified the plaintiff's protected activity as sending a complaint letter and then filing a complaint with HUD, after which the City withheld funding – clear cause (protected activity) and effect (withholding funds). 294 F.3d at 54. Here, the State made no attempt to plead similar events. It identified no protected activity by the "People" or plaintiff and plaintiff pled none either (a point plaintiff conceded by abandoning its retaliation claim). Moreover, the alleged adverse action, i.e. suggesting (but not requiring) the plaintiff look into commercial uses instead and then sending a letter to another agency, which itself did not impose any requirements, had no "materially adverse effect" required to state a claim under RECAP and the FHA. Joseph's House & Shelter, Inc. v. City of Troy, N.Y., 641 F. Supp. 2d 154, 159 (N.D.N.Y. 2009) (City withheld discretionary funding, the lack of which had a materially adverse impact on the plaintiff, after plaintiff filed lawsuit).

At best, Jenkins is an outlier and, at worst, simply wrong. The vast weight of both Second Circuit and District Court caselaw applies RECAP's standard, which controls and requires application of the retaliation standard. See e.g. Lynn v. Vill. of Pomona, 373 F. Supp. 2d 418, 433 (S.D.N.Y. 2005), aff'd, 212 F. App'x 38 (2d Cir. 2007) (Defendant allegedly had their development lots viewed more strictly following HUD complaint, but plaintiff failed to ultimately allege it suffered any materially adverse effect; claim dismissed); Johnson v. YWCA Residence, LLC, No. 12-CV-3301 (CS), 2014 WL 12782728, at *5 (S.D.N.Y. July 9, 2014) (applying RECAP and holding that, though plaintiff engaged in protected activity by filing HUD complaint, no evidence defendant took adverse action because of that complaint); Kendrick v. Greenburgh Hous.

Auth., No. 07-CV-5859 (CS), 2011 WL 1118664, at *10 (S.D.N.Y. Mar. 22, 2011) (Plaintiff failed to state claim where complaints occurred after the defendant's alleged adverse action); Gallagher v. Magner, 619 F.3d 823, 839 (8th Cir. 2010) ("Appellants were not exercising a right under the FHA by leasing to racial minorities.").

We respectfully request the Court reconsider its decision and dismiss the 42 U.S.C. § 3617 claims for failure to allege facts plausibly establishing the elements, and deem plaintiff's § 3617 claim abandoned.

## **CONCLUSION**

For the reasons stated above, the Court should reconsider its decision on the County's motion to dismiss and its decision granting the State of New York's intervention, and dismiss plaintiffs' complaint and deny intervention in its entirety as against the County of Orange and County Executive Steven Neuhaus, with such other and further relief as the Court deems just and proper.

Dated:   Goshen, New York
        May 22, 2020

                      Respectfully submitted,

                      ANTHONY F. CARDOSO
                      Assistant County Attorney
                      LANGDON C. CHAPMAN
                      County Attorney for Orange County
                      *Attorneys for Defendants County of Orange,*
                      *And Steven M. Neuhaus*
                      255-75 Main Street
                      Goshen, New York 10924
                      Tel. No.: (845) 291-3150

13