UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

GREENS AT CHESTER LLC,

                         Plaintiff,

PEOPLE OF THE STATE OF NEW YORK by
LETITIA JAMES, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

                     Plaintiff-Intervenor,

     -against-

TOWN OF CHESTER, JAMES M. FARR,
individually and as Building Inspector of the Town
of Chester, ROBERT VALENTINE, individually
and as Supervisor of the Town of Chester,
ALEXANDER J. JAMIESON, as former Supervisor
of the Town of Chester, STEVEN M. NEUHAUS,
individually and as County Executive of the County
of Orange, and THE COUNTY OF ORANGE,

                   Defendants.
----------------------------------------------------------------x

Docket No.: 19-cv-06770(PMH)

**Consent Decree**

     This Consent Decree (the "**Consent Decree**") is entered into this __ day of February, 2021 between Plaintiff GREENS AT CHESTER LLC on its behalf and on behalf of its heirs, executors, administrators, attorneys, successors, assigns, agents and representatives (hereinafter collectively referred to as "**Plaintiff**") and Defendants TOWN OF CHESTER, JAMES M. FARR, ROBERT VALENTINE and ALEXANDER J. JAMIESON, their officers, directors, employees, contractors, insurers, attorneys, successors, assigns, agents and representatives (hereinafter collectively referred to as the "**Town**" or the "**Town Defendants,**" and together with Plaintiff, the "**Parties**" and each a "**Party**"), in settlement of any and all

4649603.v12

disputes between Plaintiff and the Town Defendants arising out of the events that are the subject matter of the above-captioned action (the "**Action**").

1.      **Recitals**

WHEREAS, Plaintiff commenced this action (the "Action") by summons and complaint on or about July 19, 2019, and amended by filing a First Amended Complaint on December 6, 2019 (the "FAC"), against, among other parties, the Town Defendants alleging violations of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1981, 1982, and 1983, the Fair Housing Act, and state law; and

WHEREAS, the Town Defendants submitted an answer to the FAC dated May 22, 2020 (the "Answer") denying that they violated Plaintiff's rights and assert that they did not violate the law; and

WHEREAS, the Parties now desire to settle, fully and forever, any and all claims arising out of the events that are the subject matter of the Action without the necessity of protracted litigation; and

WHEREAS, the Parties acknowledge that they are entitled to a trial by jury to determine the allegations contained in this Action, the outcome of which, in the event the Action did proceed to trial, is uncertain and unpredictable; and

WHEREAS, Plaintiff and Town Defendants have agreed to settle their disputes subject to the Court's retention of jurisdiction over the parties and terms of this Consent Decree ordered by the Court below for enforcement purposes and all judicial enforcement remedies, including contempt with the power to award money damages and attorneys' fees; and

WHEREAS this Consent Decree shall be deemed effective by and upon the Court's approval, So-Ordering, and entry of the Consent Decree; and

2

WHEREAS, the recitals set forth above are true and accurate and are incorporated into this Consent Decree as if set forth at length hereunder.

NOW THEREFORE, in consideration of the foregoing, of the mutual promises, representations and commitments set forth below and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Court hereby orders and decrees that the Parties shall perform pursuant to the Court's retention of continued jurisdiction over this Consent Decree as follows:

**2.      No Admission of Liability**

It is expressly understood that this Consent Decree has been entered into by the Parties solely for the purpose of avoiding further expense in connection with litigating the Action.  Further, this Consent Decree and its representations do not constitute an admission by the Town Defendants of any violation of any federal, state, or local law; or the breach of any duty whatsoever, whether based upon statute, common law, contract, or otherwise; or that Plaintiff has suffered any damages. The Town Defendants continue to maintain their position of no liability to the Plaintiff and the validity of any and all defenses raised in the Answer. Similarly, while Plaintiff is discontinuing the Action with prejudice (subject to the terms of this Consent Decree, including the revival of the Action as provided for herein) to avoid further expense in connection with litigating the Action, Plaintiff does not concede the absence of any liability of the Town Defendants as set forth in the FAC and maintains the positions set forth in that pleading.

**3.      Consent Decree/Dismissal of The Action**

a.   Counsel for the Parties have jointly moved the Court for the entry of this Consent Decree pursuant to Federal Rule of Civil Procedure ("**FRCP**").  The Consent Decree shall not be binding on the Parties until it has been approved and So-Ordered by the

Court.  Upon entry of the Consent Decree, it shall be binding upon the Parties, their successors and assigns and the Parties agree to take all additional steps and actions as may be reasonably required to expeditiously implement and effectuate its terms and provisions.  If the Court declines to so-order the Consent Decree, the Consent Decree shall be deemed null and void and of no force and effect, and the Parties and the Action shall be restored to the status quo pre-existing the Consent Decree, unless otherwise agreed by the Parties.

b.  Upon the Court's approval of the Consent Decree, Plaintiff shall dismiss all claims pending against the Town Defendants with prejudice and without any damages or attorney's fees to be paid by or to any party (the "Dismissal"), subject to the terms of the Consent Decree that provide under certain limited circumstances for vacatur of the Dismissal and restoration to the calendar of this Action to the status quo as it existed immediately prior to the execution of the Consent Decree. These limited circumstances where the Dismissal may be vacated and the Action restored include where (a) this Consent Decree is held to be invalid, for example, upon a final non-appealable court order which upholds a challenge by any third-party to the Consent Decree or to the Town's authority to enter into the Consent Decree; or (b) it is determined by this Court that one party has substantially frustrated the purpose and intent of the Consent Decree, or (c) as otherwise provided in this Consent Decree including, *inter alia*, under Section 20 hereof. The Town Defendants shall at the same time as Plaintiff's Dismissal withdraw all pending motions and all notices of appeal and appeals with prejudice, subject to restoration if this Action is restored to the calendar. In the event the Action is restored to the calendar, all parties waive any objections as to waiver or timeliness

4

to the re-calendaring of the Action and the re-calendaring and/or re-noticing of the Town Defendants' pending motions and consent to the Action and any motions being determined on the merits. Both parties similarly agree to waive any statute of limitations defense(s) to any claim or defense eligible to be restored under the terms of this Consent Decree.

c. The Court's so-ordering of this Consent Decree and retention of jurisdiction over the Parties and the terms of this Consent Decree for enforcement purposes shall survive the Dismissal of this Action by Plaintiff against the Town Defendants and it shall also survive any Order of dismissal by the Court.

**4.    Mutual Good Faith Covenant**

a. Plaintiff and the Town Defendants shall act in good faith and reasonably in dealing with each other.  No Party shall engage in any act or refuse to act in order to defeat the purpose, intent, or spirit of the Consent Decree, which is the expeditious completion, marketing, and sale of 431-units and improvements at The Greens Development,[1] under the terms and conditions of the Consent Decree, which are suitable for selling into the market in and around Orange County, New York to any buyer regardless of race, color, creed, and/or religion including, but not limited to, members of faith communities (the "**Mutual Good Faith Covenant**").

---

[1] The term "The Greens Development" means the residential subdivision project commonly known as "The Greens at Chester" located at the real property presently identified as Lot B76 – SBL: 38-2-76, which property is presently owned by Plaintiff, and is composed of approximately 113.4 acres of land located within the Town and 4.2 acres of land located in the Town of Goshen, which property is generally situated adjacent and southwest of the Village of Chester line with New York State Route 94 to the south, Conklingtown Road to the south/southwest and the Town of Goshen line to the North. The Resolution of Approval Final Subdivision and Site Plan for Arlington Chester, LLC, dated November 6, 2013, concerning the Property, also refers to a prior Town of Chester tax map section as Section 6, Block 1, Lot 1.3.

4649603.v12

b. The Parties mutually agree that the fundamental objective of the Consent Decree is the fullest reasonable cooperation and reasonable best efforts of the Parties to fully resolve the pending Action between the Parties concerning construction of the 431 homes and improvements at The Greens Development pursuant to this Consent Decree.  The Parties agree to, within the reasonable range of customary practice in the Town and similarly situated towns, expedite inspections, submit and review complete and accurate paperwork, approve houses properly built, and issue certificates of occupancy in compliance with the law and customary prevailing standards of residential construction in and around the Town.  If any of the Parties disagree about the customary prevailing standards of residential construction in and around the Town, the signed and sealed certification to the Town of a professional engineer or duly licensed architect either agreed to by the Parties or selected by Plaintiff from the Agreed Professional List[2] which attests that the contrary position asserted by Plaintiff or, in the alternative, the original position of the Town Building Inspector, is  consistent with the reasonable range of customary prevailing practices and customary prevailing standards of properly built residential construction in the Town and similarly situated Towns in Orange County, New York, shall be considered (for all purposes including any enforcement proceeding commenced by Plaintiff) clear and convincing evidence of compliance with customary prevailing standards of residential construction and Plaintiff's entitlement, or as the case may be, lack of entitlement to the disputed approval (e.g., permit(s), inspection approval(s), field change(s), certificate(s) of occupancy, etc.).  If the Town

---

[2] The "Agreed Professional List" means the mutual list established by the Parties and attached as Exhibit A to this Consent Decree of professional engineers and architects who have at least ten years of experience and has maintained an office in Orange County, New York and actively practiced engineering in Orange County for at least five of the aforementioned ten years.

6

agrees with such professional and the approval is granted, the matter shall be deemed resolved without recourse of either Party.   If (i) the Town disagrees with the professional or fails to respond to the opinion within five business days, or (ii) Plaintiff disagrees with the determination of the Professional, then, Plaintiff may pursue any redress or remedies available to Plaintiff herein.   In the event Plaintiff so chooses to pursue a remedy, nothing herein shall be construed as a waiver by any Party of the right(s) to assert or contest the jurisdiction of any board or official, nor shall any Party waive the ability to respond to the professional's certification and/or to assert other claims or defenses.

c.   In the event of a disagreement respecting customary prevailing standards as described in the preceding paragraph, Plaintiff is entitled to select whichever professional, subject to availability, it desires on the Agreed Professional List, to issue his or her opinion on the subject matter of the dispute. If a second dispute arises between the Parties respecting customary prevailing standards, Plaintiff is entitled to select whichever professional, subject to availability, it desires on the Agreed Professional List, except for the professional it selected to opine on the first dispute. Thereafter, in the case of each subsequent dispute, Plaintiff is entitled to select the professional it wishes to issue an opinion, other than those professionals who have previously issued opinions, unless (a) each of the professionals on the Agreed Professional List has already issued an opinion, or (b) those professionals who have not yet issues an opinion are unavailable. In the alternative to the provisions in this paragraph respecting the selection of a professional, the Parties may mutually agree on any professional to issue his or her opinion, whether or not that professional is named on the Agreed Professional List.  In

7

all cases, Plaintiff will bear the cost of the selected professional's fees, subject to any fee shifting as set forth in Section 5 of this Consent Decree.

d.  For example and not by way of limitation, (i) drawings or other indicative materials or broad language submitted in or with any materials to the Town may not be treated by the Town as establishing a limitation on the development absent specific language clearly identifying the nature of the limit; (ii) if the Town ordinarily grants a waiver or exception from compliance with any Town Code provision, it must grant the same waiver or exception to Plaintiff and The Greens Development, and (iii) a pattern of taking the maximum or near maximum period of time permitted under the Town Code or the Consent Decree to respond to Plaintiff's applications, submissions, or inquiries may each be viewed as a breach of the Mutual Good Faith Covenant by any trier of fact.  With regard to ministerial submissions, requests, and/or applications, by way of example and not limitation, including, but not limited to, review of updated insurance certificates and/or inspection requests, the Town shall not hinder or unreasonably delay its responses.  Similarly, if the Town does not regularly enforce the restrictions of any provision of the Town Code or any other code, law, or regulation on other developers or their representatives it may not enforce such provision of the Town Code or any other law, rule, or regulation on Plaintiff or The Greens Development.  Field changes permitted in the Town for other developments shall similarly be permitted for The Greens Development.

e.  The Mutual Good Faith Covenant is material to this Consent Decree. To the extent a dispute arises under this Consent Decree, alleged conduct preceding the execution and approval of this Consent Decree, including without limitation conduct alleged in the

8

4649603.v12

underlying pleadings and motions filed in this Action, is relevant to and should be considered with respect to determining either Party's compliance with the Mutual Good Faith Covenant.

f.  In consideration for the Dismissal, subject to Section 3 hereof, the Parties recognize that the Mutual Good Faith Covenant is intended to be interpreted to require them to exercise reasonable best efforts to act with expediency, thoroughness, accuracy, and efficiency in moving The Greens Development to completion (it being understood and agreed that nothing in this Consent Decree shall require the Plaintiff to build The Greens Development faster than as determined by their sound business judgement in light of prevailing market conditions).

g.  The Town Building Inspector shall be required to file all necessary inspection reports with the Town Building Department (and where applicable test results) and shall be responsible for approving in the ordinary course permits and approvals including, *inter alia*, building permits and certificates of occupancy.  The Parties agree to exercise good faith mutual cooperation with respect to all aspects of the processing of inspections and approvals and in the event of Plaintiff's disagreement with the Town's position, an opinion of one of the professionals on the Agreed Professionals List shall be deemed clear and convincing evidence regarding that determination should application for enforcement be made.

5.     **Continuing Jurisdiction and Remedies for Breach**

a.  The Court shall retain continuing jurisdiction of the Consent Decree to enforce and fashion such remedies, orders, and judgments as the Court deems just and proper, and as permitted by law, including, *inter alia*, money damages and specific performance,

9

injunctive relief (mandatory and prohibitory), and contempt, subject to the terms of this Consent Decree. This includes the Court's continuing jurisdiction to enforce the Mutual Good Faith Covenant.

b.  If any Party believes any other Party to the Consent Decree has breached any provision hereof, including the Mutual Good Faith Covenant, the non-breaching Party may seek enforcement of any provision of the Consent Decree by motion to the Court for any of the remedies provided in this Consent Decree. However, prior to the filing of any such motion, the Party alleging a breach or a representative thereof and the alleged breaching Party or a representative thereof shall first meet and confer (which may take place electronically) within five business days of either Party requesting such a conference in an attempt to resolve such matter in good faith. The Court shall have jurisdiction and authority to review and resolve any and all such motions. Under its continuing jurisdiction and enforcement powers, the Court is authorized to issue an Order, enforceable by contempt, mandating that the breaching Party or Parties undertake or cease undertaking the complained of conduct. To maintain the integrity of this Court's continuing jurisdiction and its consent decrees, the Court hereby orders that upon this Court's determination of either a breach or contempt (or both) the non-breaching Party shall be awarded money damages with interest, reasonable attorneys' fees and other professional fees, and the Court is authorized to award any other relief deemed just and proper, including daily fines or daily escalating fines. In all cases the Party seeking to recover money damages or to hold the other Party or Parties in contempt shall be required to meet the evidentiary standard applicable to the remedy applied for. The Consent Decree does not provide for award of damages, attorneys' fees, other

10

professional fees or costs in the absence of a judicial finding of a breach of this Consent Decree, contempt, or both, unless otherwise provided by law.

c.   The intent of this section of the Consent Decree is to incentivize the Parties to adhere to the Mutual Good Faith Covenant, ensure the integrity of this Court's Orders, and provide to the non-breaching Party the most expeditious method of securing relief. In addition to and beyond the relief provided in this Consent Decree for breach and/or contempt, either Party may, if the other Party has substantially frustrated the purpose and intent of the Consent Decree, seek an order vacating the Dismissal of the Action and restoring the Action to the status quo that pre-existed the Consent Decree consistent with Section 3 hereof, as determined by the Court.

d.   If the Court awards a Party damages pursuant to the terms of this Section 5, the acts or omissions giving rise to the damages may not in and of themselves be proffered as a basis for vacating the Dismissal and restoring the Action, unless the damages remain unpaid for the longer of (a) 30 days after entry of judgment, or (b) the expiration of any stay ordered under FRCP 62.

e.   The Court's continuing jurisdiction over Defendant Valentine with regard to the Action and the provisions, terms, and clauses of this Consent Decree shall end upon Defendant Valentine ceasing (and not thereafter resuming) to be an officer, employee, or agent of the Town with responsibilities and/or duties affecting Plaintiff, The Greens Development, and/or the terms of this Consent Decree, except to the extent a motion seeking any remedy provided for by this Consent Decree concerns any action taken or omission by Defendant Valentine prior to the date on which he ceases to hold such status.   The Court's continuing jurisdiction over Defendant Farr and Defendant

11

Jamieson with regard to the Action and the provisions, terms, and clauses of this Consent Decree shall cease upon a final order approving this Consent Decree, except to the extent either Defendant Farr or Defendant Jamieson thereafter resumes acting as an employee or agent of the Town with any responsibilities and/or duties affecting Plaintiff, The Greens Development, and/or the terms of this Consent Decree.

6.     **Building Permit Fees, Prepayment, PDR Letter, and Commercial Component**

a.   Plaintiff agrees to pay to the Town within five business days of the Court approving this Consent Decree the sum of One Hundred and Fifty Thousand Dollars ($150,000) (the "**Advance Payment**"), which Advance Payment shall be credited toward building permits calculated at the rate of One Dollar ($1.00) per square foot. The Advance Payment shall be paid to the order of the "Town of Chester" and delivered to the Town Building Inspector, who shall hold the funds in trust in a segregated account for the benefit of Plaintiff (the "Advance Payment Account"). This Advance Payment shall be withdrawn from the Advance Payment Account as needed from to time to cover the cost of Building Permit Fees charged at the rate of One Dollar ($1.00) per square foot in conformity with this Consent Decree.  When the Advance Payment is exhausted, Plaintiff shall be required to pay Building Permit Fees for further houses charged in conformity with this Consent Decree.

b.   Upon the execution of this Consent Decree, Plaintiff agrees to deliver an executed version of the Letter in support of the Town's Community Preservation Development Fund (the "**PDR Letter**"), a copy of which is annexed hereto as Exhibit B, to Brian Nugent, Esq. as the escrow agent ("Escrow Agent"). The Escrow Agent shall hold the PDR Letter in escrow.  If as of the date the Town issues and delivers to Plaintiff the

4649603.v12

40th Building Permit for The Greens Development, which includes those Building Permits issued prior to the So-Ordering of this Consent Decree (a) the Town has not breached the Consent Decree, (b) no motion is pending before the Court alleging the Town's breach of the Consent Decree, and (c) the Action has not been restored by any Party, the Escrow Agent may release the PDR Letter to the Town to use and distribute as the Town may deem helpful.

c.  In consideration of the Advance Payment, PDR Letter, and Release provided by Plaintiff to the Town Defendants as set forth in Section 19 hereof, the Town agrees, and the Court So-Orders, that (i) the fees for building permits (the "**Building Permit Fees**") to be charged for all houses to be constructed in The Greens Development shall be determined as follows: (a) for the first 215 houses, at a rate of One Dollar ($1.00) per square foot, and (b) for the remaining 216 houses, at a rate of One Dollar and twenty-five cents ($1.25) per square foot, *provided that* all Building Permit Fees have been and will continue to be issued at a rate of One Dollar and twenty-five cents ($1.25) per square foot while the Court's approval of the Consent Decree remains pending; and (ii) all other Town-imposed construction-related fees, including filing fees, inspection fees, permitting fees, and any similar fees or assessments imposed by the Town (the "**Construction Fees**") applicable to or imposed upon Plaintiff and/or The Greens Development shall remain at their present levels without any increase applied to Plaintiff or The Greens Development until the expiration of five (5) years from the Court So-Ordering this Consent Decree, subject to tolling during the period, if any, during which a motion alleging a Town breach of this Consent Decree is pending before the Court.

13

d.  As stated in the preceding subsection, upon the Court So-Ordering this Consent Decree Building Permit Fees will be reduced to the sum of $1.00 per square foot for the first 215 houses only. Also, upon the Court So-Ordering this Consent Decree, the Parties shall calculate the aggregate amount Plaintiff has paid in excess of $1.00 per square foot on all Building Permits issued through the date of the So-Ordering of this Consent Decree, and said sum shall be added to the Advance Payment and treated the same as such funds. Upon such crediting, the Building Permits issued to prior to the Court So-Ordering the Consent Decree shall be counted towards the aforesaid first 215 Building Permits subject to the $1.00 per foot rate.

e.  In addition to the foregoing, it is further agreed and ordered that in the event this Action is restored to the calendar pursuant to this Consent Decree, then any unused portion of the Advance Payment shall be returned to Plaintiff within ten (10) business days of the Order restoring the Action if Plaintiff so requests.

f.  Plaintiff supports the concept of promoting economic growth in the Town of Chester through various means including, but not limited to, encouraging commercial development.  In support of this concept, Plaintiff agrees to designate certain property within "The Greens Development" as depicted in Exhibit C as a proposed commercial center in lieu of 32 of the 431 approved residential units. The Parties recognize that such future commercial development would be subject to approval under applicable Federal, State and local laws and nothing herein shall be deemed as binding any future Town Board with respect to any governmental function.

4649603.v12

7.    **Construction Game Plan**

In order to set forth the generally applicable processes and requirements for The Greens Development, the Parties have annexed hereto the Construction Game Plan as Exhibit D (the "**Construction Game Plan**"), incorporated herein by reference. However, the Parties agree and understand that the provisions of the Construction Game Plan are not intended to be all inclusive of every requirement that may be imposed in the development or sales process and that the Construction Game Plan shall not relieve Plaintiff of compliance with any and all applicable regulations, laws, assessments, fees, codes, and/or requirements of proceeding with development and sales so long as such regulations, laws, assessments, fees, codes, and/or requirements are (i) reasonable and no more stringent than applied to other developers in the Town, and (ii) are not inconsistent with the terms of (a) the Consent Decree, (b) the 2010 Settlement Agreement (as defined in the FAC), and/or (c) the Final Approval, Approved Plans, and/or Final Plat (all as defined in the FAC).

8.    **House Sizes and Bulk**

a.    **Maximum Lot Coverage**: For Neighborhoods ("Phases") A, B, and C (as set forth in the Approved Plans as defined in the FAC) of The Greens Development, the maximum permissible average lot coverage will not exceed 36% in the aggregate for all three Phases combined (the "**Phases A-C Lot Coverage Cap**"). The Phases A-C Lot Coverage Cap is calculated by determining the average lot coverage of all lots contained within Phases A-C of The Greens Development. In this regard, the average lot coverage of any individual Phase may either exceed or fall below 36% so long as the maximum permissible average lot coverage for Phases A-C is not exceeded. No single lot in the A-B-C Phases shall exceed 42% lot coverage. *Lot coverage = footprint*

15

*of building divided by size of lot expressed as a percentage. Footprint to exclude* driveways, decks, stoops, footpaths, exterior mechanical equipment (e.g. air conditioning units), stairs. All garages shall be included within the calculation of lot coverage, but garages shall not be required.

**b. Phases D&E:** The semi-attached homes in Phases D and E shall be an average of 2,850 square feet per home in the aggregate for Phases D and E combined (the "**Phases D and E Size Cap**"). The Phases D and E Size Cap is calculated by determining the average semi-attached home size on all lots contained within Phases D and E of The Greens Development. In this regard, the average semi-attached home size within either Phase D or E may either exceed or fall below 2,850 square feet so long as the average semi-attached home size within both Phases combined does not exceed 2,850 square feet. No single semi-attached home in Phases D and E may exceed 3,000 square feet, in both cases excluding an unfinished basement. All garages shall be included within the calculation of lot coverage, but garages shall not be required. The Town acknowledges that each semi-attached structure consists of two semi-attached homes, and that it is those semi-attached homes, and not the structure of which they are a part, that are governed by the provisions relating to size in the preceding sentence. At any time at the Plaintiff's option, the Town will support the reduction of 32 semi-attached homes in exchange for Plaintiff's ability to build a building or buildings for office, retail, and/or similar commercial uses along the lines set forth in the conceptual plan for Planning Board workshop annexed hereto as Exhibit C. However, any future submission of plans regarding the commercial buildings are not a part of or subject to any Consent Decree, other than the Town's support of such application.

16

c. **Plan Bulk Table Requirements.** In all Phases (A-B-C-D-E), Plaintiff and the Town must comply with the bulk table requirements set forth in the plans annexed to the 2010 Settlement Agreement (as defined in the FAC) and appended hereto as Exhibit E, unless such bulk table is inconsistent with the terms of the Consent Decree, in which case the terms of the Consent Decree shall control.

9.      **House Plans & Building Permits**

a.   To date, the Town has issued twenty (20) building permits (the "Issued Permits") composed of the following: eighteen (18) in Phase E (lots E-9 – E-20 & E-99 – E-104), one (1) in Phase B (lot B-1), and one (1) community center. Building Permits for an additional three (3) houses within Phase B (lots B-2, B-7, and B-10) shall be placed in escrow and released to Plaintiff upon the Court's So-Ordering of this Consent Decree (the "Escrowed Permits"). In addition to the plans for the Escrowed Permits, as of the date of this Consent Decree, Plaintiff has submitted to the Town plans for an additional eight (8) lots within Phase B. The Town Building Inspector will review and make a determination on those additional eight (8) plans as required under this Consent Decree. The Town may withdraw the Building Permit Fees for the Escrowed Permits from the Advance Payment Account upon the release of the Escrowed Permits to Plaintiff. The permit application documents supporting the Issued Permits and Escrowed Permits shall constitute approved examples of compliant submissions and approved plans, but not serve as limitations on approvable examples, it being understood and agreed by the Parties that such plans must be sufficiently complete to meet the minimum standards applied to any other developer in the Town to allow the building permits to be issued and approved. Future submissions substantially consistent with any of the permit

4649603.v12

applications for the Issued Permits or Escrowed Permits and any subsequently approved houses shall be approved by the Town expeditiously.

b.  Annexed to this Consent Decree as Exhibit F and Exhibit F-1, respectively, are the plans and other documents submitted in respect to the Escrowed Permits (together the "Escrowed Permits Application Documents") and Lot B-1, which constitute representative plans for homes which can be built by Plaintiff at The Greens Development on the lots specifically identified in those plans. The Escrowed Permits Application Documents must be, and prior to the date on which the Court so-orders the Consent Decree shall have been, fully reviewed and approved by the Town Building Department as compliant with the Parties' rights under this Consent Decree and any properly applicable law, regulation, custom or practice and thereafter and as a condition precedent to the effectiveness of the Consent Decree the Escrowed Permits shall be issued and delivered in escrow to Plaintiff's attorneys.

c.  The issuance of the twenty (20) Issued Permits and the Escrowed Permits by the Town Building Inspector for each of these various homes serves as exemplars of Plaintiff's rights to approvals as memorialized in the Consent Decree and thereby help to avoid any subsequent dispute or claim of uncertainty or ambiguity as to the expressly permitted size, design and lot coverage of the homes permitted as of right as agreed by the parties under the Town Zoning Code, the Final Approval, the Approved Plans, and the Consent Decree. The Escrowed Permits Application Documents do not modify the terms of the Consent Decree or limit the rights of Plaintiff set forth under the Consent Decree. The Town acknowledges that all Issued Permits and Escrowed Permits fully

comply with every governing and applicable document referenced herein without limitation including the Bulk Table annexed as part of Exhibit E annexed hereto.

**10.    Houses—Other**

a.   Any and all basements in all phases shall, if finished, meet all requirements of all applicable codes, including the Town Code requirements for a building permit. Unfinished basements shall not figure in the calculation of a house's square footage.

b.   The Town agrees that consistent with the treatment of other home developers, if a purchaser of any home in or outside The Greens Development illegally finishes a basement, creates an additional bedroom space, or undertakes any other unauthorized alterations to the interior or exterior of a home following delivery by Plaintiff, such conduct will be addressed in the ordinary course between the purchaser and the Town, and not give license to the Town to hinder or delay development of The Greens Development and/or subject Plaintiff to any penalties, fines, or other sanctions.

**11.    Infrastructure and Bonding**

a.   Each sequential Phase (A-B-C-D-E) of The Greens Development shall be permitted to be bonded/secured in accordance with the estimate of the Town Engineer acting reasonably and having been delegated the necessary authority. Any bonding/security shall be in a form approved by the Town Attorney and approved by the Town Board prior to the execution of the Consent Decree.  Phasing need not follow any particular sequence, nor shall phasing be required. The scope of improvements to be bonded as well as their estimated cost as of the time of settlement shall be appended to the Consent Decree as Exhibit G. The Town further acknowledges and agrees that Plaintiff has

19

already posted all security required for all houses and improvements in the entire five Phases of The Greens Development. Nothing herein shall be deemed a waiver of Plaintiff's obligation to execute a reasonable security agreement routinely used in the Town for residential development, to sign any necessary reasonable paperwork, and to provide all required information which meets with the reasonable approval of the Town's attorneys, including with respect to the renewal of any security, provided that at all times the Town shall fully cooperate with the absolute right granted in this Consent Decree to Plaintiff to separately bond each Phase of The Greens Development as it progresses. For the avoidance of any ambiguity, while currently Plaintiff has bonded all five Phases of The Greens Development with the approval of the Town, Plaintiff has done so without prejudice and, consistent with the following paragraphs, is entitled to, in its sole discretion, bond only those Phases of The Greens Development that are under construction, with the Town reducing the amount of the bond currently in place accordingly. Nothing herein shall be deemed a waiver of Plaintiff's obligation to execute a reasonable security agreement routinely used in the Town of Chester for residential development which meets with the reasonable approval of its attorneys, including with respect to the renewal of any security, provided that at all times the Town shall fully cooperate with the absolute right granted in this Consent Decree to Plaintiff to separately bond each phase of The Greens Development as it progresses.

b. In this regard, the Town acknowledges and agrees that bonding for The Greens Development may be by Phase. For example, if Plaintiff posts the agreed bond for Phases D and E, Plaintiff may construct all homes and improvements in those two Phases. Similarly, if Plaintiff posts the bond agreed to for all five Phases it may

4649603.v12

construct simultaneously, if it wishes, all houses and improvements in all five Phases. Lastly and only by way of illustration, if Plaintiff elects to bond for only Phase B, Plaintiff may construct all houses and improvements in Phase B notwithstanding the fact it has not posted any other bond for any other phase. The Town agrees that upon notice from Plaintiff that Plaintiff will not proceed at the time of the notice to commence any house construction or improvements in one or more Phases then, in such event, the Town will in good faith reduce the amount of bond security already posted for all five Phases of The Greens Development in an amount that corresponds to the reduction of proposed work set forth in Plaintiff's notice.

c. At any time, consistent with this Consent Decree, Plaintiff may apply for and shall be granted a reduction of any bond or bonds Plaintiff may have posted pursuant to the phasing agreement of this Consent Decree and/or in accordance with the Town Code and Town Law § 277(9)(d) for work properly completed based upon submissions from the Project Engineer upon verification by the Town Engineer, which verification shall not be unreasonably withheld, conditioned, and/or delayed.  Upon tendering the bond for any particular phase, the initial cost estimate may be adjusted to factor in any improvements previously completed in prior phases.  Bonding/Security shall allow for the amount set forth in the Construction Game Plan annexed hereto as Exhibit D to be retained for maintenance in accordance with estimates of the Town Engineer for one year after completion (and in accordance with Town Code).

**12.     Water**

a. Provision of water shall be in accordance with all applicable requirements under New York law in force as of the date of the signing of the Consent Decree.  Plaintiff is to

21

4649603.v12

perform testing on its own schedule prior to issuance of certificates of occupancy and in compliance with any other external agency requirements. The Parties agree that water-related approvals and determinations are outside the domain of the Town, and that the Town has no control over such matters and shall not involve itself or participate in such matters unless required by future laws or regulations outside the control of the Town or upon written consent of the Plaintiff.  If, as it is obligated to, the Town supports Plaintiff's water system testing and upgrades and does not adversely interfere in Plaintiff's dealings with the New York State and Orange County agencies, Plaintiff shall have no claim against the Town for any rejection of any water-related permit by any outside agency.

b. Provisions shall be made by Plaintiff to provide an adequate supply of water and full mitigation to those properties identified by Plaintiff and/or NYSDEC whose private well water systems are significantly diminished or rendered non-productive by the use of the wells developed by Plaintiff, with Plaintiff's obligations under this sentence to be governed only by New York State Law and all applicable regulations. Plaintiff shall not be required to perform such improvements if access is denied, delayed, and/or hindered by the affected property owner(s). The Town shall cooperate with any and all related matters, including without limitation easements, road opening permits, accommodating testing requirements, and/or approving modifications to the previously proposed water district boundaries. The Town agrees not to withhold building permits or any accommodation that are reasonably required to further the development on account of any alleged defect in Plaintiff's water system or Plaintiff's mitigation of adverse impacts on neighboring properties.  The Town agrees to provide certificates of

22

occupancy for as many completed houses that can be served by Plaintiff's water system, which may include temporary solutions customarily accepted in New York State pending full activation of the permanent system, subject to any required approvals of such temporary solutions by appropriate State authorities.

**13.** **Sewer**

a.    The Town reaffirms all provisions of the 2010 Settlement Agreement including without limitation the Town's Guarantee of timely delivery of sewer capacity for all 431 houses of the Greens Development.

b.    The Town shall take such steps as are reasonably necessary to provide to the Greens in a timely fashion the sewer guaranteed by the Town for all 431 houses and shall not, on account of any alleged lack of sewer capacity, withhold building permits and/or certificates of occupancy or any accommodations that are reasonably required to further the development.

c.    The Town agrees to cooperate and act in good faith in all dealings with governmental agencies or officials, including the NY State DEC and Orange County Department of Health, concerning the sewer guarantee and sewer service for the Greens Development.

d.    Given the current state of construction, the Town shall reserve exclusively for the Greens no less than 100,000 gallons per day (gpd) of its capacity at the County's Harriman Sewage Treatment Plant and shall not allow such reserved capacity to be utilized for any purpose other than allocation to The Greens Development. This reservation shall not be construed as a limitation or reduction of the Town's guarantee of sewer service for all 431 houses at the Greens.

e.    The Town hereby acknowledges that it currently has an available capacity of approximately 115,000 +/- at the County's Harriman Sewage Treatment Plant.  Of this total capacity, the parties agree that (i) the Town shall be entitled to reserve, access and/or designate up

to the balance of the Town's presently available capacity, estimated at approximately 15,000+/- gpd, for any and all legal needs within the Town; and (ii) such reservation, access and/or designation by the Town does not constitute a breach of the Consent Decree. This agreement by the parties shall be without prejudice to the Town's guarantee of sewer capacity for all 431 houses of the Greens Development. In addition, the specification of the Town's presently available capacity of 115,000+/- gpd and/or the allowance to the Town of up to the entire presently available estimated balance of approximately 15,000+/- gpd shall not be construed in any respect as a limitation or reduction of the Town's sewer guarantee of such 431 house capacity.

14.    **Town Ordinances**

a.   The Town reaffirms compliance with the 2010 Settlement Agreement in all respects and shall desist from applying any floor area ratio ("**F.A.R.**") law and all other post-2010 Settlement Agreement zoning and/or other regulations affecting The Greens Development unless The Greens Development is exempted from the effects of such zoning and/or other regulations.  However, The Greens Development shall not be exempt from post-2010 Settlement Agreement laws and regulations not related to, motivated by, targeted towards, or adversely affecting the actual construction, development, and sale of The Greens Development, including but not limited to local laws related to noise, sanitary requirements, property maintenance, and similar non-zoning/land-use local laws of general application in the Town.

b.   Transfer taxes of general applicability shall apply to all lots within The Greens Development on a prospective basis should it be enacted in the future, but for avoidance of doubt such prospective transfer taxes, if any, shall not be applied to the initial sale

4649603.v12

of lots by Plaintiff, except that nothing herein shall preclude a lawful transfer tax to be paid by the initial or subsequent buyers of lots or homes in The Greens Development. The Construction Fees (as defined in Section 6 of this Consent Decree) shall be in accordance with provisions of the New York State and Town Code. Except as otherwise provided in this Consent Decree, any Construction Fees shall follow the fee schedule in the Town Code as of the date the Action was filed (July 19, 2019) appended hereto as Exhibit H and not be subject to any increases for a five year period beginning from the date of the So-Ordering of this Consent Decree, the running of which period shall be tolled in the event of a motion brought by Plaintiff alleging that the Town has breached this Consent Decree. In this regard, and except as otherwise provided herein, every Construction Fee imposed by the Town against Plaintiff and/or The Greens Development shall be calculated, computed and determined in accordance with the fee schedules or other pertinent standards that existed as of July 19, 2019, and, again, not be subject to any increases during the aforementioned five year period, the running of which period shall be tolled in the event of a motion brought by Plaintiff alleging that the Town has breached this Consent Decree.

c. For the avoidance of doubt, following the conclusion of the five-year freeze on Construction Fees described in the preceding paragraph, each lot within The Greens Development is subject to ordinary course increases in Construction Fees, irrespective of whether such lot is owned by Plaintiff or any subsequent purchaser or owner.

**15.    HOA Declaration**

Within five (5) business days of the Parties' electronic receipt of the So-Ordered Consent Decree, the Town shall deliver to Plaintiff its signed approval of Plaintiff's HOA Declaration

(annexed hereto as Exhibit I) for Plaintiff's filing with the State of New York. Pending the Court's So-Ordering of the Consent Decree, the Town's litigation counsel shall hold in escrow the Town's signed approval of Plaintiff's HOA Declaration. Plaintiff agrees and acknowledges that HOA declarations require submission and approval of the Attorney General of the State of New York (the "**AG**"), and that the Town does not exercise any control over such approvals. The Town agrees not to interfere in the AG's approval process for the HOA, and if it does not so interfere, Plaintiff shall have no claim against the Town for any rejection or required modifications of any HOA Declaration by the AG.

16.  **AG Intervention**

The Town acknowledges without any admission of any liability, directly or indirectly, that the AG intervened in this Action as an Intervenor Plaintiff and reserves all of its rights to contest the AG's complaint. While this Consent Decree between Plaintiff and the Town is not contingent on a consent decree between the Town and the AG, the Town agrees that to the extent a consent decree between the Town and the AG is either agreed to and/or ordered by the Court, Plaintiff shall be deemed an intended third-party beneficiary of terms and provisions of such Consent Decree which apply to Plaintiff and/or The Greens Development. Notwithstanding the foregoing, the Parties agree that compliance by Plaintiff and/or by the Town with duly issued subpoenas compelling Plaintiff and/or the Town to produce documents in its possession, custody, and/or control and/or to testify at any legal proceedings shall not be deemed a violation of this Consent Decree, including, but not limited to, the Mutual Good Faith Covenant hereunder. The Parties agree that they will not voluntarily provide such documents or testimony to the Attorney General.

17.  **Building Permits, Inspections, Approvals**

A schedule of inspections, communications, and maximum time limits for response to submissions is appended hereto as Exhibit J. In all events, however, whenever a time for response, permit review, permitting, approval, inspection, and/or similar processing of development related requests is provided by Town Code and/or customary practice which is less than the maximum 10-day timeframe provided in Section 18 of this Consent Decree, then that lesser period of time shall govern and control. The Town will retain at its sole cost and expense any qualified personnel needed by the Town to meet the deadlines of this Consent Decree and the Town Code.

18.    **Communications**

a.    Correspondence and submissions from the Plaintiff, its contractors, agents, professional consultants, and/or anyone else writing on Plaintiff's behalf, to the Building Department or any other Town department (including, but not limited to, the Town Attorney, Town Engineer, Town Department of Public Works, and the Town Highway Department) shall be answered promptly and candidly and in no event later than ten (10) business days. Business days shall be defined as days during which Town Hall is regularly open for Town business. The 10-business day response period shall not be applicable to (a) a filing of unusual length and complexity, or (b) a voluminous submission that reasonably requires a greater time period to review and respond but in no event, on those few and select occasions, greater than an additional seven (7) business days. Plaintiff acknowledges and understands that the Town, as a municipality, cannot lawfully abdicate its responsibilities in favor of a time period where such period is not reasonably sufficient to allow for the required responsible review and response. However, the Parties agree to communicate with each other on any voluminous submissions and endeavor to establish a reasonable response time.

19.    **Releases**

4649603.v12

a. In consideration of the representations and obligations described in this Consent Decree, Greens at Chester LLC, its heirs, executors, administrators, attorneys, successors, assigns, agents and representatives (the "**Greens Release Parties**") release and forever discharge the Town Defendants, their current and former officers, departments, agencies, directors, employees, contractors, insurers, attorneys, assigns, agents and representatives (the "**Town Defendant Release Parties**") acting in their capacity as such, from all debts, obligations, promises, covenants, agreements, contracts, endorsements, bonds, controversies, suits, causes of action, judgments, damages, expenses, claims or demands, whatsoever, in law or in equity which the Greens Release Parties ever had, now have, or which may arise in the future (known or unknown) arising out of or related to the events that are the subject matter of this Action, arising from the beginning of the world to the date this Consent Decree is so-ordered by the Court (collectively "**Claims**"), including, but not limited to: any and all Claims for equitable relief; and any and all Claims for compensatory, punitive, liquidated, and other damages or monies; any and all Claims of or based upon all civil rights, Title VII, the Fair Housing Act, the First Amendment, the Fifth Amendment, the Fourteenth Amendment, and common law Claims in any form under any federal, state, or local statute, law, rule, regulation, or common law and all Claims for attorney's fees, expenses and costs, including but not limited to Claims arising under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1988. The foregoing release (a) does not apply to any rights, claims, obligations, duties or defenses of any kind that are based on or arise out of any of the terms and provisions of this Consent Decree, including but not

28

limited to claims to enforce the Consent Decree in any respect and (b) shall be deemed null and void and of no effect in the event the Dismissal is vacated.

b. In consideration of the representations and obligations described in this Consent Decree, the Town Defendant Release Parties release and forever discharge the Greens Release Parties acting in their capacity as such, from all Claims including, but not limited to: any and all Claims for equitable relief; and any and all Claims for compensatory, punitive, liquidated, and other damages or monies; any and all Claims of or based upon all civil rights, Title VII, the Fair Housing Act, the First Amendment, the Fifth Amendment, the Fourteenth Amendment, and common law Claims in any form under any federal, state, or local statute, law, rule, regulation, or common law and all Claims for attorneys' fees, expenses, and costs, including but not limited to Claims arising under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1988. The foregoing release (a) does not apply to any rights, claims, obligations, duties or defenses of any kind that are based on or arise out of any of the terms and provisions of this Consent Decree, including but not limited to claims to enforce the Consent Decree in any respect and (b) shall be deemed null and void and of no effect in the event the Dismissal is vacated.

**20. Challenge by non-party**

The Town agrees that it will not directly or indirectly encourage or support any challenge to its authority to enter into the Consent Decree or to the Consent Decree itself in any respect (a "**Non-Party Challenge**"). If a Non-Party Challenge is brought in an administrative, judicial, or quasi-judicial forum, Plaintiff and the Town Defendants may oppose the Non-Party Challenge jointly or separately, and during and until the disposition of the Non-Party Challenge by a final

4649603.v12

non-appealable order the Consent Decree shall continue in full force and effect, unless otherwise ordered by a Court of competent jurisdiction. If the Town elects not to defend any Non-Party Challenge then, in such event, Plaintiff shall have the right (a) to pursue all remedies under the continuing jurisdiction and remedies for breach section of this Consent Decree (provided that if the Town elects not to defend a challenge to just the Consent Decree itself said election shall not in itself be deemed a breach of this Consent Decree) and (b) to declare the Consent Decree null and void and, upon motion by Plaintiff, the Dismissal shall be vacated and the Action shall be restored to the Court's calendar and the Parties shall each have all of their rights as they existed prior to the Consent Decree and subsequent Dismissal. If any non-party shall successfully challenge the Consent Decree or obtain an injunction that interferes with the rights, privileges, benefits, commitments, and/or permits to which Plaintiff is entitled under the Consent Decree, Plaintiff and the Town shall each have the right to move the Court to vacate the Dismissal and restore the Action, and the Action shall be restored to the Court's calendar and the Parties each have all of their rights as they existed prior to the Consent Decree and subsequent Dismissal. Apart from the restoration of the Action to the Court's calendar, the Parties each agree to hold each other harmless with respect to each other's efforts to defeat the Non-Party Challenge in the event any challenge by a non-party is successful. Notwithstanding the foregoing, the Parties agree that compliance by Plaintiff and/or by the Town with duly issued Subpoenas compelling Plaintiff and/or the Town to produce documents in its possession, custody, or control or to testify at any legal proceedings shall not be deemed a violation of this Consent Decree or the Mutual Good Faith Covenant hereunder.

21.    **Miscellaneous**

4649603.v12

a. Given the possibility of the Action being restored, the Parties will retain documents responsive to the previously served document requests and in the case of the Town, prior to the execution of this Consent Decree the Town will obtain copies of all documents responsive to Plaintiff's prior document requests in the possession, custody or control of the individual defendants.

b. To maintain the integrity of the Court's Continuing Jurisdiction over its Consent Decrees and the Parties bound thereby, the Court hereby orders that each and every term of this Consent Decree and the performance of every obligation required hereunder shall be subject to the retained exclusive jurisdiction of the federal court. No action or motion by any of the Parties addressed to any of the terms or provisions of this Consent Decree may be commenced, maintained or continued by any party unless brought in this court.

c. The Town and Plaintiff have confirmed the requisite authority to enter into the Consent Decree. The Town authority has been established by a duly adopted Town Board Resolution, a copy of which is annexed hereto as Exhibit K. The Town acknowledges that a public hearing is not required to authorize the Town Supervisor to execute the Consent Decree. The Consent Decree shall be executed in such a manner that it is binding on all Town Departments, including, without limitation, the Town Supervisor, Town Board, Building Department, the Department of Public Works, the Town Attorney's office, and/or the Town Engineer. Plaintiff shall provide a certified limited liability company resolution confirming its authority to enter into the Consent Decree on behalf of itself and members.

4649603.v12

d.  The Parties will act in a supportive and cooperative manner in dealing with Plaintiff's applications related to The Greens Development to the Town Planning Board and the Town Zoning Board of Appeals and any external agencies or municipalities (e.g., NYS Department of Housing, Orange County, New York, and/or its agencies) to the extent any such applications may be made, including with respect to those aspects of The Greens Development identified in the Construction Game Plan.  If in evaluating any application submitted to the Town the Town (including any of its various departments) discovers that Plaintiff must make a correction or amendment to such application, the Town will promptly notify Plaintiff of the need to make such correction or amendment and Plaintiff shall not unreasonably refuse to cooperate in timely making such correction or amendment.

e.  Any ambiguity in drafting should be interpreted in favor of expeditious development of The Greens Development.

f.   The Parties' Consent Decree will survive the Dismissal of this Action.  The Stipulation of Dismissal, in the form annexed hereto as Exhibit L, will provide that the Consent Decree survives Dismissal. The Stipulation of Dismissal will not be submitted for filing with and execution by the Court until the expiration of seven (7) calendar days of the Court's So-Ordering of the Parties' Consent Decree and the filing thereof with the Clerk of the Court.

g.  The Consent Decree does not and shall not bind the Town Board to any future legislative action.

4649603.v12

h. The Parties hereby ratify and reaffirm the terms, obligations, and provisions of the 2010 Settlement Agreement except as expressly modified or supplemented by this Consent Decree.

i. So long as the Plaintiff constructs The Greens Development in conformance with the terms of the Consent Decree, no further Town Planning Board approval or any variances from the Town Zoning Board of Appeals (or any conditions outside of the Consent Decree) are required in order for Plaintiff to proceed from building permit to certificate(s) of occupancy for all 431 houses at The Greens Development.

**22. Counterparts**

This Consent Decree may be executed in counterparts. Facsimile or electronically transmitted signatures hereon shall be deemed the equivalent of originals. By signing this Consent Decree, the parties indicated hereunder agree to and accept the provisions contained herein.

4649603.v12

**GREENS AT CHESTER LLC**

_____

By: Jehuda Landau, Managing Member


State of New York                )
                                 )
County of _____Kings_____        )

    On ~~January~~ Feb 24, 2021, before me personally came Jehuda Landau, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.


                    _____
                              Notary Public


SIMON WEISER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01WE6222916
Qualified in Kings County
My Commission Expires 06-01-2022

**TOWN OF CHESTER**

By: Robert Valentine,
Supervisor of The Town of Chester

Robert Valentine, Individually

**TOWN OF CHESTER**

_____

By: James M. Farr,
Former Building Inspector of The Town of Chester

_____

James M. Farr, Individually

**TOWN OF CHESTER**

_____

By: Alexander J. Jamieson,
Former Supervisor of The Town of Chester

35

4649603.v12

State of New York          }
                           }
County of _Rockland_       }

    On February 24th, 2021, before me personally came Robert Valentine, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

*Notarization was made pursuant to NY Gov Cuomos executive order 202.7 as extended*

_____
Notary Public

VALERIE A. DRUMMOND
NOTARY PUBLIC, STATE OF NEW YORK
ID No. 01DR6125881
QUALIFIED IN ROCKLAND COUNTY
MY COMMISSION EXPIRES 04/25/2021

State of New York          }
                           }
County of _____  }

    On February ___, 2021, before me personally came James M. Farr, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_____
Notary Public

State of New York          }
                           }
County of _____  }

    On February ___, 2021, before me personally came Alexander J. Jamieson, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_____
Notary Public

35

**TOWN OF CHESTER**

_____

By:  Robert Valentine,
Supervisor of The Town of Chester


_____

Robert Valentine, Individually


**TOWN OF CHESTER**


_____

By:  James M. Farr,
Former Building Inspector of The Town of Chester


_____

James M. Farr, Individually


**TOWN OF CHESTER**

_____

By:  Alexander J. Jamieson,
Former Supervisor of The Town of Chester


34

4649603.v12

State of New York          }
                                  }

County of _____    }

       On January ___, 2021, before me personally came Robert Valentine, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_____
Notary Public

State of New York          }
                                  }

County of _____    }

       On January ___, 2021, before me personally came James M. Farr, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_____
Notary Public

State of New York          }

County of _Rockland_    }
                                  }

       On ~~January~~ February 2nd, 2021, before me personally came Alexander J. Jamieson, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

*Notarization was made pursuant to NY Gov. Cuomo's Executive Order 202.7 as extended*

_____
Notary Public

VALERIE A. DRUMMOND
NOTARY PUBLIC, STATE OF NEW YORK
ID No. 01DR6125881
QUALIFIED IN ROCKLAND COUNTY
MY COMMISSION EXPIRES 04/25/2009

35

4649603.v11

**TOWN OF CHESTER**

_____

By: Robert Valentine,
Supervisor of The Town of Chester

_____

Robert Valentine, Individually

**TOWN OF CHESTER**

*James Farr*
_____

By: James M. Farr,
Building Inspector of The Town of Chester

*James Farr*
_____

James M. Farr, Individually

**TOWN OF CHESTER**

_____

By: Alexander J. Jamieson,
Former Supervisor of The Town of Chester

34

State of New York            }
                              }

County of _____    }

On January ___, 2021, before me personally came Robert Valentine, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_____
Notary Public

State of New York            }
                              }

County of _Rockland_         }

On ~~January~~ _February 24th_, 2021, before me personally came James M. Farr, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_Notarization was made_
_pursuant to Gov. Cuomo's_
_Executive order 202.7_
_as extended_

_____
Notary Public

VALERIE A. DRUMMOND
NOTARY PUBLIC, STATE OF NEW YORK
ID No. 01DR6125881
QUALIFIED IN ROCKLAND COUNTY
MY COMMISSION EXPIRES 04/25/20__

State of New York            }
                              }

County of _____    }

On January ___, 2021, before me personally came Alexander J. Jamieson, to me known, and known to me to be the individual described in, and who executed the foregoing Consent Decree, and duly acknowledged to me he executed same.

_____
Notary Public

35

4649603.v11

Dated: February 26, 2021


**SO ORDERED:**

_____
Hon. Phillip M. Halpern, USDJ
United States District Court
Southern District of New York
~~Daniel Patrick Moynihan United States Courthouse~~
~~500 Pearl Street~~
~~New York, NY 10007-1312~~
300 Quarropas Street
White Plains, New York 10601

37

4649603.v12